**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| THE NAVAJO NATION, a sovereign Indian Nation, DINÉ DEVELOPMENT CORPORATION, a corporation wholly-owned by and formed under the laws of the Navajo Nation, and NAVAJO ARTS AND CRAFTS ENTERPRISE, a wholly-owned instrumentality of the Navajo Nation, | CIVIL ACTION NO. |
| Plaintiffs, | |
| v. | |
| URBAN OUTFITTERS, INC., URBANOUTFITTERS.COM, L.P., URBAN OUTFITTERS WHOLESALE, INC., ANTHROPLOGIE, INC., ANTHROPOLOGIE.COM, L.P., and FREE PEOPLE, L.L.C., Pennsylvania Corporations, and FREEPEOPLE.COM, L.L.C., a Delaware Corporation, | |
| Defendants. | |

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**
**(JURY TRIAL DEMANDED)**

**I. INTRODUCTION**

1.      The Navajo Nation brings this Complaint against Urban Outfitters, Inc., and its wholly-owned and controlled subsidiaries, entities, and retail brands for trademark infringement, trademark dilution, unfair competition and commercial practices laws violations, and for violation of the Indian Arts and Crafts Act.  In this action, the Navajo Nation seeks to protect its famous and distinct NAVAJO name and trademark, and to

ensure that consumers are no longer deceived, confused, or misled in their pursuits to find and acquire authentic and genuine NAVAJO products.

2.      The Navajo Nation and the Navajo People[1] have been known by the name "Navajo" since at least 1849, have continuously used the NAVAJO name in commerce, and had made the NAVAJO name and trademarks famous several decades prior to Defendant's use of "Navajo" and "Navaho."[2]  The NAVAJO name and trademarks have been used with numerous products, including clothing, accessories, blankets, jewelry, foods, tools, decorations, crafts, gaming establishments, tourism, educational institutions, retail services, fairs and events, and a news publication.  Since 1941, the Navajo Nation has marketed and retailed clothing, house-wares, and jewelry using its NAVAJO name and marks.  Furthermore, since at least 1943, the Navajo Nation has marketed and sold its goods under its registered NAVAJO trademark (hereinafter, "NAVAJO").  The Navajo Nation has currently registered 86 trademarks using the NAVAJO component with the United States Patent and Trademark Office ("USPTO") on the Principal Register.

3.      The Navajo Nation has invested substantial capital in promoting and protecting its NAVAJO trademarks,[3] and with more than $500 million in sales of

---

[1] The "Navajo People" means enrolled members of the Navajo Nation. One may only be an enrolled member of the Navajo Nation though meeting the substantive and procedural criteria at 1 Navajo Nation Code §§ 701, and 751-759 (West 2008). Further, enrolment in a federally-acknowledged Indian Tribe confers a unique political status on an individual, *see generally Morton v. Mancari*, 417 U.S. 535 (1974), and *United States v. Antelope*, 430 U.S. 641 (1977), which is the case with the Navajo People.

[2] Although long-thought to be an acceptable alternative spelling, the spelling "Navaho" with an 'h' has been declared by the Navajo Nation to be unacceptable, and Navajo Nation law requires that "the name 'Navajo' [shall be used, with] the spelling 'j', not 'h'." 1 N.N.C. § 502 (West 2008).

[3] The Navajo Nation has demanded that misappropriators of the NAVAJO trademark cease-and-desist such conduct, *e.g.*, Exhibit B, which is the Navajo Nation's cease-and-desist demand letter to Urban Outfitters,

NAVAJO-branded goods, the famous NAVAJO mark points uniquely and unmistakably to the Navajo Nation.  The strength of the NAVAJO name and trademarks is one of the Navajo Nation's most valuable assets.

4.       Since at least March 16, 2009, Urban Outfitters has advertised, promoted, and sold its goods under the confusingly similar "Navaho" and identical "Navajo" names and marks on the Internet and in stores across the United States to compete directly with the Navajo Nation's retail goods.  Defendant's use of the "Navajo" and "Navaho" names and marks in direct competition with NAVAJO-branded goods, for the identical types of goods marketed and sold by the Navajo Nation, and in many of the same channels of trade as the Navajo Nation's own products, deceives and confuses consumers.  Defendant's conduct is designed to convey to consumers a false association or affiliation with the Navajo Nation, and to unfairly trade off of the fame, reputation, and goodwill of the Navajo Nation's name and trademarks.

5.       Consumers have been misled as to the source, origin, sponsorship, or affiliation of Defendant's products sold under the "Navajo" and "Navaho" names and trademarks.  If Defendant is permitted to continue to market and retail its products under marks that are identical and confusingly similar in appearance, sight, sound, meaning, and overall impression, many consumers will conclude that the goods sold by Urban Outfitters were jointly developed by, licensed, certified, supported by, or are otherwise affiliated with the Navajo Nation, which they are not.

---

and has secured cancellation of the registration of the confusingly similar "Navaho" mark. *The Navajo Nation v. Big Bang Co.*, Reg. No. 3872159, Cancellation No. 92053327 (T.T.A.B. Mar. 22, 2011).

6.    In addition, Urban Outfitters' display and sale of its goods in manners that falsely suggest they are the product of the Navajo Nation, a Navajo arts and crafts organization, an Indian Tribe, an Indian arts and crafts organization, or an Indian artisan, and that such goods are Indian produced or the product of an Indian Tribe, American Indian arts and crafts organization, or Indian artisan violates the Indian Arts and Crafts Act.

7.    Simply put, a direct competitor should not be allowed to benefit at the expense of the Navajo Nation's substantial investment to the detriment of deceived, confused, or misled consumers who seek authentic and genuine NAVAJO products.  The Navajo Nation accordingly brings this action, seeks damages, and seeks to enjoin Urban Outfitters from using the "Navajo" and "Navaho" names and marks for the marketing and sale of goods that directly compete with the Navajo Nation's retail goods marketed and sold under the NAVAJO name and trademarks.

## II. THE PARTIES

### A.    PLAINTIFFS

8.    The Navajo Nation is a sovereign Indian Nation, and federally-acknowledged Indian Tribe.  The Navajo Nation has over 300,000 enrolled members.  The Navajo Nation owns, controls, and exercises jurisdiction over a semi-autonomous territory spanning more than 27,000 miles in northeastern Arizona, the southeastern portion of Utah, and northwestern New Mexico.  The Navajo Nation is an institution, which acts through its political subdivisions (*e.g.*, the Division of Economic Development), wholly-owned instrumentalities (*e.g.*, Navajo Arts and Crafts Enterprise and Diné Development

Corporation), officers, employees, and authorized agents; and on behalf of its members as *parens patriae*.  Hereinafter, the Navajo Nation's political subdivisions, instrumentalities, officers, employees, authorized agents, and the Navajo People are collectively referred to as "the Navajo Nation."

9.    Diné Development Corporation ("DDC") is a corporation wholly owned by the Navajo Nation and formed under the laws of the Navajo Nation.  DDC owns, and is authorized to issue, licenses of the NAVAJO trademark.

10.    Navajo Arts and Crafts Enterprise is a wholly owned instrumentality of the Navajo Nation.

11.    The Navajo Nation possesses sovereign immunity, and brings this Complaint without waiving any of its immunities from counter-claims and cross-claims, defenses, or objections available as a sovereign.

**B.    DEFENDANTS**

12.    Defendant Urban Outfitters, Inc. is an international retail company, with its headquarters located at 5000 South Broad Street, Philadelphia, Pennsylvania 19112-1495.  Urban Outfitters operates under the Urban Outfitters, Anthropologie, Free People, Terrain, Leifsdottir, and BHLDN brands.  Defendant markets and retails its merchandise in its more than 200 stores located internationally and throughout the United States, including in New Mexico.  Defendant also maintains a significant presence on the World Wide Web or Internet, and markets and retails its products online at its websites: www.urbanoufitters.com, www.freepeople.com, and www.anthropologie.com.

13.    UrbanOutfitters.com, L.P. is a wholly-owned subsidiary of Urban Outfitters, Inc.

14.    Urban Outfitters Wholesale, Inc. is a wholly-owned subsidiary of Urban Outfitters, Inc.

15.    Anthropologie, Inc. and Anthropologie.com, L.P. are wholly-owned subsidiaries of Urban Outfitters, Inc.

16.    Free People, L.L.C. and FreePeople.com, L.L.C. are wholly-owned subsidiaries of Urban Outfitters, Inc.

17.    Urban Outfitters, Inc. wholly owns and controls the above-listed subsidiaries.  The actions alleged in this Complaint are committed by Urban Outfitters, Inc. through itself and its subsidiaries.  Urban Outfitters, Inc.'s subsidiaries are not separate autonomous entities, but rather are referred to as "brands" of Urban Outfitters, Inc. in its Form 10-K Annual Reports, and are grouped together as one "business segment" in these same Reports. *E.g.*, Urban Outfitters, Inc., Annual Report (Form 10-K) (Apr. 1, 2011) (hereinafter, "UO 2011 10-K").  Moreover, the consolidated financial reports refer to Urban Outfitters, Inc. and its subsidiaries collectively as "the Company" and pool finances for purposes of its filings with the United States Securities and Exchange Commission. Given the unity of purpose, and the fact that the companies do not operate as separate legal entities, but rather as "brands" of Urban Outfitters, Inc., Urban Outfitters and its subsidiaries are instrumentalities and alter-egos of each other.

18.     These subsidiaries are accordingly included collectively in the definition of "Urban Outfitters, Inc.," and are referred to collectively herein as "Defendant" or "Urban Outfitters."

### III.  JURISDICTION AND VENUE

19.     This Court has personal jurisdiction over Defendant, because Defendant transacts business in the State of New Mexico, operates a store in Albuquerque, New Mexico, and transacts business through the Internet into New Mexico.

20.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338, because one or more of the claims at issue arises under federal law, specifically the Lanham Act, 15 U.S.C. §§ 1051 *et seq.,* including 1121, 1125(a) and (c), and the Indian Arts and Crafts Act, 25 U.S.C. §§ 305e(b), (c), and (d)(1)(B)(i) and (iii). Furthermore, the Navajo Nation is an Indian Nation or Tribe recognized by the Secretary of the Interior, and this matter arises under the "Constitution, laws, or treaties of the United States" for purposes of jurisdiction pursuant to 28 U.S.C. § 1362.

21.     This Court has supplemental jurisdiction over the state law claims at issue in this action pursuant to 28 U.S.C. § 1367, because these claims are so related to the federal law claims as to form part of the same case or controversy; that is, they arise out of a common nucleus of operative facts.

22.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because a substantial portion of the events giving rise to the claims in this action occurred in this District, the injuries presented in this action occurred in this District, and Defendant may be found in this District.

## IV.  FACTUAL BACKGROUND

### A.       The Navajo Nation and the use of the NAVAJO name and trademarks

23.     The Navajo Nation has used the NAVAJO name and trademark in commerce for over 150 years with a variety of goods and services, including goods such as clothing, footwear, bags, jewelry, and house wares.

24.     At least as early as 1941, the Navajo Nation began using the NAVAJO name and mark to market and sell goods through Navajo Arts and Crafts Enterprise.

25.     At least as early as 1943, the Navajo Nation registered the NAVAJO trademark in connection with the sale of its goods and services in commerce in the United States.

26.     The Navajo Nation has currently registered 86 trademarks that include the NAVAJO component and title for a variety of different classes of goods and services; including clothing, jewelry, house wares, and accessories. See the illustrative, and not exhaustive, chart containing some of the NAVAJO trademarks registered with the USPTO located below at paragraph 48.

27.     The Navajo Nation's investment in its name and trademarks is significant, and the Navajo Nation has accumulated goodwill in its mark over the years.  The "Navajo" name and the NAVAJO name and marks are the symbol of the sovereign entity, the Navajo Nation, or as it has been known, the Navajo Indian Tribe or Navajo Tribe of Indians; including its wholly owned commercial enterprises, DDC and Navajo Arts and Crafts Enterprise.  The NAVAJO marks are also prominently featured on the Navajo Nation's websites, and its authorized agents' websites, which include, among others,

8

www.navajo.org, www.navajobusiness.com, http://www.navajobusinessdevelopment.com, www.govanajo.com, and www.discovernavajo.com.

28.     Indeed, the NAVAJO trademark is broadly recognized by purchasers of consumer goods, including clothing, jewelry, and house wares, and by the United States' general public as a brand identifier for the Navajo Nation's Indian-styled and Indian-produced goods.   The NAVAJO trademark is a famous mark, which was famous for decades before Defendant's use.   The fame and goodwill associated with the NAVAJO name and trademark is one of the Navajo Nation's most valuable assets.

**B.     Urban Outfitters, its business, and its development**

29.     Urban Outfitters, which was founded in 1970 and originally operated by a predecessor partnership, was incorporated in the Commonwealth of Pennsylvania in 1976. The principal business activity of Urban Outfitters is the operation of a general consumer product retail and wholesale business. Urban Outfitters markets and sells its products to customers through various channels, including retail stores, three catalogs, and ten Internet web sites.   As of January 31, 2010, and January 31, 2011, Defendant operated 372 stores respectively. UO 2011 10-K at F-7.   Defendant's stores located within the United States totaled 298 as of January 31, 2010, and 334 as of January 31, 2011. UO 2011 10-K at F-7. Defendant's operations in Europe and Canada included 19 and 10 stores as of January 31, 2010, respectively; and 24 and 14 stores, respectively, as of January 31, 2011. UO 2011 10-K at 20.   In addition, Defendant's wholesale segment sold and distributed apparel to approximately 1,400 better department and specialty retailers worldwide during the time period it has used the "Navajo" and "Navaho" names and marks. UO 2011 10-K at 5.

30.     Defendant is a leading lifestyle specialty retail company that operates under the Urban Outfitters, Anthropologie, Free People, Terrain, Leifsdottir, and BHLDN brands. UO 2011 10-K at 1.  Defendant also operates a wholesale segment under its Free People and Leifsdottir brands. *Id.*  Defendant has over 40 years of experience creating and managing retail stores that offer highly differentiated collections of fashion apparel, accessories, and home goods, which according to Defendant are marketed and sold in inviting and dynamic store settings.  *Id.* According to Defendant, its core strategy is to provide "unified store environments that establish emotional bonds with the customer." *Id.* In addition to its retail stores, Defendant offers its products, and markets its brands directly to consumers through its e-commerce web sites, as well as through its Urban Outfitters, Anthropologie, and Free People catalogs.  *Id.*

31.     Urban Outfitters had sales of approximately $2.3 billion in fiscal year 2011. UO 2011 10-K at 1.  Urban Outfitters' store sales accounted for approximately 31.8% of consolidated net sales for 2011. UO 2011 10-K at 2.  According to its 10-K, "[w]e have established a reputation with these young adults [specifically, persons 18 to 28], who are culturally sophisticated, self-expressive, and concerned with acceptance by their peer group . . . . The product offering includes . . . an eclectic mix of apartment wares and gifts." UO 2011 10-K at 2.

32.     Urban Outfitters also offers a direct-to-consumer catalog that markets select merchandise, and Defendant operates a web site that accepts orders directly from customers.  Urban Outfitters purchases merchandise from numerous foreign and domestic vendors; and during fiscal year 2011, Urban Outfitters did business with approximately

10

3,300 vendors. U0 2011 10-K at 8.  Accordingly, it would be reasonable for consumers to conclude, based on Urban Outfitters' business model, that Defendant contracts with the Navajo Nation to sell its goods under the "Navajo" and "Navaho" marks, or even the Navajo Nation's NAVAJO mark; despite the fact that Urban Outfitters has not entered into any license or sponsorship relationship whatsoever with the Navajo Nation for the proper use of any trademark.

33.     Urban Outfitters operates a wholesale division to oversee the wholesale operations of its Free People and Leifsdottir brands.  2011 10-K at 25.  The Free People wholesale division sells goods worldwide through approximately 1,400 department and specialty stores, including Bloomingdale's, Nordstrom, Lord & Taylor, Belk, and their own Free People and Urban Outfitters stores.  2011 10-K at 28.

C.      **Urban Outfitters' use of the "Navajo" and "Navaho" names and trademarks**

34.     At least as early as March 16, 2009, Urban Outfitters started using the "Navajo" and "Navaho" names in its product line, or in connection with the sale of its goods. Defendant's use has included, and includes (but is not limited to): clothing, jewelry, footwear, handbags, caps, scarfs, gloves, undergarments, and flasks.  Defendant's items sold under the "Navajo" and "Navaho" names and marks evoke the Navajo Indian Tribe's tribal patterns, including geometric prints and designs fashioned to mimic and resemble Navajo Indian and Tribal patterns, prints, and designs.  Urban Outfitters has sold and is selling over 20 products using the "Navajo" and "Navaho" trademarks in its retail stores, its catalogs, and its online stores.

11

35.     Free People, a brand of Urban Outfitters, also sells goods using the "Navajo" name and marks, and uses the search term "Navajo" in its online catalog search engine to display products on its website. For example, see http://www.freepeople.com/index.cfm?fuseaction=search.results&searchString=navajo.

36.     Urban Outfitters has distributed and sold items through its Free People wholesale division to other retailers using the "Navajo" name to label or describe its products.

37.     Urban Outfitters began offering retail clothing and accessories as early as March, 2009 with the "Navajo" and "Navaho" names to label or describe its products.  For example, a "Leather Navaho cuff" was offered on Urban Outfitters' website in January 2010.  Sometime in early-2011, and possibly earlier, Urban Outfitters started a product line of 20 or more items containing the NAVAJO name, or the term "Navaho" in the product name alone, which Defendant sold on its website and in its retail stores.  True and correct copies of Defendant's more than 20 items comprising the "Navajo Collection" sold at Urban Outfitters, as they are or have been displayed for online marketing and retailing at Defendant's website, are attached hereto collectively as Exhibit A.[4]

38.     The following is an illustrative, and not exhaustive, list of just some of Defendant's products:

- Navajo Nations Crew Pullover
- Title Unknown Techno Navajo Quilt Oversized Crop Tee
- Truly Madly Deeply Navajo Print Tunic
- Navajo Feather Earrings
- Navajo Sock
- Leather Navaho Cuff Bracelet

---

[4] Plaintiff's counsel caused these PDF images to be copied from Defendant's website on October 16, 2011.

- Navajo Print Fabric Wrapped Flask
- Navajo Hipster Panty

39.     As early as June 30, 2010, Urban Outfitters also offered an "Obey Navajo" shirt on its website.

40.     This is despite the fact that the Navajo Nation has many trademarks, namely, the NAVAJO trademarks, which are related to the names "Navajo" and "Navaho" that cover its goods; including, clothing, footwear, online retail sales, household products, and textiles.

41.     Urban Outfitters knowingly and intentionally used the "Navajo" and "Navaho" names and marks for its retail goods to compete directly with the sale of the Navajo Nation's goods, which are sold using the NAVAJO name and trademarks.

42.     On information and belief, Defendant will continue to sell its goods under the "Navajo" and "Navaho" names and marks, and will continue to use "Navajo" as a search term on its websites to market and sell its products online.

43.     The Navajo Nation demanded that Urban Outfitters cease and desist using the "Navajo" trademark in connection with the sale of Urban Outfitters' retail goods.  A true and correct copy of this letter is attached hereto as Exhibit B.

44.     As reported by the Associated Press on October 24, 2011, Urban Outfitters removed the word "Navajo" from its product names on its website, and replaced "Navajo" with the term "Printed" in response to the Navajo Nation's cease-and-desist letter.

45.     However, although Urban Outfitters purported to have stopped using "Navajo" and "Navaho" with its products, Defendant continued to sell its products in its

retail stores under the "Navajo" and "Navaho" names and marks.  Moreover, Defendant also continued to use the word "Navajo" on its sales receipts.

46.     Defendant has continued to sell its goods with the "Navajo" name and mark on its Free People website, www.freepeople.com.  Free People is currently selling jewelry under the "Navajo" name, and still uses "Navajo" as a search term to display its retail goods.  True and correct copies of Defendant's items as they are or have been displayed for online marketing and retailing at Defendant's Free People website under the "Navajo" name are attached hereto as Exhibit C.  True and correct copies of Defendant's webpages showing Free People's use of the "Navajo" mark as a search term on its Free People website are attached hereto as Exhibit D.   This Court may also see http://www.freepeople.com/index.cfm?fuseaction=search.results&searchString=navajo.

47.     Urban Outfitters has knowingly and intentionally used the "Navajo" and "Navaho" names and marks for its retail products to directly compete with the Navajo Nation's retail goods.

48.     Urban Outfitters' "Navajo" mark and the Navajo Nation's federally registered NAVAJO trademarks are identical in appearance, sight, sound, meaning, and overall impression.   And Urban Outfitters' "Navaho" mark is phonetically identical, confusingly similar in sight and appearance, and identical in meaning and overall impression to the Navajo Nation's registered trademarks.  The following is an illustrative, and not exhaustive, chart showing products sold by Defendant that infringe on the Navajo Nation's trademarks:

| # | Reg. No. | Serial No. | Mark | Class: Goods and Services | Urban outfitters' infringing goods |
|---|---|---|---|---|---|
| 1 | 3793381 | | NAVAJO | Class 18: Backpacks, baby backpacks, book bags, shoulder bags, and tote bags. | Lopes Crossbody Clutch<br>Hacienda Bag<br>Joplin Fringe Bag<br>One of a Kind Needlepoint Hobo |
| 2 | 3829700 | | NAVAJO ARTS & CRAFTS GUILD | Class 8: Tableware sold only within the territory of the Navajo Nation, namely, knives, forks and spoons made of silver, or of silver combined with turquoise or petrified wood settings; flatware made of silver, or of silver combined with turquoise or petrified wood settings.<br>Class 14: Decorative bells, decorative boxes, bracelets, cuff links, cups, earrings, lavaliere pendants, mugs, necklaces, pins, rings being jewelry, napkin rings, salt holders and trays, all made of silver, or of silver combined with turquoise or petrified wood settings. | Vintage Handmade Navajo Necklace (23550890)<br>Vintage Navajo Squash Necklace (23550833)<br>Vintage Navajo Handmade Necklace (23550908)<br>Vintage Navajo Cuff (23551070)<br>Vintage Navajo Squash Necklace (23550858)<br>Vintage Navajo Handmade Cuff (23545569)<br>Vintage Navajo Cuff (23551088) |

| # | REG. NO. | SERIAL NO. | MARK | CLASS: GOODS AND SERVICES | URBAN OUTFITTERS' INFRINGING GOODS |
|---|---|---|---|---|---|
| 3 | 3846651 | | NAVAJO | Class 8: Tableware sold only within the territory of the Navajo Nation, namely, knives, forks and spoons made of silver, or of silver combined with turquoise or petrified wood settings; flatware made of silver, or of silver combined with turquoise or petrified wood settings.<br><br>Class 14: Decorative bells, decorative boxes, bracelets, cuff links, cups, earrings, lavaliere pendants, mugs, necklaces, pins, rings being jewelry, napkin rings, salt holders and trays, all made of silver, or of silver combined with turquoise or petrified wood settings. | Vintage Handmade Navajo Necklace (23550890)<br><br>Vintage Navajo Squash Necklace (23550833)<br><br>Vintage Navajo Handmade Necklace (23550908)<br><br>Vintage Navajo Cuff (23551070)<br><br>Vintage Navajo Squash Necklace (23550858)<br><br>Vintage Navajo Handmade Cuff (23545569)<br><br>Vintage Navajo Cuff (23551088) |
| 4 | 3787515 | | NAVAJO ARTS & CRAFTS GUILD | Class 25: Neckties and leather belts of plain leather, and of leather ornamented with silver, and of leather ornamented with silver and turquoise, or other trimmings for personal wear. | Leather Navaho Cuff |
| 5 | 3787518 | | NAVAJO | Class 25: Neckties and leather belts of plain leather, and of leather ornamented with silver, and of leather ornamented with silver and turquoise or other trimmings, for personal wear. | Leather Navaho Cuff |

16

| # | REG. NO. | SERIAL NO. | MARK | CLASS: GOODS AND SERVICES | URBAN OUTFITTERS' INFRINGING GOODS |
|---|---|---|---|---|---|
| 6 | | 76700672 | NAVAJO | Class 21: Housewares, namely, dinnerware, beverage glassware; cups, namely, coffee cups, tea cups, beverage cups, mugs, serveware, namely, bowls, platters, dishes, plates, serving dishes, and saucers. | Navajo Print Fabric Wrapped Flask |
| 7 | 2237848 | | NAVAJO | Class 25: clothing; namely, tops, vests, shirts, sport shorts, polo shirts, golf shirts, * jackets, * T-shirts, sweat shirts. | OBEY Navajo Painters Jacket<br><br>OBEY Navajo Print Tank Top<br><br>Title Unknown Techno Navajo Quilt Oversized Crop Tee<br><br>Vintage Men's Woolrich Navajo Jacket<br><br>Navajo Nations Crew Pullover<br><br>Deter Navajo Tee<br><br>Navajo Racerback Tank<br><br>OBEY Navajo Nations Crewneck<br><br>OBEY Navajo Glove<br><br>OBEY Navajo Scarf<br><br>Navajo Hipster Panty<br><br>Staring at Stars Strapless Navajo Dress<br><br>Navajo Sock<br><br>UO Navajo Scarf<br><br>Striped Boxy Pullover<br><br>Tye Dye to the Max Dress<br><br>Vermont Knit Sweater Shorts<br><br>Margarita Shorts |
| 8 | 2573986 | | NAVAJO | Class 18: luggage; namely, suitcases, overnight bags and carry-on bags. | Pendleton Navajo Weekender Bag<br><br>Bedouir Leather Bag<br><br>Southwest Mesa Duffle Bag |

| # | REG. NO. | SERIAL NO. | MARK | CLASS: GOODS AND SERVICES | URBAN OUTFITTERS' INFRINGING GOODS |
|---|---|---|---|---|---|
| 9 | 2976666 | | NAVAJO | Class 25: footwear, boots, beachwear, blouses, overalls, rain wear, sweaters, jackets, coats, ski wear, caps, hats. | Red Navajo Plimsoll Sneaker<br><br>Pallas Sandal<br><br>Rebecca Side Lace-up Moc Boot<br><br>Lucca Couture Navajo Pullover Sweater<br><br>Truly Madly Deeply Navajo Print Tunic<br><br>On the V Crochet Tunic<br><br>Kona Pointelle Poncho<br><br>Arizona Blanket Wrap<br><br>OBEY Wool Navajo 5-Panel Cap |
| 10 | 3602907 | | NAVAJO | Class 35: online retail store services; namely, on-line ordering services in the field of clothing—specifically, men's and women's sportswear, namely, jeans, tops, shirts, sport shorts, polo shirts, golf shirts, T-shirts and sweatshirts. | OBEY Navajo Painters Jacket<br><br>OBEY Navajo Print Tank Top<br><br>Title Unknown Techno Navajo Quilt Oversized Crop Tee<br><br>Vintage Men's Woolrich Navajo Jacket<br><br>Navajo Nations Crew Pullover<br><br>OBEY Navajo Glove<br><br>OBEY Navajo Scarf<br><br>Navajo Hipster Panty<br><br>Staring at Stars Strapless Navajo Dress<br><br>Navajo Sock<br><br>Striped Boxy Pullover<br><br>Tye Dye to the Max Dress<br><br>Vermont Knit Sweater Shorts<br><br>Margarita Shorts |

Further, the Navajo Nation's Registrations for the ten trademarks in the chart above are attached hereto collectively as Exhibit E.

49.     On information and belief, Urban Outfitters has knowingly and intentionally chosen the "Navajo" and "Navaho" names and marks for its retail products that will directly compete with the Navajo Nation's retail goods to trade on the fame and goodwill associated with the Navajo Nation's federally registered NAVAJO trademarks.

50.     Defendant has illegally and unlawfully profited from its sale of its various brands' goods under the "Navajo" and "Navaho" names and marks.

51.     The fame or reputation of the NAVAJO name and marks is such that, when Defendant uses the "Navajo" and "Navaho" marks with its goods and services, a connection with the Navajo Nation is falsely presumed.

52.     Defendant's wrongful conduct, which falsely suggests a connection with the Navajo Nation as an institution, undermines the fame and distinction of the NAVAJO trademarks, confuses or deceives reasonable consumers, harms the Navajo Nation, and must accordingly be declared unlawful and enjoined from continuing.

53.     The Lanham Act defines "dilution by blurring" as "association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark," 15 U.S.C. § 1125(c)(2)(B); and "dilution by tarnishment" as such an association "that harms the reputation of the famous mark." 15 U.S.C. § 1125(c)(2)(C).

54.     Defendant's misappropriation of the "Navajo" name and mark to promote its thematic marketing of its "Navajo Collection" and retailing of its 23 "Navajo" products,

as well as its use of the confusingly similar "Navaho" name and mark, makes it very likely that consumers will incorrectly believe that the "Navajo" name is an indistinct term used generally for descriptive purposes.

55.     However, the "Navajo" name, or for that matter the confusingly similar "Navaho" name, is not a general term used for descriptive purposes.  Instead, Navajo Nation's NAVAJO name and trademarks are unique and distinct, and the Navajo Nation uses the NAVAJO trademarks in commerce to distinguish its authentic and genuine products from other products.

56.     Accordingly, to maintain the NAVAJO name and marks' uniqueness in conjunction with distinct products that are authentically and genuinely originating, associated, or affiliated with the famous Navajo Nation, Defendant's wrongful conduct must be enjoined.

57.     Defendant's use of the "Navajo" name and trademark with products such as its "Navajo Flask," which an image of is attached hereto within Exhibit A, is derogatory and scandalous.

58.     The Navajo Nation does not use the NAVAJO name and trademarks in conjunction with alcohol, or items with alcoholic connotations.  Indeed, the Navajo Nation has long banned the sale, manufacture, possession, transport, delivery, and consumption of alcohol within its borders. 17 N.N.C. §§ 410-411 (West 2008).

59.     Defendant's use of the "Navajo" name and mark as such is derogatory and contrary to the Navajo Nation's principles, and such use is inconsistent with the Lanham Act.

60.     Defendant's sale of products of significantly lower quality than the Navajo Nation's own authentic and genuine comparable products, *e.g.*, Defendant's "Navajo Feather Earring," which an image of is attached hereto within Exhibit A, will likely harm the reputation of the NAVAJO name and mark when affixed and used in commerce, in many of the same channels, and in direct competition with the Navajo Nation's genuine and authentic NAVAJO products.

61.     Defendant's marketing and retailing such relatively low-quality products in commerce, no less in the same channels of trade, with the "Navajo" and "Navaho" marks affixed to them will likely harm the reputation of the NAVAJO name and mark, because consumers will come to associate the Navajo Nation's NAVAJO marks, and validly associated products, with Defendant's lower-quality products that are in direct competition with the Navajo Nation's genuine and authentic NAVAJO products.

62.     Defendant's misspelling of the "Navajo" name is contrary to established Navajo Nation law and is scandalous.  The Navajo Nation Code provides that "[a]ll use of the name 'Navajo' shall use the spelling 'j', not 'h'." 1 N.N.C. § 502 (West 2008).

63.     Defendant's use of the "Navaho" mark differs from the NAVAJO mark only in that the second-to-last letter consists of an "h" instead of a "j," and is confusingly similar to the Navajo Nation's own NAVAJO marks.

64.     Defendant's use of a "Navaho" mark should be cancelled as scandalous and derogatory in violation of Navajo Nation law and the Lanham Act.

21

65.     Further, because Defendant has or is engaged in the sale of products that the Navajo Nation may attempt to provide in the normal expansion of the Navajo Nation's business, Defendant's use of the "Navaho" mark is also deceptive under the Lanham Act.

66.     The Navajo Nation will be damaged by Defendant's continued use of the "Navaho" mark, as it grants Defendant a claim to a right to use this "Navaho" mark, despite the Navajo Nation's priority of rights over Defendant's uses of "Navajo," prohibition against the use of "Navaho," and the likelihood of confusion, dilution, and injury to the Navajo Nation's goodwill that will be caused by Defendant's use of the "Navaho" mark.  Thus, in addition to its use of "Navajo," Defendant's use of a "Navaho" mark is also incorrect and improper in light of the requirements of the Lanham Act, as amended, including, but not limited to, the provisions concerning scandalous or derogatory material, deception, confusion, and dilution.

67.     Defendant's use of the "Navajo" name and mark and the "Navaho" mark in conjunction with it products that are part of its "Navajo Collection," and elsewhere, is derogatory and scandalous, has damaged the Navajo Nation, and will continue to damage the Navajo Nation if not declared wrongful and enjoined.

**D.     Urban Outfitters' acts and omissions that falsely suggest Defendant is displaying and selling Indian products**

68.     Urban Outfitters is not a Native American or an American Indian enterprise, entity, or instrumentality.  Nor is Defendant an Indian arts and crafts association or an Indian artisan.   Further, Urban Outfitters has no affiliation, relationship, or valid connection with the Navajo Nation, its political subdivisions, instrumentalities, officers, employees, or authorized agents, nor any other federally-acknowledged Indian Tribe.

69.     A non-Indian maker of products in an Indian style, motif, or design cannot use the terms "Native American," "American Indian," "Tribal," or the name of a particular Indian Tribe in advertising or marketing its products, unless said maker qualifies the usage of such terms so that consumers are not suggested to be purchasing authentic Indian-made products.

70.     Defendant has offered, advertised, marketed, and displayed for sale, and sold its goods via its catalogs, websites, and retail stores in manners that falsely suggested Defendant's products are an Indian product, Indian produced, or the product of an American Indian Tribe, or the product of an Indian arts and crafts organization within the United States, including suggested Indian products that consist of clothing, house wares, and jewelry in a traditional Indian style, motif, or medium.

71.     Urban Outfitters did not qualify its use of "Indian," "Navajo," and other particular names of Indian Tribes in connection with the sale of its retail goods.

72.     Defendant's websites, catalogues, and retail stores have displayed or are displaying numerous traditional Indian-style products composed of Indian motifs and designs without any qualification.

73.     Defendant has displayed, marketed, and retailed its suggested Indian products by using search or identifier terms such as "Native American," "Indian," or the name of a particular Indian Tribe in conjunction with its retail products on its websites. True and correct copies of Defendant's products as they are or have been displayed for online marketing and retailing at Defendant's website in such a manner to convey these false suggestions are attached hereto collectively as Exhibit F.

74.     Moreover, several of Defendant's retail products that convey the false suggestion that they are Indian products include, but are not limited to, Defendant's "Navajo Bracelet," "Navajo Glove," "Vintage Men's Woolrich Navajo Jacket," and "Navajo Feather Earring." True and correct copies of Defendant's products above as they are or have been displayed for online marketing and retailing at Defendant's website in such a manner to convey these false suggestions are attached hereto collectively within Exhibits A, C, D, and F.

75.     Urban Outfitters' sale of its retail goods under the "Native American," "Indian," "Tribal," or the name of a particular Indian Tribe, such as Navajo, falsely suggests Defendant's products are Indian products of the Navajo Nation, an Indian Tribe, an Indian arts and crafts association, or an Indian artisan, when in-fact Defendant's products are not Indian products of the Navajo Nation, an American Indian Tribe, an Indian arts and crafts organization, or an Indian artisan.

76.     Some of Defendant's products, as they were and are advertised, marketed, offered, displayed for sale, and sold by Defendant, which are the subject of this Complaint, are in a traditional Indian style, and are composed of Indian motifs and Indian designs, but are without identifier terms or labels as the products above, though a consumer may find these products using the search terms "Indian," "Native American," or "Navajo," which falsely suggests they are Indian products.  Defendant's marketing, displaying, and retailing such products, which include, but are not limited to, Defendant's "Festival Dance Seed Bead Earring," "Fringed Seed Bead Bracelet," and "Seed Bead Barrette," with its overall line of suggested Indian products, and without any qualification, further suggests that

Defendant's products are Indian products.  True and correct copies of Defendant's products, as they are or have been displayed for online marketing and retailing at Defendant's website in such a manner to convey these false suggestions, are attached hereto collectively as Exhibit G.

77.     At various times relevant hereto, Defendant has been advertising, marketing, offering, displaying for sale, and selling products in manners that falsely suggested its products are Indian-made, an Indian product, a product of an Indian Tribe, or the product of an Indian arts and crafts organization within the United States.

78.     At least since March 16, 2009, and possibly earlier as discovery will confirm, and continuously thereafter to the present date, Defendant has advertised, marketed, offered, displayed for sale, and sold goods in manners that falsely suggested they are Indian-made, an Indian product, a product of an Indian Tribe, or the product of an Indian arts and crafts organization resident within the United States, including Indian products consisting of jewelry and clothing in a traditional Indian style, printed design, or medium.

79.     The Indian-style goods Defendant has advertised, displayed, offered for sale, and sold, including those advertised, sold, displayed, and offered for sale alleged herein, are not, and were not Indian produced, an Indian product made by an Indian, or the product of an Indian arts and crafts organization in the United States, or any non-member Indian artisan properly certified by an Indian Tribe.

## V.  COUNTS

### COUNT ONE

**DEFENDANT IS LIABLE TO THE NAVAJO NATION FOR TRADEMARK INFRINGEMENT PURSUANT TO THE LANHAM ACT'S SECTION 32.**

80.     The Navajo Nation realleges the previous paragraphs of this Complaint as if fully set forth herein.

81.     Urban Outfitters' use of the identical "Navajo" and the confusingly similar "Navaho" name and marks is intended to trade on the good will established by the Navajo Nation through years of its use of the NAVAJO name and marks.

82.     Defendant's use of the identical "Navajo" mark and confusingly similar "Navaho" mark has created actual confusion in the market place, and continues to create a likelihood of confusion.

83.     Defendant's intentional use of the identical "Navajo" and confusingly similar "Navaho" mark in connection with the sale of clothing, jewelry, house wares, footwear, and similar such items is likely to cause confusion, mistake, or deception of others, as to the affiliation, connection, or association of Defendant and Defendant's products with the Navajo Nation.

84.     Defendant's conduct also causes, and is likely to continue to cause, confusion, mistake, or deception as to the origin, sponsorship, or approval of Defendant's goods and commercial activities.

85.     The use of the Navajo Nation's registered trademarks constitutes trademark infringement in violation of 15 U.S.C. § 1114.

86.     Defendant knew of the Navajo Nation's trademark rights, and knowingly, willfully, and deliberately infringed on them, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

87.     The Navajo Nation has been, and will continue to be, damaged by Defendant's willful trademark infringement in the manner, and in the amount that will be proved at trial.

88.     The Navajo Nation has been, and will continue to be, damaged by Defendant's willful trademark infringement in a manner, and in an amount that cannot be fully measured or compensated in economic terms.

89.     Defendant's actions damaged, and will continue to damage, the Navajo Nation's market, reputation, goodwill, and reputation, and may-well discourage current and potential customers from dealing economically with the Navajo Nation.

90.     Such irreparable harm will continue unless Defendant's acts are restrained and enjoined during the pendency of this action, and permanently thereafter.

## COUNT TWO

### DEFENDANT IS LIABLE TO THE NAVAJO NATION FOR TRADEMARK DILUTION PURSUANT TO THE LANHAM ACT'S SECTION 43.

91.     The Navajo Nation realleges the previous paragraphs of this Complaint as if fully set forth herein.

92.     The Navajo Nation's trademark is a famous mark.

93.     Defendant's use of the "Navajo" and "Navaho" names and marks to promote, market, and sell its retail items constitutes willful Trademark Dilution by blurring, and willful Trademark Dilution by tarnishment pursuant to 15 U.S.C. 1125(c).

27

94.     Urban Outfitters' intentional and willful dilution and tarnishment of the Navajo Nation's registered NAVAJO trademark has caused, and will continue to cause damage and irreparable harm to the Navajo Nation, for which there is no adequate remedy otherwise available at law.

95.     Such irreparable harm will continue unless Defendant's acts are restrained and enjoined during the pendency of this action, and permanently thereafter.

**COUNT THREE**

**DEFENDANT IS LIABLE TO THE NAVAJO NATION FOR UNFAIR COMPETITION PURSUANT TO THE LANHAM ACT'S SECTION 43.**

96.     The Navajo Nation realleges the previous paragraphs of this Complaint as if fully set forth herein.

97.     Urban Outfitters' use of the "Navajo" and "Navaho" names and marks to promote, market, and sell its retail items in competition with the Navajo Nation's NAVAJO trademarks constitutes Unfair Competition pursuant to 15 U.S.C. § 1125(a), both through false advertising and infringement of the Navajo Nation's unregistered NAVAJO trademarks.

98.     Urban Outfitters' unfair competition has caused, and will continue to cause, damage to the Navajo Nation; and further, Defendant's conduct is causing irreparable harm to the Navajo Nation for which there is no adequate remedy otherwise available at law.

99.     Such irreparable harm will continue unless Defendant's acts are restrained and enjoined during the pendency of this action, and permanently thereafter.

## COUNT FOUR

## DEFENDANT IS LIABLE TO THE NAVAJO NATION FOR VIOLATIONS OF THE INDIAN ARTS AND CRAFTS ACT, 25 U.S.C. § 305 *et seq*.

100.    The Navajo Nation realleges the previous paragraphs of this Complaint as if fully set forth herein.

101.    The Indian Arts and Crafts Act ("IACA") prohibits non-Indian businesses and individuals from misrepresenting that their goods are the product of an Indian tribe, or American Indian or Native American person(s) through selling any good "in a manner that falsely suggests it is . . . an Indian product." 25 U.S.C. § 305e(a).

102.    The IACA prohibits non-Indians from engaging in "unqualified use" of the name of an Indian Tribe in connection with products they market and retail for sale, such as bracelets, earrings, coats, jackets, and gloves to suggest such goods are Indian products.

103.    Defendant's "Navajo Collection" includes the "Navajo Bracelet," "Navajo Feather Earring," "Navajo Glove," and "Vintage Men's Woolrich Navajo Jacket." Defendant's "Navajo Bracelet," "Navajo Glove," "Vintage Men's Woolrich Navajo Jacket," and "Navajo Feather Earring" are products specifically contemplated listed, or very close to those specifically contemplated by the IACA.

104.    Defendant has offered, advertised, marketed, and displayed for sale, and sold its goods via its catalogs, web-sites, and retail stores in manners that falsely suggest Defendant's products are Indian products pursuant to the IACA, including suggested Indian products that consist of clothing, house wares, and jewelry in a traditional Indian style, motif, or medium.

105.   Defendant's advertisement, display, offering for sale, and sale of Indian style goods in a manner that falsely suggests Defendant's goods are Indian products is illegal, and must be enjoined, because no adequate remedy at law is otherwise available.

106.   With its marketing and retailing, having marketed and retailed, or having caused to be marketed and retailed, its products under the "Navajo," "Native American," and "Indian" names, and using Indian designs and motifs, without qualification, Defendant is misrepresenting that its products are Indian products within the meaning of the IACA.

107.   Defendant offered and offers for sale its goods in a manner that falsely suggests they were and are the products of an Indian Tribe, when in-fact Defendant's products are not the products of any Indian Tribe.

108.   Defendant's acts, therefore, violate the IACA, and Defendant is accordingly strictly liable to the Navajo Nation for its acts.

109.   The Navajo Nation has been injured and damaged as a result of Defendant's actions alleged herein.

110.   Defendant's false suggestions have caused, and will continue to cause damage to the Navajo Nation for which there is no adequate remedy otherwise available at law.

111.   The Navajo Nation is a competitor of Defendant, which sells similar products, and the Navajo Nation has suffered competitive injuries as a result of Defendant's actions alleged herein, as well as other damages including: (1) Members of the Navajo Nation have lost sales as the direct and indirect result of Defendant's offer, display, and sale of similar Indian-style products to those offered, displayed, and sold by these

American Indian People through similar media and markets; (2) Defendant's imitation products have driven down prices of authentic Indian products, forcing the Navajo Nation and American Indian People to offer and garner revenues for authentic products at lower prices; (3) the Navajo Nation and American Indian People have suffered a loss of goodwill and reputation because of Defendant's counterfeit products; and (4) Defendant has made a gross profit on all of the products alleged herein by its unlawful and unprivileged conduct.

112.    The Navajo Nation advertises, markets, and sells authentic Indian-made products similar to those products advertised, offered, displayed, and sold by Defendant, by which Defendant has falsely suggested to be Indian-made products; including, but not limited to, crafts, jewelry, clothing, and accessories in a traditional Indian style or medium.

113.    The Navajo Nation, through its commercial subdivisions, advertises, offers, markets, and sells authentic Indian-made products through various media, including, but not limited to, newspaper advertisements, radio, signs, catalogs, brochures, internet, mailed solicitations, miscellaneous ads and displays, and in-store retail displays.

114.    The injuries suffered by the Navajo Nation include, but are not limited to, advertising injuries arising out of Defendant's misappropriation of the Navajo Nation's advertising ideas and styles of doing business.

115.    The injuries suffered by the Navajo Nation include, but are not limited to, disparagement of its products and advertising injuries, and web-site injuries arising out of Defendant's disparagement of the Navajo Nation's products.

116.    The injuries suffered by the Navajo Nation include, but are not limited to, advertising injuries and web-site injuries arising out of Defendant's infringement of title by

falsely suggesting and misrepresenting that its products are Indian made, when they were not.

117.     The injuries suffered by the Navajo Nation include but, are not limited to, advertising injuries arising out of Defendant's use of another's advertising ideas.

118.     The injuries suffered by Navajo Nation include, but are not limited to, advertising injuries and web-site injuries arising out of Defendant's infringing upon the Navajo Nation's identity, culture, and cache associated with being a producer of authentic Indian products.

119.     Liability for compensatory damages pursuant to the IACA is strict liability and not dependent upon intentional conduct.

120.     The IACA provides for damages that are the greater of treble damages or $1,000 for each day on which the offer or display for sale for each type of good falsely suggests or suggested to be Indian produced, an Indian product, or the product of an Indian, an Indian Tribe, or an Indian arts and crafts organization continues at the time of filing.

121.     The Navajo Nation is entitled to compensation via monetary damages and injunctive relief being imposed on Defendant for the acts stated herein.

## COUNT FIVE

**DEFENDANT IS LIABLE TO THE NAVAJO NATION FOR VIOLATIONS OF THE NEW MEXICO UNFAIR PRACTICES ACT, N.M. STAT. ANN. § 57-12-3.**

122.     The Navajo Nation realleges the previous paragraphs of this Complaint as if fully set forth herein.

123.    Defendant knowingly made false, misleading, and deceptive representations that its goods were, and are "Indian" in connection with their sale.

124.    Defendant knowingly made these false and misleading representations in connection with the sales of its goods, because Defendant knew in-fact that its goods were not made by, in connection, or in any way associated with the Navajo Nation, another Indian Tribe, nor any other Indian organization or person.

125.    Defendant's sale of its goods under the "Navajo" and "Navaho" names and trademarks were made in the regular course of Defendant's businesses.

126.    Defendant's representations tend to, or do, deceive and mislead consumers.

127.    The Navajo Nation requests both monetary and injunctive relief pursuant to its causes of action.

## PRAYER FOR RELIEF

WHEREFORE, the Navajo Nation prays for judgment and relief as follows:

1.    That Defendant's conduct be declared improper and unlawful pursuant to common law, the Indian Arts and Crafts Act, and the Lanham Act;

2.    That Defendant, its subsidiaries, subdivisions, affiliates, officers, employees, agents, and all other persons associated, or in concert with Defendant be permanently enjoined from using the "Navajo" name and mark in advertising, marketing, retailing, promoting, and associating the "Navajo" name and marks with Defendant in any manner validly performed by the Navajo Nation, its political subdivisions, instrumentalities, officers, employees, People, and authorized agents;

3.     That Defendant be permanently enjoined from passing off, diluting, blurring, falsely designating, and falsely associating its corporation, subsidiaries, subdivisions, affiliates, officers, employees, agents, and products with the NAVAJO name and marks, or otherwise from performing any other act likely to create the appearance or belief that Defendant its subsidiaries, subdivisions, affiliates, officers, employees, agents, and all other persons associated with Defendant are in any way supported, in any manner tacit or active, licensed, assigned, sponsored, endorsed, or otherwise associated with the Navajo Nation, its political subdivisions, instrumentalities, officers, employees, People, or authorized agents;

4.     That Defendant be ordered to pay the Navajo Nation all profits made as a result of Defendant's wrongful conduct;

5.     That Defendant be ordered to pay the Navajo Nation three times all profits generated by the marketing and retailing of Defendant's "Navajo" products line pursuant to the Lanham Act;

6.     That Defendant be ordered to pay the Navajo Nation the greater amount of either $1,000 per item for every day for each type of product that is, or has, offered, or displayed for sale, or three times all profits generated by the marketing and retailing of Defendant's Navajo, Indian, and Native American products pursuant to the Indian Arts and Crafts Act;

7.     That Defendant be ordered to pay the Navajo Nation for all of its reasonable costs and attorneys' fees;

8.     That the Navajo Nation be awarded exemplary damages for Defendant's willful and intentional conduct, and Punitive damages based on Defendants' willful actions pursuant to 25 U.S.C. § 305(e);

9.      All other remedies available pursuant to the Indian Arts and Crafts Act, the Lanham Act, and the New Mexico Unfair Practices Act, including treble damages, disgorgement of profits, costs, and attorneys' fees;

10.     That Defendant be ordered to file a written report with this Court, made under oath within 30 days of this Court's judgment, which sets forth in detail the manner that Defendant has fully complied with the permanent injunction pursuant to 15 U.S.C. § 1116; and

11.     All additional and further relief this Court believes just and proper.

## JURY DEMAND

The Navajo Nation requests its causes of action be tried by jury.

RESPECTFULLY SUBMITTED this 28th day of February, 2012.

NAVAJO NATION DEPARTMENT OF JUSTICE
Harrison Tsosie, Attorney General
Dana Bobroff, Deputy Attorney General

/s/ *Brian L. Lewis*                                                  .
Brian L. Lewis, Attorney
Henry Howe, Assistant Attorney General
BIA Club Building
Post Office Box 2010
Window Rock, Navajo Nation (Arizona) 86515
Telephone: 928/871-6933 / Fax: 928/871-6200
blewis@nndoj.org
hhowe@nndoj.org

KELLER ROHRBACK, L.L.P.

_____
Mark A. Griffin (pro hac vice application pending)
Karin B. Swope (pro hac vice application pending)
1201 Third Avenue, Suite 3200
Seattle, Washington 98101
Telephone: 206/428-0561 / Fax: 206/623-3384
mgriffin@kellerrohrback.com
kswope@kellerrohrback.com

*Attorneys for the Navajo Nation*