# THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

THE NAVAJO NATION, a sovereign Indian
Nation, DINÉ DEVELOPMENT
CORPORATION, a corporation wholly-owned
by and formed under the laws of the Navajo
Nation, and NAVAJO ARTS AND CRAFTS
ENTERPRISE, a wholly-owned instrumentality
of the Navajo Nation,

   Plaintiffs,

v.

                   No. Civ. 12-195 LH/WDS

URBAN OUTFITTERS, INC., UO.COM,
L.L.C., URBAN OUTFITTERS
WHOLESALE, INC., ANTHROPOLOGIE,
INC., ANTHROPOLOGIE.COM, L.L.C., and
FREE PEOPLE of PA, L.L.C., Pennsylvania
Corporations, and FREEPEOPLE.COM, L.L.C.,
a Delaware Corporation,

   Defendants.

## MEMORANDUM OPINION AND ORDER

On August 12, 2013, Plaintiffs The Navajo Nation, the Diné Development Corporation, and the Navajo Arts and Crafts Enterprise (collectively, "Plaintiffs" or "the Navajo Nation") filed a Motion and Memorandum for Leave to File a Third Amended Complaint (ECF No. 76). Defendants Urban Outfitters, Inc.; UO.com, L.L.C.; Urban Outfitters Wholesale, Inc.; Anthropologie, Inc.; Antrhopologie.com, L.L.C.; Free People of PA, L.L.C.; and Freepeople.com, L.L.C. (collectively "Defendants") oppose the motion, arguing that leave should be denied based on futility of amendment. This Court, having considered the pleadings,

motions, briefs, relevant law, and otherwise being fully advised, concludes that the motion to amend to allow Plaintiffs to add claims for contributory and vicarious liability under the Lanham Act and common law should be granted.  The Court, however, upon consideration of the parties' supplemental briefs concerning Plaintiffs' claims under the New Mexico Unfair Practices Act ("NMUPA"), N.M. Stat. Ann. § 57-12-3, concludes that this claim should be dismissed.  Therefore, when Plaintiffs file their Third Amended Complaint, they should not include their NMUPA claim.

## I. INTRODUCTION

Currently, the Navajo Nation asserts claims against Defendants for trademark infringement, trademark dilution, unfair competition, false advertising, commercial practices laws violations, and violation of the Indian Arts and Crafts Act.  Specifically, Plaintiffs allege in Count One that Defendants' use of the "Navajo" and "Navaho" mark in connection with the sale of clothing, jewelry, house wares, footwear, and similar items is likely to cause confusion, mistake, or deception in the market place, has created actual confusion in the market place, and constitutes trademark infringement in violation of 15 U.S.C. §§ 1114 and 1117 of the Lanham Act.  *See* Am. Compl. ¶¶ 81-91, ECF No. 30.  In Count Two, Plaintiffs assert that Defendants' use of the "Navajo" and "Navaho" names and marks to promote, market, and sell their retail items constitutes willful Trademark Dilution by blurring, and willful Trademark Dilution by tarnishment under § 1125(c) of the Lanham Act.  *See id.* ¶¶ 92-96.  Plaintiffs contend in Count Three that Defendants are also liable for Unfair Competition and False Advertising under § 1125(a) of the Lanham Act based on false advertising and infringement of the Navajo Nation's unregistered NAVAJO trademarks.  *See id.* ¶¶ 97-101.  In Count Four, Plaintiffs allege that Defendants violated the Indian Arts and Crafts Act, 25 U.S.C. § 305 *et seq*., ("IACA") by

offering, advertising, marketing, displaying for sale, and selling goods that falsely suggest Defendants' products are products of an Indian Tribe, when in fact they are not products of any Indian Tribe. *See id.* ¶¶ 102-22.

Plaintiffs assert state law claims in the two remaining counts. In Count Five, Plaintiffs contend that Defendants are liable for violation of the NMUPA, N.M. Stat. Ann. § 57-12-3, through their sale of goods under the "Navajo" and "Navaho" names and trademarks, as well as their sale of other goods falsely represented as authentic Indian goods, when Defendants knew that their goods were not made by, in connection, or in any way associated with the Navajo Nation, another Indian Tribe, or any other Indian organization or person. *See id.* ¶¶ 123-28. Finally, Plaintiffs allege in Count Six that Defendants' willfully committed acts and omissions caused dilution and/or tarnishment of the distinctive quality of the Navajo Nation's NAVAJO marks in violation of the New Mexico Trademark Act ("NMTA"), N.M. Stat. Ann. § 57-3B-15. *See id.* ¶¶ 129-33.

## II.    PROCEDURAL HISTORY

The Navajo Nation sent to Urban Outfitters a cease-and-desist letter dated June 30, 2011, demanding that they cease using the "Navajo" trademark in connection of their sale of goods. *See* Am. Compl., Ex. B, ECF No. 30-1 at 39-41 of 41. Defendants admit receiving the cease-and-desist letter on October 12, 2011. *See* Proposed Am. Compl. ¶ 87, ECF No. 77-1. In response, on October 24, 2011, Urban Outfitters replaced the term "Navajo" with "Printed" on its website. *See id.* ¶ 50. Plaintiffs assert, however, that Defendants have continued to sell their products in their retail stores under the "Navajo" and "Navaho" names and marks and have used the word "Navajo" on their sales receipts. *See id.* ¶ 51.

Plaintiffs filed their initial complaint (ECF No. 1) in this case on February 28, 2012. On

April 30, 2012, Defendants filed a Motion to Dismiss the Complaint and Memorandum in Support (ECF No. 16).  Subsequently, Plaintiffs filed an Amended Complaint (ECF No. 30), and Defendants filed a motion to dismiss the amended complaint (ECF No. 33) on June 22, 2012.

While the motions to dismiss were pending, by letter dated August 3, 2012, Plaintiffs requested confirmation that Defendants would not engage in the challenged use of the "Navajo" mark during the course of the lawsuit.  *See* Decl. of Mark A. Griffin, Ex. A, ECF No. 41-1 at 1 of 14.  By letter dated August 10, 2012, Defendants responded that they had instructed their employees to discontinue use of the term "Navajo" and that there was nothing for the Court to preliminarily enjoin.  *Id.*, Ex. B, ECF No. 41-1 at 5 of 14.  Plaintiffs replied that, based on these representations, they would not seek a preliminary injunction.  *Id.*, Ex. C, ECF No. 41-1 at 7 of 14.

By letter dated September 21, 2012, Plaintiffs asserted that Defendants were continuing to engage is trademark violations.  *Id.*, Ex. D, ECF No. 41-1 at 8 of 14.  Plaintiffs stated they had "evidence that an Obey cap and other items were offered for sale in an Urban Outfitters' store in Evanston, Illinois on August 22, 2012 tagged with the word 'Navajo'" and threatened to file a motion for preliminary injunction in the absence of an explanation.  *Id.*  On October 1, 2012, Defendants responded by categorically denying any wrongdoing and stating that "the hangtags in question were supplied by Obey and shipped with the product" and "were not supplied by any of the defendants."  *Id.*, Ex. E, ECF No. 41-1 at 10-11 of 14.  Defendants stated that they were not responsible for the actions of the supplier, yet they instructed their supplier to cease shipping any item using the term "Navajo."  *Id.*, Ex. E, ECF No. 41-1 at 11 of 14.

On March 26, 2013, this Court entered a Memorandum Opinion and Order granting the motion to dismiss the amended complaint to the limited extent that the Court dismissed as a

4

matter of law two theories upon which Plaintiffs based their dilution by tarnishment claim in Count Two, but denying the motion to dismiss in all other respects.  Mem. Op. and Order 45-46, ECF No. 52.  All counts thus remained in the case.  *Id.*  As to the NMTA claim in Count Six, the Court granted Plaintiffs leave to amend their Amended Complaint to add the necessary factual allegations of fame in New Mexico.  *See id.* at 44-46.  Additionally, the Court reserved ruling on the NMUPA claim in Count Five pending consideration of the parties' supplemental briefs setting forth their respective positions concerning whether there is a public interest component to business competitor standing, whether Plaintiffs have sufficiently alleged a public interest component in their Amended Complaint, and whether certification is appropriate and warranted for the NMUPA claim.  *Id.* at 45-46.  The parties subsequently filed their supplemental briefs on the identified issues.  *See* Defs.' Supp. Br., ECF No. 55; Pls.' Supp. Br., ECF No. 56.

On April 4, 2013, pursuant to the Court's Memorandum Opinion and Order, Plaintiffs filed a Second Amended Complaint, re-alleging the same counts and adding factual allegations for the NMTA claim that the NAVAJO trademarks are widely recognized and famous in New Mexico.  *See* Second Am. Compl., ECF No. 54.  On April 22, 2013, the parties submitted a Joint Status Report in which Defendants contended that they never infringed any protectable rights or violated any law, and that they "*merely re-sold goods provided to it by its suppliers which used the term 'navajo'* – not in a trademark sense – but rather to identify the style and design/pattern of the goods."  Joint Status Report 3, ECF No. 58 (emphasis added).  Defendants further asserted that they have not profited "from their use (and the use of their suppliers) of the term 'navajo'."  *Id.* at 8.

A week later, on April 29, 2013, the Court stayed the case pending settlement facilitation.  Order, ECF No. 60.  Following an unsuccessful attempt to mediate, on August 2, 2013, the

parties filed a Stipulation and Proposed Case Management Order. *See* Stipulation, ECF No. 71. The stipulated case management schedule included a deadline of February 28, 2014, for amending pleadings; a deadline of June 30, 2014, for fact discovery; and a deadline of May 1, 2015, for the pretrial order. *See id.* at 2. On August 7, 2013, the Court entered a scheduling order adopting the proposed case management order of the parties. Order, ECF No. 75. The Court also permitted the parties to serve a total of 50 interrogatories, 50 requests for admission, and 50 requests for production, as a group. *Id.*

On August 12, 2013, Plaintiffs filed their motion for leave to file a third amended complaint. Pls.' Mot., ECF No. 76. Plaintiffs seek to add two alternative counts of secondary liability and to set forth the factual allegations supporting the counts. In Count Seven, Plaintiffs seek to add a claim for Contributory Trademark Infringement under the Lanham Act and Common Law. Proposed Third Am. Compl. 38-39, ECF No. 77-1. In Count Eight, Plaintiffs request to add a claim for Vicarious and/or Enterprise Liability under the Lanham Act and Common Law. *Id.* at 39-40. Defendants object to the proposed amendment based on futility of amendment, arguing that Counts Seven and Eight fail to state a plausible claim.

Additionally, in footnote 3 of their response, Defendants argue that Count Five of the proposed complaint, the NMUPA claim, while not new, is also subject to dismissal because Plaintiffs lack standing to assert it. The Court will take the opportunity herein to address the issue on which it had previously reserved ruling: whether the NMUPA claim must be dismissed because Plaintiffs lack standing to assert the claim.

## III. LEGAL STANDARD

When the 21-day time limit for amending a complaint as a matter of course has passed, Federal Rule of Civil Procedure 15(a) provides that a party may amend its pleading only with the

opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a)(1)-(2). The court should freely give leave when justice so requires. Fed. R. Civ. P. 15(a)(2). The decision of whether to allow amendment of the pleadings under Rule 15(a) is within the discretion of the trial court. *Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006). Leave sought must be freely given in the absence of any justifiable reason for the denial of the motion, such as undue delay, bad faith, repeated failure to cure deficiencies by amendments, undue prejudice, or futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## IV. ANALYSIS

### A. The Proposed Amended Complaint is Timely and Will Not Result in Undue Prejudice

Although lateness does not in itself justify denial of an amendment, protracted delay, with its attendant burdens on the opposing party and the court, may itself be a sufficient reason to deny amendment. *See Minter*, 451 F.3d at 1205. "[D]enial of leave to amend is appropriate 'when the party filing the motion has no adequate explanation for the delay.'" *Id.* at 1206 (quoting *Frank v. U.S. West*, 3 F.3d 1357, 1365-66 (10th Cir. 1993)). Prejudice typically occurs when the amendment unfairly affects the defendant's ability to prepare its defense to the amendment. *See Minter*, 451 F.3d at 1208. Prejudice often occurs when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues. *Id.* Prejudice may also be shown where the proposed amendment would require the opposing party to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute. *Block v. First Blood Assoc.*, 988 F.2d 344, 350 (2d Cir. 1993).

Defendants argue that the motion to amend is untimely because Plaintiffs were aware as early as October 1, 2012, that Defendants disclaimed liability because a third party affixed the

7

"Navajo" label, yet Plaintiffs waited 10 months to bring their claims for secondary liability. Defendants further contend that they will be prejudiced by the amendment because they have already served comprehensive discovery addressing Plaintiffs' initial six causes of action and the Court has already limited Defendants to 50 interrogatories, requests for admissions, and document requests.

The Court disagrees that Plaintiffs' proposed amended is untimely and that Defendants will suffer undue prejudice from the amendment. Plaintiffs filed their proposed amendment well before the deadline for filing amendments, and that deadline is still many months away. Moreover, during much of those intervening 10 months, Plaintiffs were awaiting decision by this Court on Defendants' motion to dismiss, and following that decision, the case was stayed. Plaintiffs' failure to move to amend for 10 months is therefore reasonable. Finally, Defendants have not shown that undue prejudice will result from the amendment. The new claims arise from the same transactions and occurrences alleged in the prior complaints and arise out of the defenses that Defendants themselves have asserted. Trial will not occur before May 2015 and discovery has just begun. As of the time of briefing, Defendants had not yet exhausted their allotted interrogatories, requests for admission, and requests for production, and thus, Defendants could address new issues related to the new claims through their remaining discovery requests. Defendants also can request additional discovery, if the remaining number of requests are insufficient. Accordingly, neither untimeliness nor prejudice justifies denying leave to amend.

**B.     The Proposed Amended Complaint is Not Futile**

Defendants also contend that Plaintiffs' proposed amended complaint fails to state a claim for contributory trademark infringement or for vicarious liability, and thus, amendment would be futile. To determine futility, this Court must determine whether the proposed

amendment would be subject to dismissal. *See Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004) (quoting *Jefferson County Sch. Dist. v. Moody's Investor's Services*, 175 F.3d 848, 859 (10th Cir. 1999)).

The Court can dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Plaintiff's complaint must set forth factual allegations that "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It is not enough for a plaintiff to just set forth labels, conclusions, and formulaic recitation of the elements of a cause of action. *Id.* When reviewing a plaintiff's complaint in ruling on a Rule 12(b)(6) motion, the Court must accept all well-pleaded allegations as true. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). The Court must view the allegations in the light most favorable to the plaintiff. *Id.* The Court "will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). This plausibility standard does not require evidence of probability, "but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### 1. Contributory Trademark Infringement under the Lanham Act and Common Law (Count Seven)

The Supreme Court has ruled that "liability for trademark infringement can extend beyond those who actually mislabel goods with the mark of another." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 853 (1982). "[I]f a manufacturer or distributor intentionally induces another to infringe a trademark, *or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement*, the manufacturer or distributor is contributorially responsible for any harm done as a result of the deceit." *Id.* at 854 (emphasis added). "The elements of a contributory liability claim are thus (1) supply of a product and (2)

9

knowledge of direct infringement." *Procter & Gamble Co. v. Haugen*, 317 F.3d 1121, 1128 (10th Cir. 2003). Contributory liability not only applies to manufacturers, but may extend to licensors, franchisers, or other similarly situated third parties. *See id.* at 1128-29.

The Tenth Circuit recently addressed the issue of contributory infringement in the case of *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229 (10th Cir. 2013). Relying on *Inwood Laboratories* and *Haugen*, the Tenth Circuit explained that contributory infringement is akin to aiding and abetting and "generally consists of either intentionally causing or *knowingly facilitating the infringement of the plaintiff's mark by a third party*." *Id.* at 1240 (emphasis added). The Tenth Circuit later stated: "Contributory infringement occurs when the defendant either (1) intentionally induces a third party to infringe on the plaintiff's mark or (2) enables a third party to infringe on the mark while knowing or having reason to know that the third party is infringing, yet failing to take reasonable remedial measures." *Id.* at 1249.

Defendants argue that, in the proposed amended complaint, Plaintiffs have not adequately pleaded that Defendants failed to take reasonable remedial measures to stop the alleged infringement. Defs.' Resp. 6-10, ECF No. 78. Defendants contend that, assuming the cease-and-desist letter they received from Plaintiffs on October 12, 2011 constitutes a reason to know of Obey's alleged infringement, the proposed complaint does not sufficiently allege that Defendants thereafter failed to investigate or take reasonable remedial measures. *Id.* Defendants assert that Plaintiffs' allegations do not meet the plausibility standard. *Id*. Defendants point out that Plaintiffs only alleged a few specific examples where Defendants offered for sale items with an Obey hangtag with the word "Navajo" in the two years following Defendants' receipt of the cease-and-desist letter. Defendants argue that these isolated violations, found in less than 1% of Defendants' stores, show that Defendants did, in fact, undertake reasonable remedial measures to

stop the alleged infringement.  *See id.*  They contend that, even if the allegations are arguably "consistent" with an absence of reasonable remedial measures, being "consistent" with a right to relief is not enough under *Iqbal*'s pleading standard.  *See id.*

Plaintiffs argue that they state a claim for contributory infringement.  First, they contend that "failing to take reasonable remedial measures" is not a separate element for a contributory infringement claim, relying on the language of *Inwood Laboratories* and *Haugen*, instead of *1-800 Contacts*.  Second, Plaintiffs assert that, even if failing to take reasonable remedial measures is an element, the proposed complaint sufficiently alleges the element.

Assuming *arguendo* that the failure to take reasonable remedial measures is an element in all cases of contributory contributory, Plaintiffs have sufficiently pled non-conclusory facts to support that element to show a plausible right to relief.  Plaintiffs allege that Defendants were on notice by October 12, 2011, that they were unlawfully using the mark "Navajo" to sell their products.  *See* Proposed Am. Compl. ¶ 87, ECF No. 77-1.  Plaintiffs further allege that, after receipt of the October 12, 2011 cease-and-desist letter, Defendants continued to sell articles of clothing using the "Navajo" tag and "Navajo" receipt, providing as examples:  a "Navajo Scarf" from a Seattle store on October 28, 2011; a "Navajo Hipster" panty in a Seattle store on October 24, 2011; and "Navajo" labeled Obey clothing in an Evanston, Illinois, store on August 22, 2012.  *See id.* ¶¶ 89-91.  Additionally, Plaintiffs assert that Defendants continued to sell products on some of its websites using the "Navajo" trademark, including after October 12, 2011.  *Id.* ¶ 92.  Plaintiffs also allege:

> [T]hird party suppliers allegedly provided goods to Defendant[s] with the trademark "Navajo" affixed to the goods in hangtags. Defendant[s] contributed to the direct infringement by knowingly, or being willfully blind and allowing these goods to be sold in their stores and on their website, and by profiting from the trademark violations. Defendant[s] also contributed to the violations by printing and providing to consumers receipts that included the mark "Navajo" in support

> of the hang tags that sold the goods under the mark "Navajo," by adding the word "Navajo" to market the online sales of the third party suppliers, [] and by using the word "Navajo" as a key word search on their websites to display the goods.
>
> Defendant[s] continued to provide the premises, facilities and instrumentalities for the infringement and dilution when it knew or has reason to know, or was willfully blind to the fact that the direct infringers were and are engaging in trademark infringement and dilution.

*Id.* ¶¶ 148-49.

Although Plaintiffs did not expressly allege that Defendants "failed to take reasonable remedial measures," Plaintiffs state a plausible claim, because the allegations that the infringement continued unabated in Defendants' stores and on their websites, despite their alleged knowledge that use of the term "Navajo" was infringing, reasonably support the inference that Defendants failed to take reasonable remedial measures. Plaintiffs also allege that Defendants printed receipts with the term "Navajo" for products with "Navajo" hangtags, actively contributing to the alleged infringement and indicating a failure to take reasonable steps to stop the infringement. Moreover, Plaintiffs allege that Defendants acted with knowledge or willful blindness when they continued to sell the infringing products in their stores and website. The definition of "willful blindness" under the Lanham Act is when a person suspects wrongdoing and deliberately fails to investigate. *Hard Rock Cafe Licensing Corp. v. Concession Services, Inc.*, 955 F.2d 1143, 1149 (7th Cir. 1992). Plaintiffs' allegation of willful blindness thus also provides a factual basis that Defendants did not take reasonable remedial measures. *Cf. Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 109 (2d Cir. 2010) ("A service provider is not, we think, permitted willful blindness. When it has reason to suspect that users of its service are infringing a protected mark, it may not shield itself from learning of the particular infringing transactions by looking the other way."); *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 265 (9th Cir. 1996) (holding that plaintiff stated contributory infringement claim where

complaint alleged facts that swap meet disregarded vendors' blatant trademark infringements with impunity, because contributory liability may be imposed if a swap meet is "willfully blind" to ongoing violations); *Coach, Inc. v. Farmers Market & Auction*, 881 F.Supp.2d 695, 701 (D. Md. 2012) ("In this case, Coach has stated a facially plausible claim for contributory trademark violations. As in *Fonovisa*, Coach has alleged prior raids and seizures, a notification of violations, and the sending of company investigators. Furthermore, Coach transmitted this information through its letter to Burroughs, which supports the inference that Burroughs had actual knowledge of the alleged violations. Additionally, after Coach sent the June 2010 letter . . . , it . . . allegedly discovered more violations. In other words, these allegations support the inference that (1) Burroughs had knowledge of Lanham Act violations and (2) failed to take any remedial measures for a half-year period despite the violations' continuance. . . . [T]he alleged facts make it plausible that the Market Defendants knew or should have known of the violations, or were willfully blind to them.").

Finally, Plaintiffs' provision of specific examples from at least two stores out of 200 stores does not establish that Defendants took appropriate remedial measures. According to the proposed amended complaint, Defendants operated and managed the stores in which the offending products were sold, and thus, were allegedly in a position to stop the offending use by simply monitoring and pulling the offending tags or products. Whatever measures Defendants did or did not take following receipt of the cease-and-desist letter failed to prevent the alleged infringement from occurring in at least three specific instances. Those specific examples thus support, and do not contradict, Plaintiffs' more general allegations of continued knowing, or willfully blind, contributory infringement.[1]

---

[1] To take Defendants' argument to its logical end, before filing suit, a plaintiff would have to

Consequently, Plaintiffs have sufficiently stated a plausible claim for contributory trademark infringement that would withstand dismissal. *See 1-800 Contacts*, 722 F.3d at 1254 (citing with approval *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 505 (6th Cir. 2013), for the proposition that "when flea market operator had been informed that vendors were selling counterfeit goods, he was 'properly held liable for contributory trademark infringement because he knew or had reason to know of the infringing activities and yet continued to facilitate those activities by providing space and storage units to vendors without undertaking a reasonable investigation or taking other appropriate remedial measures'"). Allowing Plaintiffs to add Count Seven would therefore not be futile and the Court will permit the amendment.

### 2. Vicarious and/or Enterprise Liability under the Lanham Act and Common Law (Count Eight)

"Vicarious liability arises when common-law principles of agency impose liability on the defendant for the infringing acts of its agent." *Id.* at 1249. A principal is subject to liability for its agent's tortious conduct if the conduct is within the scope of the agent's actual authority or ratified by the principal. *Id.* at 1251. "An agent acts with actual authority if it 'reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act.'" *Id.* (quoting Restatement (Third) of Agency § 2.01). A joint tortfeasor may also bear vicarious liability for the trademark infringement by another where "the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product."

---

canvas all or a majority of a defendant's stores to determine if the appropriate percentage of stores were infringing or contributing to the infringement of the plaintiff's mark. This Court is not convinced that such extensive investigative measures are required before instituting a Lanham Act suit when the plaintiff has knowledge of infringing activity at a sampling of stores, suggesting widespread practices. The purpose of discovery is to more fully flesh out the factual basis undergirding the parties' claims.

*Hard Rock*, 955 F.2d at 1150.

Defendants argue that Plaintiffs have not stated a claim for relief because they only give a formulaic recitation of the elements and because their allegation of a partnership or agency relationship between Defendants and their suppliers is a legal conclusion, not a factual allegation. The Court disagrees with Defendants, because Plaintiffs have alleged sufficient non-conclusory underlying facts to support their legal conclusions. Plaintiffs allege that the third-party suppliers and infringers of the "Navajo" mark, such as Obey Clothing, supplied the goods to Defendants who then sold the infringing goods in their stores and on their websites. *See* Proposed Am. Compl. ¶¶ 86, 156, ECF No. 77-1. Plaintiffs also assert that Defendants provided sales receipts with the "Navajo" mark to customers and have marketed the infringing goods on their websites with the word "Navajo." *Id.* The proposed complaint further alleges that Defendants are in control of the displays, hangtags, receipts, and marketing materials in their stores and on their websites. *Id.* ¶ 82. These allegations state a plausible claim that Defendants and the third-party suppliers exercise joint control over the infringing products and that a principal-agency relationship exists between Defendants and the third-party suppliers. *Cf. Government Employees Ins. Co. v. Google, Inc.*, 330 F.Supp.2d 700, 705 (E.D. Va. 2004) ("Because GEICO has alleged that both Overture and the advertisers control the appearance of the advertisements on Overture's search results page and the use of GEICO trademarks therein, plaintiff has stated a claim for vicarious infringement against Overture."). Allowing Plaintiffs to amend their complaint to add Count Eight is not futile, and thus this Court will permit the amendment.

### 3. New Mexico Unfair Practices Act (Count Five)

In Defendants' prior motion to dismiss, Defendants argued that the NMUPA claims must

be dismissed because only consumers may bring a suit thereunder. After extensive analysis of the statute and case law, this Court stated:

> Given the broad statutory language in the NMUPA, the consumer protection policy underlying the NMUPA, and the compelling authority from other states with similar statutes as New Mexico's that allow business competitor standing where the deceptive act affects the public interest, this Court finds that there are good reasons to conclude that the New Mexico appellate courts, when viewing the particular legal issue of business competitor standing, may adopt the reasoning of the courts in those states that allow business competitor standing where the deceptive act affects the interest of the consuming public. *See*, *e.g.*, *Downers Grove Volkswagen, Inc.*, 190 Ill.App.3d at 534 (holding that business competitor, who is not a consumer, may sue under Illinois Consumer Fraud and Deceptive Business Practices Act where the alleged deceptive conduct "involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns").

Mem. Op. and Order 42, ECF No. 52.

The Court noted, however, that "briefing on this issue . . . has not directly addressed whether there is a public interest component to business competitor standing and/or whether Plaintiffs have sufficiently alleged a public interest component in their Amended Complaint." *Id.* at 43. The Court thus ordered the parties to submit simultaneous briefs "setting forth their respective positions concerning a public interest component to business competitor standing and whether certification is appropriate and warranted for the NMUPA claim." *Id.* at 43-44. The parties timely filed their respective briefs addressing the issues.

On the issue of certification, both parties did not wish the Court to certify the NMUPA standing question to the New Mexico Supreme Court. The Court will therefore not certify the question and will instead rule on whether Plaintiffs have standing to assert a NMUPA claim.

The Tenth Circuit has cautioned that it is not the place of a federal court sitting in diversity to expand state law beyond the bounds set by the state supreme court or, in the absence of state supreme court precedent, by the state's lower courts. *Haugen*, 222 F.3d at 1280. A

federal court should generally be reticent to expand state law without clear guidance from the state's higher courts.  *See id.* (quoting *Taylor v. Phelan*, 9 F.3d 882, 887 (10th Cir. 1993)).  This Court, in its prior Memorandum Opinion and Order, indicated that there were good reasons to believe that the New Mexico appellate courts, when directly addressing the issue of business competitor standing, "may similarly construe the 'any person' language in the NMUPA to allow standing to a business competitor where the business competitor can show that the defendant's challenged practice significantly affects the public as actual or potential consumers of the defendant's goods or services."  Mem. Op. and Order 39, ECF No. 52.  Defendants are correct, however, that the most recent pronouncements by the New Mexico Court of Appeals on the NMUPA clearly have stated that "the UPA gives standing only to buyers of goods or services." *See Santa Fe Custom Shutters & Doors v. Home Depot U.S.A., Inc.*, 2005-NMCA-051, ¶ 17, 137 N.M. 524, 113 P.3d 347.  *See also Hicks v. Eller*, 2012-NMCA-061, ¶ 20, 280 P.3d 304 ("Consistent with its purpose as consumer protection legislation, the UPA gives standing only to buyers of goods and services. . . . Because Hicks never purchased anything from Eller or an intermediary of Eller, she has no UPA claim against him."); *Lohman v. Daimler-Chrysler Corp.*, 2007-NMCA-100, ¶ 32, 142 N.M. 437, 166 P.3d 1091 (limiting scope of *Santa Fe Custom Shutters* and noting that, in that case, the court "merely observed that 'the UPA contemplates a plaintiff who seeks or acquires goods or services *and* a defendant who provides goods or services'").

  Defendants, in their supplemental brief, cite cases from other judges in this federal district court that have rejected invitations to expand the NMUPA to cover cases brought by business competitors.  *See*, *e.g.*, *Mak Towing, Inc. v. Danlar Collision Inc.*, No. Civ. 12-487 WJ/LFG, Mem. Op. and Order 2-4, ECF No. 47; *Trademarks Holding, LLC v. American*

*Property Management Corp.*, No. Civ. 07-0167 BB/WDS, Mem. Op. and Order 5-6, ECF No. 168. The Honorable Bruce Black, in holding that a business competitor lacks standing to sue under the NMUPA, relied on the aforementioned statements in *Santa Fe Custom Shutters* and *Lohman* that a plaintiff must be a buyer of goods or services. Judge Black relied on *Haugen* for the proposition that it "is not the providence of the federal courts to expand state statutory remedies beyond the law as interpreted by the state courts." *Trademarks Holding, LLC*, No. Civ. 07-0167, Mem. Op. and Order at 5, ECF No. 168. Judge Black further explained:

> Recent authoritative state court opinions as to the meaning of state law are thus to be honored in diversity cases. This Court has therefore twice recently rejected attempts to expand the UPA to allegations related to trademark infringement.
>
> Plaintiffs would quote and emphasize language of the UPA not relied on by the New Mexico court in *Santa Fe Custom Shutters*. Plaintiffs cannot, however, obliterate the clear language of the UPA and repeated restatements by the New Mexico Courts that the UPA only applies to misstatements made in reference to the sale of goods or services. Plaintiffs can produce no such nexus here and the claim must be [d]ismissed.

*Id.* at 5-6 (internal citations omitted). *See also Mak Towing*, No. Civ. 12-487, Mem. Op. and Order at 2-3, ECF No. 47 (relying on New Mexico Court of Appeals's decision in *Hicks* in holding that business competitor lacks standing to sue under NMUPA because it is not a buyer of goods or services).

This Court is persuaded by Judge Black's and Judge Johnson's reasoning. Although the New Mexico appellate courts may expand its current construction of the NMUPA to permit business competitor standing, principles of federalism instruct that this federal court should not expand the bounds of state law in light of the most recent, clear statements of the New Mexico Court of Appeals that the NMUPA gives standing only to buyers of goods and services. Plaintiffs have asked this Court not to certify the question to the New Mexico Supreme Court for decision, so this Court will defer to the cases of *Santa Fe Custom Shutters*, *Lohman*, and *Hicks*

on their plain limitation of NMUPA standing to buyers of goods and services.

Because Plaintiffs have not alleged that they are buyers of the infringing goods, they lack standing to bring a claim under the NMUPA. The Court will therefore dismiss the NMUPA claim. Consequently, Plaintiffs may file their proposed amended complaint, but it must not contain the NMUPA claim.

**IT IS THEREFORE ORDERED** that

1. Plaintiffs' Motion and Memorandum for Leave to File a Third Amended Complaint **(ECF No. 76)** is **GRANTED** and Plaintiffs may add their claims for Contributory Trademark Infringement under the Lanham Act and Common Law and Vicarious and/or Enterprise Liability under the Lanham Act and Common Law.

2. Plaintiffs' New Mexico Unfair Practices Act claim (**Count Five**) is **DISMISSED**.

3. Plaintiffs must not include the New Mexico Unfair Practices Act claim when they file their Third Amended Complaint.

4. Plaintiffs must file their Third Amended Complaint **within 10 days** of the entry of this Memorandum Opinion and Order.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**