**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

THE NAVAJO NATION, *et al,*

    Plaintiffs,

v.                                       Case No. 1:12-cv-00195-LH-LAM

URBAN OUTFITTERS, INC., *et al,*

    Defendants.

---

**DEFENDANTS' RESPONSE IN OPPOSITION TO**
**PLAINTIFFS' MOTION TO COMPEL DISCOVERY**

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................1

II.  ARGUMENT................................................................................................................1

    A.   With Regard To Interrogatory Nos. 15-17, Defendants Should Not Be Compelled To Search For And Produce Information Concerning All Unidentified "Indian Tribes" ................................................................................1

    B.   With Regard To Interrogatory Nos. 6 And 16, Defendants Will Produce, As They Have Already Agreed To Do, Non-Privileged Information Currently Within Their Possession ...........................................................................5

    C.   This Court Should Deem Moot Plaintiffs' Motion With Regard To Interrogatory No. 20 Because Defendants Have Fully And Completely Answered The Interrogatory ......................................................................................6

    D.   Defendants Should Not Be Required To Produce A Post-Dispute Privilege Log With Regard To Interrogatory Nos. 3, 5 and 13 Because The Obligation To Do So Is Particularly Onerous And Of No Ultimate Benefit To Plaintiffs ................................................................................................................8

III. CONCLUSION............................................................................................................12

I.      INTRODUCTION

During multiple meet and confer communications, including hours of telephonic consultations and the exchange of written correspondence, the parties resolved the substantial majority of their discovery disputes.  What remain are three issues: 1) must Defendants identify the names of every Indian tribe in the country -- there are at least 566 -- and search for and produce information regarding Defendants' possible use of the names of such tribes in the sale of goods, notwithstanding the fact that Plaintiffs have not alleged in their Complaint that (and have no knowledge as to whether) Defendants have ever used the name of any specific Indian Tribe (other than Navajo) in the sale of goods; 2) must Defendants now produce information which is properly the subject of expert testimony, contrary to the requirement of the Court's scheduling order; and 3) must Defendants log voluminous communications, clearly protected by the attorney-client privilege and/or the work-product doctrine, which occurred *subsequent* to Plaintiffs' allegations of infringement?

As set forth below, Defendants were right to stand on their objections; and Plaintiffs efforts to compel Defendants to undertake substantial discovery burdens without any resulting benefit to Plaintiffs (or the fact-finder) should, respectfully, be rejected.

II.     ARGUMENT

   A.   **With Regard To Interrogatory Nos. 15-17, Defendants Should Not Be Compelled To Search For And Produce Information Concerning All Unidentified "Indian Tribes"**

Simply stated, the purpose of discovery is to gather evidence in support, or in defense of *existing* allegations and claims.  *Martinez v. Cornell Corrections of Tex.*, 229 F.R.D. 215, 218 (D.N.M. 2005) (citations omitted). With regard to the above-referenced Interrogatories, however,

Plaintiffs are impermissibly fishing, in the broadest terms possible, for the potential *existence* of a claim. More specifically, these Navajo Plaintiffs seek discovery concerning goods sold by Defendants using the "name of any Indian Tribe," without any corresponding allegation -- despite amending the Complaint three times -- that Defendants *actually sold* any goods using the name of "any Indian Tribe" (other than Navajo).[1]

Plaintiffs argue that because they alleged in their Complaint that Defendants sold goods "in manners that falsely suggest they are the product of . . . an Indian Tribe," they are entitled to discovery regarding Defendants' possible use of the name of any "Indian Tribe" in the country. *See* Motion at p. 8. In 2012, the Federal Register listed "566 tribal entities recognized and eligible for funding and services from the Bureau of Indian Affairs by virtue of their status as Indian tribes." 77 FR 47868. The number of "tribes" concerning which Plaintiffs seek discovery presumably *grows* when using Plaintiffs' provided definition: any Indian group "that has been formally recognized as an Indian tribe by (1) a State legislature; (ii) a State commission; or (iii) another similar organization vested with State legislative tribal recognition authority." *See* Motion at p. 4, n. 3 (citation and quotation omitted).

Plaintiffs ask Defendants to undertake that painstakingly onerous and extremely burdensome task -- first to determine *what* tribal names for which to search, and then to conduct a search for the use by Defendants since 2008 of the names of *no less than* 566 tribes -- not because Plaintiffs allege that Defendants have, in fact, used the name of even one other specifically-identified tribe to sell even one good, but because Plaintiffs *hope* that to be the case.

"While the federal rules provide for broad and liberal discovery, discovery is not without limits." *Whiting v Ram Motors, LLC*, 2009 U.S. Dist. LEXIS 96475, *7 (May 5, 2009 D.N.M.)

---

[1] In their Motion (but never mentioned during the parties' multiple meet and confers),

(citing *Gomez v Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995)).[2] A district court "is not required to permit plaintiff to engage in a 'fishing expedition' in the hope of supporting his claim." *Martinez*, 229 F.R.D. at 218 (quoting *McGee v. Hayes*, 43 Fed. Appx. 214, 217 (10th Cir. 2002)). Indeed, the FRCPs "were amended in 2000 with the intent to narrow discovery and to avoid 'fishing expeditions.'" *Ram Motors*, 2009 U.S. Dist. LEXIS 96475, *7. "The rule change signals to the court that it has authority to confine discovery to the claims and defenses . . . and signals to the parties that they have *no entitlement to discovery to develop new claims . . . that are not already identified in the pleadings*." *Id*. at *7-8 (emphasis added) (citation omitted). In addition, the FRCPs expressly mandate that courts limit discovery where "the burden or expense of the proposed discovery outweighs its likely benefit . . . ." Fed. R. Civ. P. 26(b)(2)(C)(iii). Thus, "the federal rules require a court to balance one party's right of discovery with the opposing party's right to be free from intrusive and burdensome discovery." *Ram Motors*, 2009 U.S. Dist. LEXIS 96475, *8 (citation omitted).

The case of *Koch v. Koch Indus., Inc.*, 203 F.3d 1202 (10th Cir. 2000), is instructive. In that case, plaintiffs had alleged financial impropriety by the defendants, and plaintiffs' complaint "contained broad allegations that the Defendants did not provide financial information to the Plaintiffs in accord with GAAP." *Id*. at 1237-38, and n. 24. Plaintiffs then sought discovery "requesting all documents relating to any loans or transactions with [defendant] between June 1, 1978 and June 30, 1988." *Id*. at 1237. The magistrate judge refused to permit discovery as to *all* loans/transactions, and thus limited that discovery to transactions regarding only certain of defendant's assets. *Id*. The district court affirmed, reasoning that "Rule 26 barred the requested discovery because the burden and expense of producing these documents far outweighed the

---

[2]   A copy of *Ram Motors* is attached as **Exhibit A**.

Plaintiffs' *mere hope that they might find something upon which to base a claim*." *Id*. at 1238 (emphasis added). The Tenth Circuit likewise affirmed:

> Plaintiffs attempted to justify their extraordinarily expansive discovery requests as relevant to two broad, non-specific allegations contained in their Second Amended Complaint. When a plaintiff first pleads its allegations in entirely indefinite terms, *without in fact knowing of any specific wrongdoing by the defendant*, and then bases massive discovery requests upon those nebulous allegations, in the hope of finding particular evidence of wrongdoing, that plaintiff abuses the judicial process.

*Id*. (emphasis added).

As in *Koch*, Plaintiffs here seek to cause Defendants to undertake a substantial discovery burden, based upon "non-specific" allegations in their Complaint, and "without in fact knowing of any specific wrongdoing by the defendant." Moreover, given the number of "other Indian Tribes," the burden on Defendants of the requested discovery is demonstrably high; and Plaintiffs can make no representation whatsoever as to any *likely* benefit – they simply "hope that they might find something upon which to base a claim." As in *Koch*, Plaintiffs thus seek to abuse the discovery process and, like in *Koch*, this Court should reject their request.

The standing cases under the Indian Arts and Crafts Act ("IACA") are also instructive. To have standing under the IACA, as with other federal claims, Plaintiffs must allege (1) injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision. *Native Am. Arts, Inc. v. Specialty Merchandise Corp.*, 451 F. Supp.2d 1080, 1082 (E.D. Cal. 2006) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Plaintiffs cannot assert an injury in fact from Defendants' alleged use of the name of any "other Indian Tribe" because Plaintiffs' themselves readily admit that they have no idea whether any Defendant ever used the name of any other Indian Tribe in the sale of any good. More to the point, Plaintiffs generally allege in their

Complaint that they have suffered competitive injuries (*e.g.,* lost sales, reduced prices, loss of goodwill) by virtue of Defendants' use of the name of "other Indian Tribes." *See, e.g.*, Third Amended Complaint (Doc. 82) at ¶ 124.  But without any allegation that any Defendant ever sold even one product using the name of even one other "Indian Tribe," there can *never be* a causal connection between the alleged injury, and the complained of conduct.  In short, Plaintiffs have no standing to pursue a claim against Defendants with regard to Defendants alleged use of the name of other unspecified "Indian Tribes" because Plaintiffs do not know if it ever happened.

> B. **With Regard To Interrogatory Nos. 6 And 16, Defendants Will Produce, As They Have Already Agreed To Do, Non-Privileged Information Currently Within Their Possession**

With regard to the above-referenced Interrogatories, Plaintiffs seek certain sales and profit information concerning various goods sold by the Defendants.  Defendants initially objected, asserting, *inter alia*, that the information is irrelevant unless and until Plaintiffs specifically identify the accused goods for which the financial information is sought.  During their meet and confers, the parties agreed that Plaintiffs will first provide to Defendants a list of accused goods (by January 31, 2014), and Defendants will by mid-February produce the sales information with regard to those goods.

The dispute here appears to center upon Defendants' assertion that it will produce *net profit* information with regard to the specific accused goods via expert report.  As explained in Defendants' December 10, 2013 correspondence to Plaintiffs:

> Defendants agreed to provide, in list form, sales information with regard to accused goods after Plaintiffs provide to Defendants, as required by Court order, their list of accused goods.  The Defendants do not in the ordinary course of business track net profits by good and, thus, that information will be provided at a later date (potentially via expert report).

*See* December 10, 2013 letter from Scott R. Knapp, Esq. to Karin B. Swope, Esq., attached to Declaration of Karin B. Swope (the "Swope Declaration") as Exhibit A (Document 89-1) at p. 1.

Plaintiffs assert that "[s]ales information is directly relevant to this case," *see* Motion at p. 11, and with that Defendants do not argue. Thus, as set forth above, Defendants have already agreed to provide that sales information (after receiving from Plaintiffs the list of accused goods). The issue is "net profits" with regard to the specific accused goods. As set forth in Defendants' letter, Defendants do not track or compute net profits by good sold. Computation of that number (with its attendant attribution of various costs and expenses to the sale of such specifically enumerated goods) is complicated, and will be conducted later in time by an expert.

Plaintiffs make the unsubstantiated assertion that Defendants already collected and compiled such information in preparation for mediation. *See* Motion at pp. 11-12. But that which Defendants may or may not have undertaken at the direction of counsel and in preparation for mediation is privileged under the attorney-client privilege and/or work-product doctrine, and is not properly the subject of discovery.

Defendants are not here contending, as Plaintiffs suggest, that there is a bifurcation of the liability and damages issues. Nor are Defendants suggesting that Plaintiffs are not ultimately entitled to Defendants' net profit analysis with regard to the accused goods. Defendants are simply stating that the net profit information sought by Plaintiffs will be produced at the time designated by the Court for expert reports. Accordingly this Court should, respectfully, deny Plaintiffs' Motion with regard to these Interrogatories because the request is (at least in part) premature under the scheduling order.

    **C.**    **This Court Should Deem Moot Plaintiffs' Motion With Regard To Interrogatory No. 20 Because Defendants Have Fully And Completely Answered The Interrogatory**

Plaintiffs' Interrogatory No. 20 states, in its entirety: "List in detail all categories or types of goods sold or offered for sale by [Defendants] or third-parties through [Defendants'] stores, websites or catalogs using "Navajo." Motion Exhibit 2 (Document No. 88-2) at pp. 22. Defendants initially answered in belief that the Interrogatory sought information concerning goods *presently* being sold by Defendants. *Id.* at p. 23 ("No Defendant presently sells or offers for sale through their stores, websites or catalogues any goods 'using Navajo'").

During the initial meet and confer, Plaintiffs argued that their intent was to capture the time period dating back to 2008. Defendants noted the ambiguity in the Interrogatory, but ultimately "agreed to supplement [their] response, with regard to the revised timeframe." *See* December 5, 2013 correspondence from Scott R. Knapp, Esq. to Karin B. Swope, Esq., attached as Exhibit C to Swope Declaration (Document 89-3) at p.2.

For reasons unknown, however, the dispute (from Plaintiffs' perspective) carried on. After further meet and confer, and solely in an effort to avoid a discovery motion, Defendants offered to provide to Plaintiffs a list of goods which were sold by Defendants, and which included the word "navajo."

Still unsatisfied, Plaintiffs then demanded more. *See* December 9, 2013 correspondence from Karin B. Swope, Esq. to Scott R. Knapp, Esq. attached as Exhibit B to Swope Declaration (Document 89-2) at p. 3 ("though not discussed on our telephone call..."). Plaintiffs sought not just a list of goods which included the word "navajo," as the parties had expressly discussed, but also a list of goods wherein "navajo" may have been used via "key word searches and meta-tags on [Defendants'] websites, and keyword advertising on third-party search engines." *Id.*

Defendants never agreed to that; and the Interrogatory expressly requests not a list of goods, but a list of "categories ... of goods." *See* Document 88-2 at p. 22. Because Defendants'

good-faith efforts to resolve the issue concerning Interrogatory No. 20 failed, Defendants have supplemented their response to the Interrogatory, as they agreed to do, by answering precisely the question asked (as it pertains to the modified time period).  *See* attached **Exhibit B**.

Accordingly, Defendants believe this issue to be moot.

### D. Defendants Should Not Be Required To Produce A Post-Dispute Privilege Log With Regard To Interrogatory Nos. 3, 5 and 13 Because The Obligation To Do So Is Particularly Onerous And Of No Ultimate Benefit To Plaintiffs

As they themselves concede, "Plaintiffs agree that logging every communication between counsel and Defendants after the Complaint is filed is 'make-work....'"  Motion at p. 17. Plaintiffs then endeavor to appear reasonable by asserting that they "only" seek to have Defendants log 90 days of the post-dispute communications between lawyer and client.  *Id.*  But requiring Defendants to search for and log hundreds (if not many hundreds) of communications between lawyer and client -- when there can be no realistic argument that the communications are not absolutely privileged and will never be disclosed to Plaintiffs -- is *still* make-work.[3]

Plaintiffs argue that Defendants should be forced to create a post-dispute privilege log because the Interrogatories are allegedly "relevant to Plaintiffs' claim of intentional infringement ...."  Motion at p. 17.  But the referenced Interrogatories do not in actuality seek discoverable information pertinent to that issue.  Interrogatory No. 3 asks whether Defendants sought "any legal opinions" concerning the use of the term "navajo."  (Document 88-2 at p. 6).

---

[3] Defendants objected to the logging of privileged communications "which post-date the first communication by Plaintiffs to the Defendants concerning the alleged violations set forth in Plaintiffs' Complaint ... as the communications are not discoverable, are inordinately voluminous, and are being created in significant numbers virtually every day during this litigation.  Thus the production of a privilege log would be irrelevant, unduly burdensome, and constitute harassment of the Defendants."  Motion Exhibit 2 (Document 88-2) at pp. 1-2.

Quite obviously, once Plaintiffs raised this alleged trademark dispute, Defendants had numerous communications with their attorneys as to the legal merit (or lack thereof) of Plaintiffs' infringement contentions. The substance of those communications will never be made known to Plaintiffs, so what benefit will obtain from compelling Defendants to undertake the painstaking process of locating and logging each such communication?

Interrogatory No. 5 asks whether, post-dispute,[4] Defendants "questioned the propriety of [Defendants'] use of the term 'Navajo' in connection with [Defendants'] sales and/or third-party sales...." (Document 88-2 at p. 8). As above, once Plaintiffs made them aware of the alleged infringement, Defendants had numerous communications with their lawyers regarding use of the term "navajo." And again, because the communications are so clearly privileged and not subject to discovery, Plaintiffs are requesting that considerable effort be made by Defendants with no attendant benefit to Plaintiffs.

And Interrogatory No. 13 asks whether, post-dispute, Defendants investigated Plaintiffs. (Document 88-2 at pp. 15-16). Just as Plaintiffs ask for the very core of attorney-client communications with regard to Interrogatory No. 3 (seeking counsel's "legal opinions"), Plaintiffs here ask for Defendants' core work product, i.e., investigations done by counsel or at counsel's direction to defend the suit. Here again, Plaintiffs are seeking to burden and harass Defendants into expending considerable time and resources to log these communications knowing full well that receipt by Defendants of information generally included in a privilege log, such as the recipients and dates of such communications, will gain them nothing.

---

[4] Plaintiffs have already been advised during the meet and confers that the Urban Outfitters Defendants "became aware of Plaintiffs' use of ... 'Navajo'" upon receipt of Plaintiffs' cease and desist letter; and Free People and Anthropologie became aware upon receipt of Plaintiffs' Complaint against them.

It should further be noted that this "intentional infringement" allegation is a complete red herring in any event. In their Motion, Plaintiffs state that "Defendants continued to infringe on the Nation's trademarks after they received the cease and desist letter, and then even after the initial complaint was filed." Motion at p. 15 (citing Third Amended Complaint at ¶¶89-92). A review of the actual allegations reveals the baselessness of Plaintiffs' assertions as to any supposed intentional infringement. More specifically, Plaintiffs allege that in the days immediately following the cease and desist letter they located *two* items ("Navajo Scarf" and "Navajo Hipster") in a Seattle Urban Outfitters store. (Document 82 at ¶¶89-90). And ten months later, they allege, Plaintiffs were "apprised" that an Urban Outfitters store in Evanston, Illinois was selling a product manufactured by Obey Clothing "with the 'Navajo' labelling and hangtags." *Id*. at ¶91. Thus, in the two-plus years since Urban Outfitters received the cease and desist letter, and "in its more than 200 stores located internationally and throughout the United States," *id.* at ¶13, Urban Outfitters is alleged to have offered for sale a total of three allegedly infringing goods, at a total of two of its stores. Far from evidence of *intentional infringement*, these alleged facts prove just the opposite -- upon receiving the cease and desist letter, Urban Outfitters took prompt steps seeking to ensure no further use of the word "navajo," even if Urban Outfitters' prior use did *not* constitute infringement.

Finally, and though Plaintiffs cited to the Court two cases from without the jurisdiction providing that a court may order the production of a post-dispute privilege log, *see* Motion at pp. 16-17, that is certainly not the norm.[5] Other federal districts have recognized that post-dispute, privileged communications need *not* be logged. For example, in the Southern District of New York, the court reasoned:

---

[5] There do not appear to be any published opinions within the District of New Mexico or the Tenth Circuit compelling the production of a post-dispute privilege log.

> [Defendants] assert that they have merely declined to include in their privilege log communications that post-date the filing of the complaint, since substantial numbers of documents subject to the attorney-client privilege and the work product doctrine have been and will continue to be generated. The defendants' point with respect to the privilege log is well-taken; *they need not individually identify each privileged communication created in connection with this litigation.*

*Gary Friedrich Enterprises, LLC v. Marvel Enterprises, Inc.,* 2011 U.S. Dist. LEXIS 44739, *6-7 (April 26, 2011 S.D.N.Y.) (citation omitted) (emphasis added).[6]  *See also Capital Records, Inc. v. MP3Tunes, LLC*, 261 F.R.D. 44, 51 (S.D.N.Y. 2009) ("to minimize the burden on [defendant], the Court will not require it to record on its privilege log any attorney-client communications or work product documents created after the date the ... action was filed"); *In re Denture Cream Prods. Liab. Litig.,* 2012 U.S. Dist. LEXIS 151014, *43 (Oct. 18, 2012 S.D. Fla.) ("a litigant need not identify on that privilege log those communications between a litigant and its counsel after the commencement of an action");[7] *Lamer v. Williams Comms., LLC*, 2007 U.S. Dist. LEXIS 8585, *5 (Feb. 6, 2007 N.D. Ok.) (noting that a privilege log is required "with respect to all documents withheld on the basis of a claim of privilege or work product protection *except the following*: written communications between a party and its trial counsel after commencement of the action and the work product material created after commencement of the action") (emphasis added).[8]

Accordingly, weighing the heavy burden to be put upon Defendants by logging post-dispute, privileged communications, against the negligible-at-best benefit to Plaintiffs, this Court should deny Plaintiffs' request for a post-dispute privilege log.

---

[6]  A copy of *Friedrich* is attached as **Exhibit C**.

[7]  A copy of *In re Denture Cream* is attached as **Exhibit D**.
[8]  A copy of *Lamer* is attached as **Exhibit E**.

### III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Honorable Court deny Plaintiffs' Motion to Compel in its entirety.

Dated: December 27, 2013

**BUTT THORNTON & BAEHR PC**

By: /s/ Alfred L. Green, Jr.
Alfred L. Green, Jr., Esq.
P. O. Box 3170
Albuquerque, NM 87110
Phone: (505) 884-0777

**DICKINSON WRIGHT PLLC**

By: /s/ Scott R. Knapp
H. Jonathan Redway, Esq.
Nicole M. Meyer, Esq.
Melissa Alcantara, Esq.
1875 Eye Street, N.W., Suite 1200
Washington, D.C. 20006
Phone: (202) 457-0160

Joseph A. Fink, Esq.
Scott R. Knapp, Esq.
DICKINSON WRIGHT PLLC
215 S. Washington Square, Suite 200
Lansing, MI 48933
Phone: (517) 487-4711

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 27th day of December, 2013, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Brian L. Lewis
blewis@nndoj.org

Henry S. Howe
hhowe@nndoj.org

Karin Swope
kswope@kellerrohrback.com

Mark Griffin
mgriffin@kellerrohrback.com


/s/ *Alfred L. Green, Jr.*
Alfred L. Green, Jr.