IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**THE NAVAJO NATION,** *et al.*,

    **Plaintiffs,**

**v.**     No. CIV-12-0195 LH/LAM

**URBAN OUTFITTERS, INC.,** *et al.*,

    **Defendants.**

### STIPULATED ORDER REGARDING PRODUCTION OF DISCOVERY MATERIAL

The parties to the above-captioned action **HEREBY STIPULATE AND AGREE**, by and through their undersigned counsel, that the following specifications shall govern the production of all documents, testimony, exhibits, electronically stored information ("ESI"), and any other materials and information (including, to avoid any ambiguity, any copies, summaries, or derivations thereof) produced by the parties during discovery ("Discovery Material") in the above-captioned action (the "Action")

**I.     General ESI Provisions**

    **1.     Applicability and Scope:** This Stipulated Order (the "Order") is intended to facilitate the production of ESI in the above-captioned matter pursuant to the Federal Rules of Civil Procedure, to avoid misunderstandings concerning ESI, to secure the just, speedy, and inexpensive determination of the litigation, and to highlight good-faith disagreements about ESI so that they may be promptly resolved.  *See* Fed. R. Civ. P. 1, 34, and 45.

    **2.     Good Faith:** The parties will make reasonable efforts to prepare responsive and non-privileged data for production in accordance with the agreed-upon specifications set forth

below.  These specifications apply to hard copy documents or electronically stored information ("ESI") which are to be produced in the first instance in this litigation.  The parties agree to act cooperatively and to meet and confer in the event any obstacles arise during the production of documents or ESI as specified herein.

3. **Resolution of Issues:**  If any issues arise regarding interpretation of this Order, or any of the productions made pursuant to this Order, the parties agree to meet and confer without the assistance of the Court, a magistrate judge, or special master (in the event one is appointed by the Court), and attempt to resolve the issues in good faith for at least 5 work days.  The party with an issue will provide written notice of the issue to all parties and in sufficient detail to allow a good faith meet and confer.  If the issue is not resolved within 5 work days from receipt of such written notice, the party with an issue may at any time thereafter bring the issue to the notice of the Court, a magistrate judge, or special master.

4. **ESI Liaison:**  The parties agree that the below named individual will serve as their respective ESI Liaisons.  The ESI Liaison will be prepared to participate in resolution of ESI discovery issues; understand issues with ESI discovery; understand the parties' ESI discovery efforts; and have access to those who are familiar with the parties' electronic systems and capabilities.  The ESI Liaison will have the authority to make agreements relating to ESI on behalf of their respective party.  The ESI Liaison for Defendants will be Michelle Heikka.  The ESI Liaison for Plaintiffs will be Eric Fierro.  The parties reserve the right to substitute their respective ESI Liaisons.

5. **Security:**  Both parties will make reasonable efforts to ensure that any productions made are free from viruses and provided on encrypted media for submission.

6.     **Privilege Logs:**  The parties will produce privilege logs in Excel, Word, or a similar electronic format that allows text searching and organization of data.  The parties will produce privilege logs within a reasonable time and on a rolling basis as their document productions are made.  When there is a chain of privileged e-mails, the parties need only include one entry on the privilege log for the top-level, i.e., most recent, email in the entire e-mail chain and need not log each e-mail contained in the chain separately.  In addition to standard information identifying the sender, recipient, date, and attachments to the top-level email, entries for email chains will identify the total number of emails in the chain, all of the recipients in the email chain, and the date range of the email chain.  Redacted documents need not be logged as long as: (a) for emails, the bibliographic information (FROM, TO, CC, BCC, Date, Subject) is not redacted; and (b) for non-email documents, the redaction is noted on the face of the document in the redacted field.  Documents protected from disclosure by the attorney client privilege, the work product doctrine or any other applicable privilege that are dated after the date of Plaintiffs' initial cease and desist letter in this matter need not be logged.  The parties agree to act in good faith to produce a privilege log for a custodian not less than 14 days prior to that custodian's deposition.  The parties may modify deadlines for production of privilege logs by agreement.

**II.     Search Terms**

1.     **Search Terms:** Within one week of entry of this Order, or on a date agreed upon by the parties, the parties will also meet-and-confer to determine an agreed upon limited set of search terms.  Said search terms shall apply to the retrieval and production of both email and non-email ESI.  The search terms shall be narrowly tailored to particular issues.  Indiscriminate terms, such as the producing party's company's name or the term "Indian" are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of

3

overproduction. A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. Use of narrowing search criteria (*e.g.*, "and," "but not," "w/s") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery. The parties agree that they will utilize commercially reasonable efforts to open any encrypted files.

2. **Cooperation:** Each party shall cooperate to identify the proper custodians, proper search terms and proper time frames for production.

### III.  Search Procedures For ESI Production

1. **Locations That Will Be Searched For Responsive Documents:** The parties shall meet and confer to develop a mutually agreeable list of custodians to be searched. The parties agree that the list of custodians to be searched shall be limited to a reasonable number, taking into account the relative burdens on the parties, the nature of the claims and defenses asserted in this case and the relevant discovery attendant thereto. The parties will search any electronic files or folders, or other parts of media, including any internal and external hard drives and other ESI venues (including, but not limited to, recordable optical media, media cards, thumb drives, non-volatile memory, floppy disks, work desktop and laptop computers, intranet servers, network shares, public data shares and/or database servers) for each identified Custodian that the Custodian reasonably anticipates may contain non-duplicative Responsive Documents.

The parties agree to search central repositories, including central databases, or relevant portions thereof to the extent that the party reasonably anticipates they contain non-duplicative Responsive Documents. The parties agree to meet and confer to limit the scope of production

from central repositories if the search of central repositories (or relevant portions thereof) that the producing party anticipates contain Responsive Documents is unduly burdensome or is likely to be unreasonably inefficient in identifying relevant documents. Specifically, the parties recognize that certain repositories, by their nature, may not effectively or reasonably be searched using electronic search strings, and the parties agree to notify each other of any such repositories that contain Responsive Documents. The parties will then meet and confer to discuss the collection of Responsive Documents from such repositories, including potentially using other effective collection methodologies.

2. **Locations That Will Not Be Searched for Responsive Documents:** The following locations will not be searched under any circumstances, and as such need not be preserved: the personal property of any parties' employees, officers or directors (such personal property includes, but is not limited to any mobile device, personal digital assistants, mobile phones, or voicemail systems, company-issued personal digital assistants that contain duplicative information synced from a source server or desktop computer, company-issued mobile phones that contain duplicative information synced from a source server or desktop computer, voicemail systems, instant messages, or instant messaging logs. Automated disaster recovery backup systems and/or disaster recovery backup tapes may be identified as inaccessible by the producing party. All repositories identified as inaccessible shall have at least one annual archive preserved throughout the litigation.

3. **Source Code:** To the extent relevant to the Litigation, source code will be made available for inspection pursuant to the terms of the Protective Order. The parties agree that the search terms will not be applied to source code.

**IV.     Electronically Stored Information Production Format[1]**

Absent special circumstances, all electronically stored information ("ESI") shall be produced in an "imaged" file with the corresponding "image load/unitization files," "OCR text files," and the "associated delimited text file." Additionally, the parties agree that select files should be produced in their native file format where an image file does not adequately represent the files as maintained in the ordinary course (often this relates to spreadsheet files); in that event, as discussed below, the file will be produced only in its native file format with a TIFF placeholder. The key concepts are explained below.

   **1.     Native:** Absent special circumstances, Microsoft Access databases, Excel files, .CSV files and other similar databases and spreadsheet files shall be produced in the format which the electronically stored information was originally created (the "Native File"). Native Files will be produced together with a placeholder TIFF image. Each TIFF placeholder will contain language indicating that the document is being produced as a Native File. A relative file path to the Native File shall be provided in the metadata database, as described in item 6. The extractable metadata and text shall be produced in the same manner as other documents that originated in electronic form. To the extent that any Native File contains information subject to a claim of privilege or any other applicable protection, it may be withheld or produced in redacted TIFF image format. To the extent that a party obtains through discovery a file or document that it believes is not adequately represented in an image file format, the receiving party may request that file or document be produced as a Native File, the production of which

---

[1] The parties reserve their respective rights to object to production of documents in the format specified absent cost-shifting, or to oppose such objections. The parties reserve their respective rights to seek, or oppose, judicial relief regarding any potential shifting of the costs of identification and production of all documents requested in discovery in the Action.

may not unreasonably be withheld. If a producing party wishes to designate a Native File "Confidential" it shall do so by producing the Native File on media that is labeled "Confidential." If a producing party wishes to redact material from a file that it would otherwise produce as a Native File, it shall do so by converting that file to a TIFF image and producing it in redacted form along with OCR text that reflects such redactions, or if such conversion renders or will render the document reasonably unusable, by producing the file in such other reasonably usable form as may be agreed upon by the respective parties.

    **2.** **Imaged File:** A TIFF image converted from Native File shall be produced as follows:

    a. All images shall be group4 black and white TIFF files named according to Bates number (except when color images are required to read or understand the file/document's content; all color images shall be produced as a JPEG file).

    b. Hidden content, tracked changes or edits, comments, notes, and other similar information viewable within the native file shall also be imaged so that such content is viewable on the image.

    c. Bates numbers and confidentiality designations shall be branded to the images so that the numbers and designations print.

    d. If a Bates number or set of Bates numbers is skipped in a production, the producing party will so note in a cover letter or production log accompanying the production.

    e. Images shall be single page TIFFs (one TIFF file for each page).

    f. Each TIFF image should be assigned a Bates number that is unique and maintains a constant length across the entire document production (i.e., padded to the same number of characters).

3. **Non-Convertible Files:** Certain types of files such as system, program, proprietary files, audio files, and video files may not be amenable to conversion into TIFF format. Such files will not be converted into TIFF format but will be represented in the form of a placeholder TIFF image. To the extent their contents can be determined to be responsive, these files will be produced in a reasonably usable form as may be agreed upon by the respective parties.

4. **Image Load/Unitization Files:** An image load/unitization file in a standard .opt or .log litigation support image load format shall be included which provides:

    a. the document number for each image;

    b. the full path name(s) of each TIFF that represents an image;

    c. the document boundaries for each document;

    d. the load file shall be in the order that appropriately corresponds with each image file;

    e. the following represents the format of a standard.opt, .lfp or .log image load/unitization file:

Bates,Volume,PATH_to_image,Document Break,Folder Break,Box Break,Total_Pages.

M_0100000,06150101,\06150101\0000\0001.TIF,Y,,,1
M_0100001,06150101,\06150101\0000\0002.TIF,Y,,,1
M_0100002,06150101,\06150101\0000\0003.TIF,Y,,,1
M_0100003,06150101,\06150l01\0000\0004.TIF,Y,,,2
M_0100004,0615010l,\06150101\0000\0005.TIF,,,,
M_0100005,06150101,\06l50l01\0000\0006.TIF,Y,,,1
M_0100006,06150101,\06150101\0000\0007.TIF,Y,,,4
M_0100007,06150101,\06150101\0000\0008.TIF,,,,,
M_0100008,06150l01,\0615010l\0000\0009.TIF,,,,,
M_0100009,06150101,\06150101\0000\0010.TIF,,,,,

5. **OCR or Extracted Text File:** An OCR or extracted text file which corresponds to each imaged document shall be provided as follows:

a. Document level OCR or extracted text file for each imaged document located in a text directory for each production volume and a relative file path to the text file shall be provided in the database load file for each record;

b. The OCR or extracted text file name shall be the same name of the first Bates Number for the imaged document, followed by .txt.

6. **Associated Delimited Text File:** Database information shall be provided in a ".dat" file extension, which contains the metadata fields provided below as a delimited database load file. For the Concordance .dat, the parties should use Concordance standard delimiters (ASCII 020 corresponding to a comma, ASCII 254 corresponding to a double quote, ASCII 174 corresponding to a new line, and a semicolon used to separate values). The fielded data should include all the below metadata fields to the extent to which they are in existence and are reasonably accessible for each file/document in addition to unitization (including the production number of the first and last page of each document), and attachment information (including information sufficient to identify the parent and child relationships of all documents and ESI that are or have attachments). The first line of the data load file should contain the field headers indicating the contents of each field, and each subsequent line should contain the fielded data for each document. Absent special circumstances, load files shall include the below metadata fields, or substantially identical metadata fields, to the extent already in existence and reasonably accessible. To the extent that metadata does not exist, is not reasonably accessible or available, or would be unduly burdensome to collect, nothing in this Order shall require any party to extract, capture, collect or produce such data.

The parties will reasonably endeavor to confirm the accuracy of the metadata extraction process and expressly reserve their rights to object to the use of metadata for any reason or

purpose. To the extent that any ESI contains information subject to a claim of privilege or any other applicable protection, its respective metadata, if subject to a claim of privilege, may be redacted or withheld.

| FIELD NAME | FIELD DESCRIPTION | APPLICABLE FILE TYPE(S) |
|---|---|---|
| BEGBATES | Beginning production number for a given file/document | E-mail, E-Doc and Other[2] |
| ENDBATES | Ending production number for a given file/document | E-mail, E-Doc and Other |
| BEGATTACH | Production number of first page of parent | E-mail and E-Doc |
| ENDATTACH | Production number of last page of last attachment | E-mail and E-Doc |
| ATTACHMENT COUNT | Number of attachments associated with parent | E-mail |
| CUSTODIAN | Person, shared file or other source from whom files were collected | E-mail, E-Doc and Other |
| DUPLICATE CUSTODIAN | To identify other custodians whose files contained a particular document that was eliminated through de-duplication | E-mail and E-Doc |
| FILEEXT | File extension | E-mail and E-Doc |
| HASH | MD5 Hash Value | E-mail and E-Doc |
| SUBJECT | Subject line extracted from e-mail message | E-mail |
| FROM | Sender | E-mail |
| TO | Recipient | E-mail |
| CC | Copyee | E-mail |

---

[2] Other is defined as documents for which internal metadata is not exchanged, including but not limited to, scanned documents and documents obtained from the Internet.

| | | |
|---|---|---|
| BCC | Blind Copyee | E-mail |
| DATESENT[3] | Date & Time Sent (MM/DD/YYYY HH:MM) | E-mail |
| DATERECEIVED[4] | Date & Time Received (MM/DD/YYYY HH:MM) | E-mail |
| AUTHOR | Author field extracted from the metadata of a non-email file | E-Doc |
| DATELASTMOD | Date modified | E-Doc |
| DATECREATED | Date Created | E-Doc |
| FILENAME | Original file name | E-Doc |
| NATIVEFILE PATH | Path to native file as produced | Native |
| TEXTPATH | Relative path to OCR or extracted text file | E-mail, E-Doc and Other |

**V.      Hard-Copy (*i.e.*, non-ESI) Production Format**

The following applies to documents that exist only in hard-copy format ("Hard-Copy Materials") and are therefore unavailable in native ESI format (e.g., handwritten notes, including alterations to documents that are otherwise kept and producible as ESI in their unaltered form, or materials that were generated as ESI but where ESI files are inaccessible because they are not in the possession or control of the parties). The parties agree to meet and confer in good faith regarding content, volume, and related issues before any production of Hard-Copy Materials in non-electronic format or any electronic production of Hard-Copy Materials that are produced without an OCR file and, if the parties are unable to reach agreement, to submit the dispute to the

---

3 The DATESENT and TIMESENT fields shall be produced by all parties as one combined field.

4 The DATERECEIVED and TIMERECEIVED fields shall be produced by all parties as one combined field.

Court for resolution. Absent special circumstances, all Hard-Copy Materials that are produced electronically should be produced in an "imaged" file with the corresponding "image load/unitization files," "OCR text files," and the "associated delimited text file," as defined below.

    1.    **Imaged File:**  A TIFF image scanned from the hard copy document;

        a.    All images shall be group4 black and white TIFF files named according to Bates Number (except when color images are required to read or understand the file/document's content; all color images shall be produced as a JPEG file).

        b.    Bates numbers and confidentiality designations shall be branded to the images so that the numbers and designations print;

        c.    If a Bates number or set of Bates numbers is skipped in a production, the producing party will so note in a cover letter or production log accompanying the production.

        d.    Images shall be single page TIFFs (one TIFF file for each page).

        e.    Each TIFF image should be assigned a Bates number that is unique across the entire document production and maintains a constant length across the entire production (i.e., padded to the same number of characters).

    2.    **Image Load/Unitization Files:** An image load/unitization file in a standard .opt, .lfp or .log litigation support image load format shall be included which provides:

        a.    the document number for each image;

        b.    the full path name(s) of each TIFF that represents an image;

        c.    the document boundaries for each document;

        d.    the load file shall be in the order that appropriately corresponds with each image file;

    e.  the following represents the format of a standard.opt or .log image load/unitization file:

Bates,Volume,PATH_to_image,Document Break,Folder Break,Box Break,Total_Pages.

M_0100000,06150101,\06150101\0000\0001.TIF,Y,,,l
M_0100001,06150101,\06150101\0000\0002.TIF,Y,,,l
M_0100002,06150101,\06150101\0000\0003.TIF,Y,,,1
M_0100003,06150101,\06150101\0000\0004.TIF,Y,,,2
M_0100004,06150101,\06150101\0000\0005.TIF,,,,
M_0100005,06150101,\06150101\0000\0006.TIF,Y,,,l
M_0100006,06150101,\06150101\0000\0007.TTF,Y,,,4
M_0100007,06150101,\06150101\0000\0008.TIF,,,,,
M_0100008,06150101,\0615010l\0000\0009.TIF,,,,,
M_0100009,06150101,\06150101\0000\0010.TIF,,,,,

  **3.**  **OCR Text File:** An OCR text file which corresponds to each imaged document shall be provided as follows:

    a.  Document level OCR text file for each imaged document located in a text directory for each production volume and a relative file path to the text file shall be provided in the database load file for each record;

    b.  The OCR file name shall be named according to the first Bates Number for the imaged document, followed by .txt.

  **4.**  **Associated Delimited Text File:** A database shall be provided in a ".dat" file format that extracts metadata into fields in a delimited text load file. For the Concordance .dat, the parties should use Concordance standard delimiters (ASCII 020 corresponding to a comma, ASCII 254 corresponding to a double quote, ASCII 174 corresponding to a new line, and a semicolon used to separate values). The fielded data should include all the below metadata fields for a file/document in addition to the unitization (including the production number of the first and last page of each document) and attachments (including information sufficient to identify the parent and child relationships of all documents that are or have attachments). The first line of the

data load file should contain the field headers indicating the contents of each field, and each subsequent line should contain the fielded data for each document.  Load files shall include the below metadata fields, or substantially identical metadata fields, to the extent already in existence and reasonably accessible.  To the extent that metadata does not exist or is not reasonably accessible or available for any documents produced, nothing in this Order shall require any party to extract, capture, collect or produce such data.  All Hard-Copy Material load files, however, must include the "Source" metadata field, as further described below.

The parties will reasonably endeavor to confirm the accuracy of the metadata extraction process and **expressly** reserve their rights to object to the use of metadata for any reason or purpose.  To the extent that any Hard-Copy Material contains information subject to a claim of privilege or any other applicable protection, its respective metadata may be redacted or withheld.

| FIELD NAME | FIELD DESCRIPTION |
| --- | --- |
| BEGBATES | Beginning production number for a given document |
| ENDBATES | Ending production number for a given document |
| SOURCE | Person, shared file or other source from whom files were collected |
| TEXTPATH | Relative path to OCR or extracted text file |

**VI.    Previously Produced Documents**

No party shall be required to reformat documents or data that were previously produced in other litigations or in response to governmental or regulatory inquiries or investigations, and all documents or data produced in the same format as they were produced or collected in such other matters are deemed to be in compliance with this Order when produced in this matter, notwithstanding other provisions in this Order, provided that the previously produced data is not

in a proprietary format limiting access to such data and all parties will work in good faith to provide data mapping information to correlate the previously produced data to the current Order. No party shall be required to collect or produce metadata for previously produced documents if such metadata was not previously collected, and the documents without collected metadata shall be disclosed to the requesting party.  No party shall be required to reproduce documents previously produced to the other party, provided that it refers the other party to such documents by Bates number or Bates range.

## VII.   Duplicates

Each party may remove exact duplicate documents (*i.e.*, identical copies of the same document), including without limitation duplicate e-mail, to reduce unnecessary cost of reviewing and producing exact duplicate documents, provided that, for E-Docs, in doing so, the party preserves and produces the source information, to the extent such information is reasonably accessible or available, for each custodian in whose files the duplicate document originally resided.  However, the identity of other custodians of de-duplicated items must be listed in the "Duplicate Custodian" or "Source" field (or otherwise provided in the delimited .dat text file) of the copy of the record that is produced.

## VIII.   Threading/Near De-Duplication

Each party may also de-duplicate e-mails in such a way as to eliminate earlier or incomplete chains of e-mails, and produce only the most complete iteration of an e-mail chain. Any de-duplication tool used by a party must ensure that an e-mail will be suppressed only if its recipients (including cc and bcc recipients), subject, body text (excluding specified automatic footers and normalized to consolidate white space) and attachments are wholly included in another more representative e-mail.  The parties agree to meet and confer regarding the use of other de-duplication methods.

**IX.     Media Used For Production**

Documents shall be exchanged on DVD-ROMs, CD-ROMs, portable hard drives or through secure file transfer protocols (*e.g.*, FTP) or similar secure electronic transmission. All document productions shall be produced in encrypted form, and as specified in the protective order entered by the Court.

**X.      Processing Of Third-Party Documents**

**1.**     A party that issues a non-party subpoena ("Issuing Party") shall include a copy of this Order with the subpoena and state that the parties to the litigation have requested that third-parties produce documents in accordance with the specifications set forth herein.

**2.**     The Issuing Party shall produce any documents obtained pursuant to a non-party subpoena to the opposing party.

**3.**     If the non-party production is not Bates-stamped, the Issuing Party will endorse the non-party production with unique prefixes and Bates numbers prior to producing them to the opposing party.

**4.**     Nothing in this Order is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the parties or third-parties to object to a subpoena.

**XI.     Protective Order**

Nothing in this Stipulated Order shall be deemed to override any provision of the Stipulated Protective Order governing discovery in this case (the "Protective Order"). In the event of any conflict between this Stipulated Order and the Protective Order, the provisions of the latter shall govern.

**XII.    Objections Preserved**

Nothing in this Order shall be interpreted to require disclosure of relevant information that is protected by the attorney-client privilege, common interest privilege, work-product

doctrine, constitutes or includes, or is prohibited from disclosure under any similar law, regulation, rule, court order, or any other applicable privilege or protection. The parties do not waive any objections to the production, discoverability, or confidentiality of ESI and Hard-Copy Materials, including, without limitation, objections regarding the burden, overbreadth or relevance of document requests related to ESI and Hard-Copy Materials, or relating to the production of ESI or Hard-Copy Materials in a form specified in this Order.

\*     \*     \*

The parties shall make their best efforts to comply with and resolve any differences concerning compliance with this Order. If a producing party cannot comply with any material aspect of this Order, such party shall inform the requesting party in writing at or before the time of production as to why compliance with the Order was unreasonable or not possible. No party may seek relief from the Court concerning compliance with the Order unless it has conferred with other affected parties to the Action, as set forth above.

**IT IS SO ORDERED.**

*[signature]*
**LOURDES A. MARTÍNEZ**
**United States Magistrate Judge**

**Submitted by:** *(Prior to modification by the Court)*

By:   */s/ Alfred L. Green, Jr.*
Alfred L. Green, Jr., Esq.
P.O. Box 3170
Albuquerque, NM 87110
Phone: (505) 884-0777
algreen@btblaw.com

**DICKINSON WRIGHT PLLC**

By: ___*/s/ Scott R. Knapp*___
H. Jonathan Redway, Esq.
Nicole M. Meyer, Esq.
Melissa Alcantara, Esq.
1875 Eye Street, N.W., Suite 1200
Washington, D.C. 20006
Phone: (202) 457-0160
JRedway@dickinsonwright.com

Joseph A. Fink, Esq.
Scott R. Knapp, Esq.
DICKINSON WRIGHT PLLC
215 S. Washington Square, Suite 200
Lansing, MI 48933
Phone: (517) 487-4711
SKnapp@dickinsonwright.com
**BUTT THORNTON & BAEHR PC**

*Attorneys for Defendants*


**KELLER ROHRBACK L.L.P.**

By: ___*/s/ Karin B. Swope via telephone and email on 1/29/14*___
Mark A. Griffin, Esq.
Karin B. Swope, Esq.
1201 Third Avenue, Suite 3200
Seattle, Washington 98101
Telephone: 206/428-0561 / Fax: 206/623-3384
mgriffin@kellerrohrback.com
kswope@kellerrohrback.com

*Attorneys for Plaintiffs*