IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

THE NAVAJO NATION, et al.,

          Plaintiffs,

v.                                      No. 12cv0195 LH/LAM

URBAN OUTFITTERS, INC., et al.,

          Defendants.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS'
MOTION TO COMPEL DISCOVERY [*Doc. 88*]

      **THIS MATTER** is before the Court on *Plaintiffs' Motion to Compel Discovery (Doc. 88)*, filed December 12, 2013. Defendants filed a response to the motion on December 27, 2013 [*Doc. 91*], and Plaintiffs filed a reply on January 10, 2014 [*Doc. 93*]. This case involves allegations of trademark infringement, trademark dilution, unfair competition, and false advertising under the Lanham Act, and violations of the Indian Arts and Crafts Act, as well as state claims under the New Mexico Trademark Act. *See* Third Amended Complaint [*Doc. 82*]. Plaintiff The Navajo Nation and its wholly owned corporation and instrumentality allege that Defendants have improperly and illegally advertised and sold goods bearing Plaintiffs' trademark implying that these goods are genuine "Navajo," "Native American" or "Indian," when they are not. In their motion to compel, Plaintiffs contend that Defendants failed to provide complete answers to Plaintiffs' Interrogatory Nos. 6, 15, 16, 17 and 20, and failed to provide a privilege log for documents responsive to Interrogatory Nos. 3, 5 and 13. [*Doc. 88* at 3]. Having considered

the motion, response, reply, record of this case, and relevant law, the Court **FINDS** that the motion

to compel shall be **GRANTED in part** and **DENIED in part**.

## A.   Interrogatories

### 1.   *Interrogatory Nos. 15, 16 and 17*[1]

Interrogatory Nos. 15, 16 and 17 ask Defendants to provide information related to the sale

of goods "using the term or terms 'Indian,' 'Native American,' or the name of any Indian Tribe or

sold as Indian-Made."   [*Doc. 88-2* at 18-21].   Defendants objected, in part, because the

interrogatories ask for information related to goods sold, marketed, or advertised using "the name

of any Indian Tribe," and Defendants contend that this "term as defined by Plaintiffs includes

Indian Tribes other than Navajo and, as such, includes Tribes for which the information sought is

irrelevant, and unlikely to lead to the discovery of admissible evidence."   *Id.* at 18-22.

Plaintiffs contend that Defendants' objection should be overruled because information

related to the use of the names of Indian tribes other than "Navajo" is relevant to Plaintiff's Indian

Arts and Crafts Act (hereinafter, "IACA") claim, and because Plaintiffs have alleged facts and

identified goods sold by Defendants using the names of Indian tribes other than Navajo.   [*Doc. 88*

at 7-12].   In response, Defendants contend that Plaintiffs are seeking discovery concerning goods

sold by Defendants using the name of any Indian tribe without any corresponding allegation that

Defendants actually sold any goods using the name of any tribe other than Navajo.   [*Doc. 91* at 4].

Defendants further contend that Plaintiffs' interrogatories would require Defendants to first

determine what tribal names for which to search, and then to conduct a search for the use by

---

[1] The Court will address the interrogatories in the order presented by Plaintiffs in their motion to compel
[*Doc. 88*].

Defendants since 2008 of no less than 566 tribes, which Defendants found listed in the Federal Register as "tribal entities recognized and eligible for funding and services from the Bureau of Indian Affairs by virtue of their status as Indian tribes."  *Id.*  Defendants argue that the number increases when using Plaintiffs' definition of "any Indian group 'that has been formally recognized as an Indian tribe by ([i]) a State legislature; (ii) a State commission; or (iii) another similar organization vested with State legislative tribal recognition authority.'"  *Id.* (citing *Doc. 88* at 4, n.3).  Defendants contend that the burden on Defendants to do this is high, and Plaintiffs make no representation of any likely benefit other than the possibility of finding information on which to base a claim.  *Id.* at 6.  Defendants further contend that Plaintiffs do not have standing under the IACA because they cannot assert an injury in fact from Defendants' alleged use of the name of any Indian tribe other than Navajo and have failed to even allege "that any Defendant ever sold even one product using the name of even one other 'Indian Tribe.'"  *Id.* at 6-7.

In reply, Plaintiffs dispute Defendants' contention that they have not identified or alleged that Defendants have ever used the name of an Indian tribe other than Navajo in the sale of goods, and have not alleged in their complaint that Defendants have ever used the name of another Indian tribe in the sale of goods.  [*Doc. 93* at 5].  Plaintiffs further dispute Defendants' contention that Plaintiffs do not have standing to pursue their claim under the IACA.  *Id.* at 6-7.  In addition, Plaintiffs contend that Defendants' claim that it would be overly burdensome for them to search for and provide this information should be overruled because Defendants did not raise such an objection in their responses to the interrogatories, so the objection should be deemed waived.  *Id.* at 8.  Plaintiffs state that, should the Court agree with Defendants and find that the interrogatories

are overly burdensome, Plaintiffs should be allowed to narrow the search to 50 names of other Indian tribes.   *Id.* at 8-9.   Plaintiffs, however, contend that having to search for this information is not overly burdensome because Defendants only need to search their electronic records using a "keyword" search for the names of the Indian tribes as defined in the IACA.   *Id.* at 9.   Finally, Plaintiffs contend that Defendants failed to meet their burden of establishing "by affidavit or other evidentiary proof" that the time or expense involved in responding to the discovery request is actually burdensome."   *Id.*

Fed. R. Civ. P. 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."   A matter is relevant "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."   *Id.* The IACA provides that an Indian tribe may "bring an action against a person who, directly or indirectly, offers or displays for sale or sells a good, with or without a Government trademark, in a manner that falsely suggests it is Indian produced, and Indian product, or the product of a particular Indian or Indian tribe or Indian arts and crafts organization."   25 U.S.C. § 305e(b). Plaintiffs claim that Defendants have violated the IACA by falsely suggesting that Defendants' products are the products of an Indian tribe.   *See* [*Doc. 82* at 32-36].   This claim is not limited to goods using the name Navajo, but, instead, encompasses allegations that Defendants sold goods that falsely suggest they are "Indian-produced, an Indian product, or the product of an Indian, an Indian Tribe, or an Indian arts and crafts organization."   [*Doc. 82* at 35].   The Court, therefore, rejects Defendants' claim that these interrogatories are irrelevant to Plaintiffs' claims.   The Court also rejects Defendants' claim that it should not be required to produce information relevant to

these interrogatories because Plaintiffs do not have standing to pursue their claim under the IACA. Such a contention should be made in a dispositive motion, and will not be decided in a motion to compel.

Defendants' objection in their response to the motion to compel that searching their database for the names of any Indian tribe, especially as defined by Plaintiffs, is overly burdensome could be deemed waived since Defendants did not raise this objection when they responded to the interrogatories.   *See* Fed. R. Civ. P. 33(b)(4) ("Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure.").   Defendants fail to provide any reason, let alone "good cause," for their failure to object on this ground to these interrogatories and, therefore, this objection is waived.   *See Herrmann v. Rain Link, Inc.*, No. 11-1123-RDR, 2012 WL 1207232, at *11 (D. Kan. April 11, 2012) (unpublished) (finding that, because defendants failed to initially raise the objections in response to the discovery requests, the objections were waived).   Even considering the objection, Defendants have failed to meet their burden of showing by affidavit or other evidentiary proof that the time or expense in responding to these interrogatories is overly burdensome.

Nevertheless, the Court finds that Plaintiffs' definition of "Indian Tribe" in its interrogatories, despite being identical to the definition in the IACA,[2] is very broad and would require Defendants to search every state's legislature, commission, and "other similar organization vested with State legislative tribal recognition authority" in order to track down all of the groups that have been formally recognized as an Indian tribe by each of these governmental bodies or

---

[2] "Indian Tribe" is defined in the IACA as: "[A]n Indian group that has been formally recognized as an Indian tribe by -- (i) a State legislature; (ii) a State commission; or (iii) another similar organization vested with State legislative tribal recognition authority."   25 U.S.C. § 305e(a)(3)(A) and (B).

organizations, which would be overly burdensome.   Inasmuch as Plaintiffs have offered to limit Defendants' responses to only 50 Indian tribes, the Court finds that this limitation is a reasonable and appropriate compromise of the parties' dispute.   The Court, therefore, will require Defendants to produce information responsive to Interrogatory Nos. 15, 16 and 17 as limited by a list of no more than 50 Indian tribes to be provided by Plaintiffs.

### 2.   *Interrogatory Nos. 6 and 16*

Interrogatory No. 6 asks for sales information related to Defendants' sale of goods with the "Navajo," or its equivalent, mark (*Doc. 88-2* at 10), and Interrogatory No. 16 asks for sales information related to Defendants' sale of goods using the term or terms "Indian," "Native American," or "the name of any Indian Tribe or sold as Indian-Made" (*id.* at 19-20).   Plaintiffs state that they agreed to provide Defendants with a list of infringing goods for Defendants to refer to in order to respond to these interrogatories, and that this list would be based on Defendants' answers to Interrogatory Nos. 15 and 20.   [*Doc. 88* at 12 and 13].   However, Plaintiffs state that Defendants only agreed to produce some information two weeks after Plaintiffs' production of the list, and some information later, and "potentially via an expert report," which would not be due until July 31, 2014.   *Id.*   Plaintiffs contend that waiting for this information until Defendants' expert report is due will be prejudicial to Plaintiffs' ability to prosecute this case.   *Id.* at 13. Plaintiffs, therefore, contend that Defendants should fully answer these interrogatories.   *Id.* at 13-14.   In response, Defendants state that the parties have agreed that Plaintiffs would first provide to Defendants a list of accused goods by January 31, 2014, and Defendants would produce the requested sales information by mid-February, but that they would produce net profit

information via expert report because such computation is complicated and will be conducted by an expert at a later time. [*Doc. 91* at 7-8]. Defendants also contend that they do not track or compute net profits by "good sold" and that is why they need the services of an expert to do the calculations. *Id.* Defendants contend that Plaintiffs' request that they be required to produce such information at this time is premature under the scheduling order. *Id.* at 8. Defendants also contend that any information collected and compiled in preparation for a mediation that took place last summer is privileged. *Id.*

In reply, Plaintiffs contend that Defendants' attempt to only provide net profits information in connection with an expert report is improper under the discovery rules. [*Doc. 92* at 10-12]. The Court agrees. While Defendants state that they do not keep information of net profits in the ordinary course of business, Defendants do not assert that they are unable to obtain such information or that it would be unduly burdensome for them to do so. "[E]ven if complete answers to discovery requests may require the answering party to consult with experts, such considerations do not transform permissible factual discovery into 'expert discovery.'" *Cook v. Rockwell Int'l Corp.*, 161 F.R.D. 103, 106 (D. Colo. 1995). Defendants provide no support for their contention that they do not need to provide their net profit information until they provide their expert reports, and the Court finds that this objection is without merit and will be overruled.

### 3. *Interrogatory No. 20*

Interrogatory No. 20 asks Defendants to "[l]ist in detail all categories or types of goods sold or offered for sale by [Defendants] or third-parties through [Defendants'] stores, websites or catalogs using 'Navajo.'" [*Doc. 88-2* at 23]. Defendants responded stating that no Defendant

presently sells or offers for sale any goods using "Navajo."   *Id.* at 24.   After counsel for both

parties conferred, Defendants agreed to supplement their answer to include responsive information

from February 2008 to the present, and agreed to produce a list in response to this interrogatory.

[*Doc. 88* at 14].   Plaintiffs contend that the list provided by Defendants does not include keyword

search terms, meta tags,[3] or keyword advertising on third-party search engines.   *Id.* at 14-15.   In

response, Defendants state that they have fully answered this interrogatory by producing a list of

goods sold by Defendants from 2008 to the present that include the word "Navajo" as requested in

the interrogatory.   [*Doc. 91* at 9].   Defendants dispute that the interrogatory encompasses a

request for a list of goods related to the use of the word "Navajo" in keyword searches, meta tags,

and keyword advertising on third-party websites, and that the interrogatory did not ask for a list of

goods, but for a list of "categories . . . of goods" and further contend that they never agreed to

provide such a list.   *Id.*   In their reply, Plaintiffs contend that the interrogatory encompasses the

use of keyword searches and meta tags because it asks for goods related to Defendants' *use* of the

word "Navajo," which would include using the word to sell the goods via advertising or marketing

material, even if the goods were not physically labeled "Navajo."   [*Doc. 93* at 13-14].   Plaintiffs

asks the Court to order Defendants to further supplement their answer to include goods sold using

---

[3] "Metatags" or "meta tags" are defined as: "A special HTML tag that provides information about a Web page.   Unlike normal HTML tags, meta tags do not affect how the page is displayed.   Instead, they provide information such as who created the page, how often it is updated, what the page is about, and which keywords represent the page's content.   Many search engines use this information when building their indices."   Webopedia, *available at* http://www.webopedia.com/TERM/M/meta_tag.html (site last visited February 27, 2014).   "HTML" is "short for **H**yper**T**ext**M**arkup**L**anguage, the authoring language used to create documents on the World Wide Web." *Id.* at http://www.webopedia.com/TERM/H/HTML.html (site last visited February 27, 2014).   "HTML defines the structure and layout of a Web document by using a variety of tags and attributes."   *Id.*   "There are hundreds of other tags used to format and layout the information in a Web page," and "[t]ags are also used to specify hypertext links [which] allow Web developers to direct users to other Web pages with only a click of the mouse on either an image or word(s)."   *Id.*

"Navajo" in all advertising and marketing material, including as a keyword search term, meta tag, and keyword on third-party search engines.   *Id.* at 14.

Interrogatory No. 20 asks Defendants to list all categories or types of goods sold by Defendants or third parties through Defendants' stores, websites, or catalogs "using 'Navajo.'" [*Doc. 88-2* at 23].   The Court finds no support for Defendants' contention that this would exclude goods that Defendants have sold using the word "Navajo" in keyword searches or meta tags. Defendants' assertion that the interrogatories do not encompass a request for a list of goods wherein "Navajo" may have been used via keyword searches and meta tags on Defendants' websites, and keyword advertising on third-party search engines (*Doc. 91* at 9) is unfounded since Plaintiffs define "Mark" and "Plaintiffs' Mark" in their Definitions section of their interrogatories to include "keyword or metatag."   *See* [*Doc. 88-1* at 4, ¶¶ 6 and 8, respectively] ("The term 'Mark' shall mean any work, name, symbol or device (including any key word or metatag) . . . used in connection with the sale of goods or products," and "'Plaintiffs' Mark' shall include . . . the unregistered common law trademark in the word 'Navajo.'"), *see also id.* at ¶ 9.   Furthermore, Defendants do not cite to any authority for their position on this matter, and it is clear from the claims made by Plaintiffs in this case that Plaintiffs' claims involve the sale of goods online using the search term "Navajo."   *See, e.g.,* [*Doc. 82* at 13] ("Free People, a brand of Urban Outfitters, also sells goods using the "Navajo" name and its marks in its stores, catalogs and online, and uses the search term "Navajo" in its online catalog search engine to display products on its website."). However, the Court agrees with Defendants that the interrogatory asks for "categories or types of goods," not a list of individual products.   The Court, therefore, will overrule Defendants'

objection to this interrogatory in part, and Defendants shall supplement its response to this interrogatory to include categories or types of goods sold by Defendants or third-parties through Defendants' stores, websites or catalogs using "Navajo" as a keyword or meta tag.

## B.   Privilege Log

Finally, Plaintiffs contend that Defendants have failed to produce a privilege log regarding information relevant to Interrogatory Nos. 3, 5 and 13.   [*Doc. 88* at 16-20].   Those interrogatories ask for information related to Defendants seeking legal opinions as to their freedom to use "Navajo;" whether Defendants ever questioned the propriety of using this term; and whether Defendants ever investigated Plaintiffs after becoming aware of Plaintiffs' existence.   [*Doc. 88-2* at 7, 9, and 16-17].   Defendants agreed to provide responsive, non-privileged information, and to provide a privilege log, but only as to communications up to the date that Defendants received Plaintiffs' cease and desist letter (for Urban Outfitters defendants), or up to the date Plaintiffs filed the initial complaint (for the other defendants).   [*Doc. 88* at 17].   Plaintiffs contend that, because they allege intentional infringement and continuing violations, communications after Plaintiffs' cease and desist letter and the initial filing of the complaint are relevant.   *Id.*   Plaintiffs agree to narrow the time frame and ask Defendants to provide a privilege log with regard to communications that occurred within 30 days following: (1) receipt of Plaintiffs' cease and desist letter;   (2) receipt of the initial complaint;   and (3) receipt of Plaintiffs' counsel's September 21, 2013 letter putting Defendants on notice of continuing trademark infringement. *Id.* at 18.   Defendants respond that, even limited to the time frames proposed by Plaintiffs, these communications are voluminous and would require a large amount of work by Defendants for

information that will never be substantively disclosed to Plaintiffs.   [*Doc. 91* at 10-11].
Defendants further contend that Plaintiffs' intentional infringement claim is a "red herring"
because Plaintiffs have only alleged that Defendants have sold three allegedly infringing items
following the cease and desist letter at a total of two of its stores.   *Id.* at 12.

Fed. R. Civ. P. 26(b)(5) requires parties to provide a description of the nature of
documents, communications, or tangible things they are withholding on the basis of privilege
which are responsive to discovery requests and are otherwise discoverable.   The Court finds that
Defendants' objections to these interrogatories on the basis that it would be unduly burdensome to
provide the information and that Plaintiff's intentional infringement claim is not well-supported
are without merit.   Defendants did not make either of these objections when they responded to
Plaintiff's interrogatories (*see Doc. 88-2* at 7-10 and 17), so these objections are waived (*see*
Fed. R. Civ. P. 33(b)(4) ("Any ground not stated in a timely objection is waived unless the court,
for good cause, excuses the failure.")).   The Court also finds that Defendants' contention that
responsive communications that occurred after the receipt of the cease and desist letter or the filing
of the complaint are not subject to the privilege log requirement is without merit.   The cases cited
by Defendants are non-binding and distinguishable.   For example, in *Gary Friedrich Enterprises,
LLC v. Marvel Enterprises, Inc.*, 08 Civ. 1533 (BSJ)(JCF), 2011 U.S. Dist. LEXIS 44739, at *4-*6
(S.D.N.Y. April 26, 2011) (unpublished) [*Doc. 91-1* at 16-19], the court held that "each privileged
communication created in connection with this litigation" need not be included on a privilege log.
Here, however, Plaintiffs are not asking for each privileged communication to be included on a
privilege log.   Instead, they are asking for communications that are responsive to Interrogatory

Nos. 3, 5 and 13, and that occurred 30 days following three specific dates, be included on a privilege log.   In addition, two of the cases cited by Defendants that found that a litigant need not identify communications between the litigant and its counsel after the commencement of an action involved courts that have local rules providing that such information need not be disclosed absent special circumstances.   *See In re: Denture Cream Products Liability Litigation*, Case No. 09-2051-MD-Altonaga/Simonton, 2012 U.S. Dist. LEXIS 151014, at *42-*43 (S.D.Fla. Oct. 18, 2012) (unpublished) [*Doc. 91-1* at 21-43] and *Lamer v. Williams Communications, LLC*, Case No. 04-CV-847-TCK-PJC, 2007 U.S. Dist. LEXIS 8585, at *5 (N.D.Okla. Feb. 6, 2007) (unpublished) [*Doc. 91-1* at 45-46].   This Court has no such local rule, so the Court finds that these cases are unpersuasive.

In addition, the Court finds that Defendants' contention that they should not be required to provide the requested information in a privilege log because the substance of the information will not be disclosed to Plaintiffs is without merit.   Pursuant to Rule 26(b)(1), a matter is relevant "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Plaintiffs have explained that the requested information could show whether Defendants failed to take remedial measures or "were willfully blind to infringement by Defendants' third-party suppliers," which is relevant to Plaintiffs' claims regarding intentional infringement.   [*Doc. 93* at 15].   The Court agrees that having this information in a privilege log is relevant to Plaintiffs' intentional infringement claims, regardless of the substance of the communications, because it could show Defendants' actions, or lack thereof, in the time period following Defendants' receipt of Plaintiffs' cease and desist letter, the initial complaint, and Plaintiff's letter regarding

Defendants' continuing infringement.  For these reasons, the Court finds that Defendants are required to follow Fed. R. Civ. P. 26(b)(5) and provide a description of any documents or communications they are withholding on the basis of privilege that are otherwise responsive to Interrogatory Nos. 3, 5 and 13 and that occurred within 30 days following: (1) receipt of Plaintiffs' cease and desist letter; (2) receipt of the initial complaint; and (3) receipt of Plaintiffs' counsel's September 21, 2013 letter putting Defendants on notice of continuing trademark infringement.

**IT IS THEREFORE ORDERED** that, for the reasons stated above, ***Plaintiffs' Motion to Compel Discovery (Doc. 88)***, is **GRANTED in part** and **DENIED in part** as follows:

1.      Plaintiff shall provide Defendants with a list of no more than 50 Indian tribes and, **no later than fifteen (15) days after receipt of the list from Plaintiffs**, Defendants shall produce supplemental responses to Interrogatory Nos. 15, 16 and 17 to include information relating to the Indian tribes on that list;

2.      Defendants shall provide complete responses to Interrogatory Nos. 6 and 16 with regard to their net profits, **no later than fifteen (15) days after the entry of this Order**;

3.      Defendants shall supplement its response to Interrogatory No. 20 to include categories or types of goods sold by Defendants or third-parties through Defendants' stores, websites or catalogs using "Navajo" as a keyword or meta tag, **no later than fifteen (15) days after the entry of this Order**; and

4.      Defendants shall provide a privilege log describing any communications they are withholding on the basis of privilege that are otherwise responsive to Interrogatory Nos. 3, 5 and 13 and that occurred within 30 days following: (1) receipt of Plaintiffs' cease and desist letter;

(2) receipt of the initial complaint; and (3) receipt of Plaintiffs' counsel's September 21, 2013 letter putting Defendants on notice of continuing trademark infringement, **no later than fifteen (15) days after the entry of this Order**.

       **IT IS SO ORDERED.**

                                      _____

                                        **LOURDES A. MARTÍNEZ**
                                        **UNITED STATES MAGISTRATE JUDGE**