IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**THE NAVAJO NATION,** a sovereign Indian Nation, **DINE DEVELOPMENT CORPORATION**, a corporation wholly-owned by and formed under the laws of the Navajo Nation, and **NAVAJO ARTS AND CRAFTS ENTERPRISE**, a wholly-owned instrumentality of the Navajo Nation,

      **Plaintiffs,**

v.                 CIV No. 12-195 LH/LAM

**URBAN OUTFITTERS, INC., UO.COM, L.L.C., URBAN OUTFITTERS WHOLESALE, INC., ANTHROPOLOGIE, INC., ANTHROPOLOGIE.COM, L.L.C., FREEPEOPLE of PA, L.L.C.**, and **FREEPEOPLE.COM, L.L.C.,** a Delaware Corporation,

      **Defendants.**

**MEMORANDUM OPINION AND ORDER**

  **THIS MATTER** comes before the Court on Plaintiffs' Motion to Dismiss Counterclaim V Pursuant to 12(B)(1) and 12(B)(6) (ECF No. 105).  Plaintiffs The Navajo Nation, the Dine Development Corporation ("DDC"), and the Navajo Arts and Crafts Enterprise ("NACE") are collectively referred to herein as "Plaintiffs" or "The Navajo Nation."  Defendants Urban Outfitters, Inc., UO.com, L.L.C., Urban Outfitters Wholesale, Inc., Anthropologie, Inc., Anthropologie.com, L.L.C.,  Free People of PA, L.L.C., and Freepeople.com, L.L.C. are collectively referred to herein as "Defendants."

1

This Court, having considered the pleadings, motion, briefs, relevant law, and otherwise being fully advised, concludes that the motion to dismiss should be **granted**, pursuant to Fed.R.Civ.P. 12(b)(1).[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

The undersigned judge has issued three memorandum opinions and orders in this case to date. The first of these (ECF No. 50) granted to Plaintiffs the right to file a sur-reply and denied Defendants' motion to transfer venue. The next ruling (ECF No. 52) essentially denied Defendants' motion to dismiss the Amended Complaint, with two minor exceptions,[2] and reserved ruling on an issue involving the New Mexico Unfair Practices Act ("NMUPA"). This second ruling also granted Plaintiffs 10 days to amend their complaint to add necessary factual allegations for their claim under the New Mexico Trademark Act. A Second Amended Complaint was filed on April 4, 2013 (ECF No. 54). The Court's third decision (ECF No. 81), dated November 6, 2013, granted Plaintiffs' motion to file a third complaint, thereby allowing them to add "claims for Contributory Trademark Infringement under the Lanham Act and Common Law and Vicarious and/or Enterprise Liability under the Lanham Act and Common Law." (*Id.* at 19). It also dismissed Plaintiffs' claim under the NMUPA. (*Id.*).

To the extent that the history of this case is set forth in these three prior rulings, it will not be repeated in detail here. On November 18, 2013, Plaintiffs filed their Third Amended

---

[1] Because the Court has dismissed Counterclaim V under Rule 12(b)(1), it need not consider applicability of Rule 12(b)(6) in this matter.

[2] The Court granted Defendants' motion to dismiss to a "limited extent." Mem. Op. and Order at 45. Specifically, the Court dismissed these two theories upon which Plaintiffs based their dilution by tarnishment claim in Count II: "(i) that Defendants' use of 'Navaho' is 'scandalous' because the Navajo Nation Code provides that the use of 'Navajo' shall use the spelling 'j', not 'h;' and, that (ii) Defendants' use of 'Navajo' with products like its 'Navajo Flask' is derogatory, scandalous, and contrary to the Navajo Nation's principles because it has long banned the sale and consumption of alcohol within its borders and the Navajo Nation does not use its mark in conjunction with alcohol." (*Id.*).

Complaint for Injunctive Relief and Damages (Third Am. Compl. ("the complaint"), ECF No. 82).  Plaintiffs submitted five exhibits with this complaint.  In the complaint, Plaintiffs indicated that Exhibit A (ECF No. 97-1) and Exhibit C (ECF No. 82-3 at 1-3) are true and correct copies of Defendants' webpages showing illustrative, but not exhaustive, examples and lists of Defendants' products shown for online marketing and retailing under the "Navajo" trademark.  Exhibit B (ECF No. 82-2) is a June 30, 2011 letter from the Navajo Nation Department of Justice to the CEO of Urban Outfitters Incorporated (the "cease and desist letter").  Exhibit D (ECF No. 82-3 at 4-15) contains registrations for nine trademarks that are listed in a chart in the complaint on pages 18 and 19.  The complaint alleges that this chart illustratively but not exhaustively shows the Nation's trademarks that Defendants have infringed.  According to the complaint, Exhibit E (ECF No. 82-3 at 16-29) contains true and correct copies of a small sample of products shown on Defendants' website webpages for online marketing and retailing.

Defendants filed their Answer to Third Amended Complaint and Affirmative Defenses (Answer to Third Am. Compl. ("the answer"), ECF No. 87) on December 2, 2013.  The answer did not restate counterclaims that had been contained in Defendants' prior answer.  On February 10, 2014, the parties filed an agreed-upon motion (ECF No. 102), in which Plaintiffs agreed to refrain from asserting that Defendants abandoned or waived their counterclaims by failing to restate counterclaims in their most recent answer.  Further, the parties agreed to an extension of time for Plaintiffs to respond to the counterclaims that had been asserted in an earlier answer (ECF No. 57).  The Court entered an order adopting the terms of this agreed-upon motion on February 20, 2014 (ECF No. 103).

The current posture of the case is as follows:  the Nation's suit against Defendants still includes trademark infringement, trademark dilution, unfair competition, false advertising,

commercial practices laws violations, and violation of the Indian Arts and Crafts Act. Specifically, Plaintiffs allege in Count One that Defendants' use of the "Navajo" and "Navaho" mark in connection with the sale of clothing, jewelry, housewares, footwear, and similar items is likely to cause confusion, mistake, or deception in the market place, and has created actual confusion in the market place, and constitutes trademark infringement in violation of 15 U.S.C. §§ 1114 and 1117 of the Lanham Act.[3] (*See* Third Am. Compl., ECF No. 82 at ¶¶ 93-103). In Count Two, Plaintiffs assert that Defendants' use of the "Navajo" and "Navaho" names and marks to promote, market, and sell its retail items constitutes willful Trademark Dilution by blurring, and willful Trademark Dilution by tarnishment under § 1125(c) of the Lanham Act. (*See id.* at ¶¶ 104-108). Plaintiffs allege in Count Three that Defendants are liable for Unfair Competition and False Advertising under § 1125(a) of the Lanham Act, based on false advertising and infringement of the Navajo Nation's unregistered NAVAJO trademarks. (*See id.* at ¶¶ 109-113). In Count Four, Plaintiffs allege that Defendants violated the Indian Arts and Crafts Act, 25 U.S.C. § 305 *et seq.*, ("IACA") by offering, advertising, marketing, displaying for sale, and selling goods that falsely suggest Defendants' products are products of an Indian Tribe, when in fact they are not products of any Indian Tribe. (*See id.* at ¶¶ 114-134).

The Third Amended Complaint deletes the contents of Count Five, a claim under the NMUPA, as ordered by this Court in its November 6, 2013 Memorandum Opinion and Order (ECF No. 81). Plaintiffs allege in Count Six that Defendants' willfully committed acts and omissions caused dilution and/or tarnishment of the distinctive quality of the Navajo Nation's NAVAJO marks in violation of the New Mexico Trademark Act ("NMTA"), N.M. Stat. Ann. § 57-3B-15. (Third Am. Compl., ECF No. 82 at ¶¶ 135-139). As mentioned above, the Third Amended Complaint added two new claims. Count Seven alleges Contributory Trademark

---

[3] The Lanham Act is found at 15 U.S.C. §§ 1051 *et seq.*

Infringement under 15 U.S.C. §§ 32 and 43 of the Lanham Act.  (*See id.* at ¶¶ 140-146).  Finally, Count Eight alleges Vicarious and Enterprise Trademark Infringement under the same sections of the Lanham Act.  (*See id.* at ¶¶ 147-152).

Plaintiffs seek relief in this litigation in the form of declaratory relief, permanent injunctive relief, monetary damages in the amount of all profits made as a result of Defendants' allegedly wrongful conduct, treble damages in the amount of such profits, attorney fees and costs, and punitive damages.

## II.  PENDING MOTION TO DISMISS

The motion now before the Court, Plaintiffs' Motion to Dismiss Counterclaim V Pursuant to 12(B)(1) and 12(B)(6), was filed on March 6, 2014 (ECF No. 105).  In essence, this motion contends that Counterclaim V is barred by sovereign immunity; that because the counterclaim does not sound in recoupment, there can be no viable claim from Defendants that the Nation waived its immunity; and that because immunity was not waived, this Court lacks jurisdiction over the counterclaim.  Further, Plaintiffs contend that, even if the Court had subject matter jurisdiction, this counterclaim must still be dismissed, because as a matter of law, the NAVAJO mark cannot be attacked as merely descriptive or generic.

Defendants respond that the Nation has affirmatively placed the validity of their federal trademark registrations under the Lanham Act at issue in this litigation, and that this fact has been overlooked in their sovereign immunity argument.  Specifically, Defendants assert that the Lanham Act is a federal statute of general application that applies equally to all "persons," including Indian tribes, which grants federal courts the power to cancel registrations and otherwise rectify the register in "any action involving a registered mark."  Defendants further

assert that Counterclaim V does sound in recoupment, resulting in a waiver of tribal immunity, in that it narrowly only addresses those factual issues that are the subject of the Nation's claim for registered trademark infringement, and seeks only to "off-set" the evidentiary presumptions conferred through the Nation's alleged ownership of the asserted registrations.

Counterclaim V states:

**(Declaration Judgment of Federal Trademark Registration Invalidity)**

> 107. Counterclaimants reallege and incorporate the averments in Paragraphs 1 through 106 as if set forth here in full.
>
> 108. Counterclaim Defendants' federal registrations for NAVAJO marks, are invalid and subject to cancellation on the basis that they were merely descriptive and/or geographically descriptive and have become a generic term for a type or category of style or design.
>
> 109. The term "NAVAJO" in Counterclaim Defendants' federal registrations for NAVAJO-formative marks should be disclaimed on the basis that the term is merely descriptive or has become a generic term for a type or category of style or design.
>
> 110. Accordingly, pursuant to 15 U.S.C. §§ 1119 and 1064, Counterclaimants hereby seek a declaration that the Nation's federal registrations for NAVAJO marks are invalid and an Order that the Nation's registrations for NAVAJO marks are cancelled, and the term "NAVAJO" in the Nation's NAVAJO-formative marks be disclaimed.

(ECF No. 57 at ¶¶ 107-110). In short, Defendants request the Court to declare the Nation's federally registered NAVAJO trademarks to be invalid and subject to cancellation on the basis that they are "merely descriptive and/or geographically descriptive and have become a generic term for a type or category of style or design. (*Id.* at ¶ 108).[4] Further, this counterclaim requests

---

[4] It is noteworthy that the Answer to the Third Amended Complaint (ECF No. 87) contains two affirmative defenses that relate to the topic of a trademark being generic or abandoned. Defendants' Fifth Defense states: "The term 'najavo' is a common, generic term widely used in the industry and by customers to describe a design/style or feature of clothing and clothing accessories, and therefore, is incapable of trademark protection." (Answer to Third Am. Compl. at 19). Plaintiffs' Sixth Defense states: "Plaintiffs' course of action and inaction, over a number of

the Court to disclaim the term "NAVAJO" in the Nation's federal registrations for NAVAJO-formative marks on the same basis. (*Id.* at ¶ 109).

As a challenge to subject matter jurisdiction, Plaintiffs' motion to dismiss, based in part upon tribal sovereign immunity, is properly brought pursuant to Federal Rule 12(b)(1). *E.F.W. v. St. Stephen's Indian High School,* 264 F.3d 1297, 1303 (10th Cir. 2001). The Nation poses a facial attack questioning the legal sufficiency of the allegations in Counterclaim V, regarding subject matter jurisdiction. Under a facial challenge, the Court accepts the counterclaim's allegations as true, and considers "whether the [counterclaim], standing alone, is legally sufficient to state a claim upon which relief can be granted." *Id.* (citations omitted). Because Defendants have the burden of proving subject matter jurisdiction underlying their counterclaim, they must establish unequivocal abrogation of the Nation's sovereign immunity. *See Montoya v. Chao,* 296 F.3d 952, 955 (10th Cir. 2002).

The Court construes Counterclaim V as a claim for invalidation, cancellation and disclaimer of trademarks of the Nation under 15 U.S.C. §§ 1119 and 1064 of the Lanham Act ("the Act"). The Court must first determine whether or not the Nation has sovereign immunity from such a claim. "As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." *Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.*, 523 U.S. 751, 754 (1998) (citations omitted). Without express congressional authorization of a suit against a tribe or an unequivocal waiver by the tribe, a tribe is immune from suit. *Breakthrough Management Group, Inc. v. Chukchansi*

---

years in which the term 'navajo' has become generic, through its widespread use by a variety of third parties, constitutes an abandonment of Plaintiffs' alleged 'najavo' marks, within the meaning of 15 U.S.C. § 1127." ( *Id.* at 20).

*Gold Casino and Resort,* 629 F.3d 1173, 1182 (10th Cir. 2010).  At this juncture, this Court must decide if either of these prerequisites is present, resulting in the Nation being subject to the claims contained in Counterclaim V.

### A.  Applicability of the Act to the Nation

The Lanham Act is a federal statue of general applicability, in that it applies to "all persons."  It states that "any person who believes he is or will be damaged by the registration of a mark" may seek cancellation of such registration "if the registered mark becomes the generic name for the goods . . . for which it is registered . . . ."  15 U.S.C. § 1064.  The Act grants power to federal courts to "determine the right to registration, order the cancelation of registrations … and otherwise rectify the register with respect to the registrations of any party to the action."  15 U.S.C. § 1119.

Defendants contend that because the Lanham Act applies equally to all "persons," this means that it applies to Indian tribes.  They cite the Court to the case of *Federal Power Commission v. Tuscarora Indian Nation,* 362 U.S. 99, 116 (1960), which states:  "it is now well settled by many decisions of this Court that a general statute in terms applying to all persons includes Indians and their property interests." ("*Tuscarora* rule").  Defendants cite *Tuscarora* to support their position that, as a general act of Congress, the Lanham Act "applies to Indians as well as to all others in the absence of a clear expression to the contrary."  *Id.* at 120.  They contend that there is nothing within the Act which states that Indian tribes are to be exempted and that the Nation has itself contended that it has the rights accorded under that Act by virtue of its alleged federal registrations.  They characterize the Act as a "comprehensive plan that neither overlooks nor excludes Indian tribes," and that it abrogates the claim of sovereign immunity asserted by the Nation as against Counterclaim V.  (Defts' Resp. at 4).

8

The Supreme Court has not yet directly addressed whether federal statutes of general applicability abrogate tribal immunity.  Eagle H. Robinson, *Infringing Sovereignty: Should Federal Courts Protect Patents and Copyrights from Tribal Infringement?*, 32 Am. Indian L. Rev. 233, 237 (2007-2008).  Most circuit courts have applied language in the *Tuscarora* case to establish a presumption that federal statutes of general applicability fully apply, unless the statute exempts tribes.  The leading case applying and explaining the *Tuscarora* rule is *Donovan v. Coeur d'Alene Tribal Farm,* 751 F.2d 1113 (9th Cir. 1985).  The *Coeur d'Alene* case also recognized three exceptions to the rule of general applicability:  "(1) the law touches exclusive rights of self-governance in purely intramural-matters;  (2) the application of the law to the tribe would abrogate rights guaranteed by Indian treaties; or (3) there is proof by legislative history or some other means that Congress intended [the law] not to apply to Indians on their reservations. *Id.* at 1116.

Unlike most other circuit courts, the Tenth Circuit has refused to implement a blanket adoption of the *Tuscarora* rule, but rather has recognized a distinction between cases where a tribe "has exercised its authority as a sovereign" and where a tribe acts "in a proprietary capacity." *N.L.R.B. v. Pueblo of San Juan,* 276 F.3d 1186, 1199 (10th Cir. 2002).  In *Pueblo of San Juan,* the Tenth Circuit concluded that the *Tuscarora* rule is applicable to Indian tribal governments acting in proprietary capacities only, citing cases from the Eleventh, Second and Seventh Circuits[5], as well as the Tenth Circuit case of *Donovan v. Navajo Forest Products Industries,* 692 F.2d 709 (10th Cir. 1982).  *Id.* ("The *Tuscarora* Court's remarks [*i.e.* the *Tuscarora* rule] concerning statutes of general applicability were made in the context of property

---

[5] The Court cited *Florida Paraplegic Ass'n, Inc. v. Miccosukee Tribe of Indians of Florida,* 166 F.3d 1126 (11th Cir. 1999); *Reich v. Mashantucket Sand & Gravel,* 95 F.3d 174 (2d Cir. 1996); and *Smart v. State Farm Ins.,* 868 F.2d 929 (7th Cir. 1989).

rights, and do not constitute a holding as to tribal sovereign authority to govern.") The *Pueblo of San Juan* decision specified that it is "convinced that [the *Tuscarora* rule] does not apply where an Indian tribe has exercised its authority as a sovereign . . . rather than in a proprietary capacity such as that of employer or landowner." *Id.*

Thus, to determine whether the Lanham Act, a generally applicable federal statute, applies to the Nation in the context of this lawsuit, the Court must first determine whether the tribe is exercising its sovereign authority or whether it is acting in its proprietary capacity. *Id.* If the tribe is exercising it authority as a sovereign, the *Tuscarora* rule does not apply. *Id.* However, if the tribe is acting in its proprietary capacity, the *Tuscarora* rule does apply, *see id.*, and the Court must determine whether there is an exception to that rule. *See Nero v. Cherokee Nation of Oklahoma,* 892 F.2d 1457, 1462-63 (1989).

Applying this framework to this case, the Court concludes that the *Tuscarora* rule applies. The present case involves an Indian tribe, a corporation formed under its laws, and a business enterprise, which is a wholly-owned instrumentality of the Nation, in a lawsuit dealing with trademark property rights and alleged infringement of these rights, as well as Defendants' Counterclaim V, which alleges that these marks should be cancelled, invalidated and/or disclaimed. Given this content, clearly this lawsuit does not involve the Nation's sovereign authority, such as the authority to enact its own laws in its territory. A tribe's sovereign authority involves regulation of economic activity, self-government and territorial management. *See N.L.R.B. v. Pueblo of San Juan,* 276 F.3d at 1200. None of these types of activities is implicated in the substance of the underlying lawsuit. Consequently, the *Tuscarora* rule applies, subject to the *Coeur d'Alene* exceptions.

Turning attention to these exceptions, the Court notes that the Nation has neither identified nor discussed how application of the Act would upset tribal self-governance in purely intramural matters, and that there is no support for a conclusion that the Act would have this effect. Moreover, there is no argument that application of the Act to the Nation would abrogate rights guaranteed by Indian treaties. Finally, there is no proof, by legislative history or some other means, that Congress intended the Act not to apply to Indians on their reservations. Accordingly, the Court concludes that none of the *Coeur d'Alene* exceptions to the rule of general applicability has been shown and that the Lanham Act applies to the Nation, pursuant to Counterclaim V, as plead by Defendants.

### B. Whether the Nation is Subject to Suit Under the Act

Having concluded that the Lanham Act applies to the Nation, and that no exception prevents its application to issues involving trademarks of the Nation, the Court's analysis does not stop here. "[W]hether an Indian tribe is *subject* to a statute and whether the tribe may be *sued* for violating the statute are two entirely different questions." *See Florida Paraplegic Assoc., Inc. v. Miccusokee Tribe of Indians of Florida*, 166 F.3d 1126, 1130 (11th Cir. 1999), quoted in *Bales v. Chickasaw Nation Industries,* 606 F.Supp.2d 1299, 1303 (D.N.M. 2009). As the Supreme Court bluntly stated in *Kiowa Tribe v. Manufacturing Technologies, Inc.*, 523 U.S. at 755, "[t]here is a difference between the right to demand compliance with state laws and the means available to enforce them." This principle, which simply spells out the distinction between a right and a remedy, applies with equal force to federal laws. *See Florida Paraplegic Assoc., Inc. v. Miccosukee Tribe of Indians of Florida,* 166 F.3d at 1130. In the context of this case, the Court must determine whether or not Defendants can pursue the remedies and relief they seek in Counterclaim V, *i.e.*, whether, under the rules concerning tribal sovereign immunity,

11

the Nation is amenable to a private lawsuit seeking invalidation, cancellation and disclaimer of trademarks under the Lanham Act.

Although Indian tribes are "domestic dependent nations" whose sovereignty is not absolute but may be limited by Congress, *see Oklahoma Tax Comm'n v. Potawatomi Indian Tribe,* 498 U.S. 505, 509 (1991), "federal encroachment upon Indian tribes' natural rights is a serious undertaking, and [the Court] should not assume lightly that Congress intended to restrict Indian sovereignty through a piece of legislation." *Florida Paraplegic Assoc., Inc. v. Miccosukee Tribe of Indians of Florida,* 166 F.3d at 1130. The Supreme Court has steadfastly held that "Indian Nations are exempt from suit without Congressional authorization," *United States v. United States Fidelity & Guaranty Co.*, 309 U.S. 506, 512 (1940), and that "[Congressional] waiver of sovereign immunity cannot be implied but must be unequivocally expressed." *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 58 (1978). In 2001, the Supreme Court reaffirmed this holding, stating that to abrogate tribal immunity, Congress must "unequivocally express that purpose." *See C & L Enterprises v. Citizen Band Potawatomi Indian Tribe,* 532 U.S. 411, 418 (2001). Keeping this firm rule in mind, the Court will address whether or not Defendants are permitted to sue the Nation, pursuant to Counterclaim V.

In the context of federal and state governmental immunity, which is broader than the tribal immunity context, the Supreme Court has held that Congress may abrogate a sovereign's immunity "only by making its intention unmistakably clear in the language of the statute;" legislative history and inferences from general statutory language are insufficient. *See Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 242 (1985). In making this analysis, the Court must bear in mind the Supreme Court's repeated admonition that, because of the "unique trust relationship between the United States and the Indians," where Indian rights are at issue,

12

ambiguities in federal laws must be resolved in favor of Indians. *See Montana v. Blackfeet Tribe of Indians*, 471 U.S. 759, 766 (1985).[6]

The Court has examined the Lanham Act, and concludes that Counterclaim V does not meet the strict requirements of this test. No specific reference to Indians or Indian tribes exist in the sections of the Act mentioned in Counterclaim V. There is no definitive language in the statute that indicates either an intent to abolish Indian tribal immunity or to specifically subject tribes to suit under the Act. Put another way, nothing on the face of this Act purports to subject tribes to the jurisdiction of federal courts in civil actions brought by private parties, and a congressional abrogation of tribal immunity cannot be implied. *See Bassett v. Mashantucket Pequot Tribe,* 204 F.3d 343, 357 (2d Cir. 2000)(Reaching a similar conclusion about the Copyright Act). Nothing in the Lanham Act supports a conclusion that Congress "unequivocally expressed" its intent to abrogate the Nation's sovereign immunity.

In contrast, the Court notes the existence of statutes in which Congress has included language, evidencing its explicit intent to subject tribes to suit. For example, under the Safe Drinking Water Act, Congress defined the term "persons" to include municipalities, and then defined municipalities to include Indian tribes. *See Osage Tribal Council v. U.S. Dept. of Labor,* 187 F.3d 1174, 1182 (10th Cir. 1999)("where Congress grants an agency jurisdiction over all 'persons,' defines 'persons' to include 'municipality,' and in turn defines 'municipality,' to include 'Indian Tribe[s],' in establishing a uniform national scheme of regulation of so universal a subject as drinking water, it has unequivocally waived tribal immunity").

---

[6] It is noteworthy that Congress has consistently reiterated its approval of the immunity doctrine. *See*, *e.g.,* Indian Financing Act of 1974, 88 Stat. 77, 25 U.S.C. § 1451 *et seq.*, and the Indian Self-Determination and Education Assistance Act, 88 Stat. 2203, 25 U.S.C. § 450 *et seq.* These Acts reflect the desire of Congress to promote the goal of Indian self-government, including its overriding goal of encouraging tribal self-sufficiency and economic development. *California v. Cabazon Band of Mission Indians,* 480 U.S. 202, 216 (1987).

There is no such explicit language to be found in the Lanham Act and the Court concludes therefore that Congress has not unequivocally waived tribal immunity under the Act. The argument that the Nation is subject to suit for the claims in Counterclaim V, under the Lanham Act, cannot succeed. Congress has not manifested with requisite clarity any intent to abrogate tribal immunity from suit in this context.

### C.  Waiver of Immunity by the Tribe  --  Recoupment

Contrary to Defendants' contention, it is clear that a tribe's sovereign immunity is not waived by virtue of its having filed the underlying lawsuit. *Oklahoma Tax Comm'n v. Potawatomi Indian Tribe,* 498 U.S. at 509 (citing *United States v. United States Fidelity & Guaranty Co.*, 309 U.S. at 513, which held that a tribe does not waive its sovereign immunity from actions that could not otherwise be brought against it merely because those actions were pleaded in a counterclaim to an action filed by the tribe.)  As stated further by the Supreme Court in *United States Fidelity & Guaranty Co.,* "[p]ossessing . . immunity from direct suit, we are of the opinion [the Indian nations] possess a similar immunity from cross-suits." *Id.*

Defendants do raise a second, more difficult question also related to the issue of waiver of immunity however --   whether or not Counterclaim V sounds in recoupment.  The Tenth Circuit extended application of the recoupment doctrine to Indian Tribes in the case of *Jicarilla Apache Tribe v. Andrus,* 687 F.2d 1324 (10th Cir. 1982).  Pursuant to this case, a tribe (like the United States, and unlike the states) does not waive its immunity to counterclaims by filing suit *unless* the counterclaim sounds in recoupment -- a narrow exception to immunity. *Id.* at 1344; *see also Berrey v. Asarco, Inc.*, 439 F.3d 636, 643 (10th Cir. 2006).

A claim sounds in recoupment if it meets three requirements: (1) the claim must arise from the same transaction or occurrence as the plaintiff's suit; (2) the claim must seek relief of the same kind or nature; and, (3) the claim must seek an amount not in excess of the plaintiff's claim. *F.D.I.C. v. Hulsey,* 22 F.3d 1472, 1487 (10th Cir. 1994). The parties disagree about as to whether or not these requirements are met in this situation.

The second and third requirements -- that Counterclaim V must seek relief of the same kind or nature as that sought by the Nation in bringing this lawsuit and is not in excess of the Nation's claim – are the most easily addressed and are clearly not met.

In this lawsuit, the Nation makes infringement claims, asking the Court to determine if it has suffered damages as a result of Defendants' actions and requesting that the Court stop ongoing or future infringing actions. The Nation seeks relief in the form of declaratory relief, permanent injunctive relief, monetary damages in the amount of all profits made as a result of Defendants' allegedly wrongful conduct, treble damages in the amount of such profits, attorney fees and costs, and punitive damages.

In contrast, Counterclaim V seeks cancellation, invalidation and disclaimer of the Nation's trademarks. Specifically, Counterclaim V seeks a declaration that the "Nation's federal registrations for NAVAJO marks are invalid and … that the Nation's registrations for NAVAJO marks are cancelled, and the term "NAVAJO" in the Nation's NAVAJO-formative marks be disclaimed." (ECF No. 57 at ¶ 110). This relief, if obtained, would forever bar the Nation from claiming a trademark, pursuant to its federal registrations, against any party, not just against Defendants. Winning on Counterclaim V, would allow Defendants (and all others) free use of the NAVAJO mark in the future. The relief sought by Defendants is clearly in excess of that

sought by the Nation. It is both a different kind and degree of relief than that sought by the Nation.

Because Counterclaim V does not meet all three of the *Hulsey* requirements, it does not sound in recoupment and therefore the Court concludes that the Nation has not waived its immunity.

For the reasons stated herein, Plaintiffs' motion to dismiss Counterclaim V for lack of subject matter jurisdiction is **granted**.

**WHEREFORE, IT IS HEREBY ORDERED** that Plaintiffs' Motion to Dismiss Counterclaim V Pursuant to 12(B)(1) and 12(B)(6) (ECF No. 105) is hereby **granted**, resulting in **dismissal with prejudice of Defendants' Counterclaim V.**

**IT IS SO ORDERED.**

_____
**SENIOR UNITED STATES DISTICT JUDGE**