IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

THE NAVAJO NATION, et al.,

      Plaintiffs,

v.                                    No. 12cv0195 LH/LAM

URBAN OUTFITTERS, INC., et al.,

      Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL DISCOVERY [*Doc. 133*]

**THIS MATTER** is before the Court on ***Plaintiffs' Motion and Memorandum to Compel and Request to Take Two Additional Depositions*** *(Doc. 133)*, filed July 21, 2014.[1]   On August 14, 2014, Plaintiffs filed a supplemental brief in support of their motion to compel (*Doc. 159*), in which Plaintiffs state that, at a Rule 30 (b)(6) deposition that took place after Plaintiffs had filed their motion to compel, they learned of additional information to support the claims made in their motion to compel.   [*Doc. 159* at 6].   On August 22, 2014, Defendants filed a response to the motion to compel and supplement brief [*Doc. 166*],[2] and Plaintiffs filed a reply on

---

[1] The Court notes the voluminous amount of pages filed by the parties with regard to Plaintiffs' motion to compel.   Plaintiffs attached over one hundred pages of exhibits to their motion to compel (*Docs. 133-1* through *133-6*), filed seven "Declarations" with attachments (*Docs. 134-140*), a supplemental brief (*Doc. 157*), a "Declaration" in support of the supplemental brief (*Doc. 158*), and a corrected supplemental brief (*Doc. 159*). Defendants filed over forty pages of exhibits in support of their response (*Docs. 166-1*through *166-11*).   The Court has counted over five hundred (500) pages filed by the parties with regard to this motion to compel, many of which are duplicate exhibits that have already been filed.   The Court cautions the parties to refer to exhibits that have already been filed, instead of re-filing such exhibits, so as not to burden the Court with unnecessary and repetitive filings.

[2] Plaintiffs filed two similar motions to compel - Documents 133 and 141 - on July 21, 2014 and July 22, 2014, respectively.   On August 7, 2014, the Court ordered Plaintiffs to notify the Court which motion to compel they wished to pursue.   *See* [*Doc. 152* at 5].   On August 8, 2014, Plaintiffs filed a notice stating that the operative motion was Document 133, and listing the exhibits pertaining to that motion.   *See* [*Doc. 155*].   Pursuant to this notice, the Court found Document 141 moot.   *See* [*Doc. 163*].   The Court notes that, despite having been notified that the operative motion is Document 133, Defendants refer to Document 141 in their response.   Nevertheless, the Court will consider Document 133 in this Order.

September 18, 2014 [*Doc. 176*].   This case involves allegations of trademark infringement, trademark dilution, unfair competition, and false advertising under the Lanham Act, and violations of the Indian Arts and Crafts Act, as well as state claims under the New Mexico Trademark Act. *See* Third Amended Complaint [*Doc. 82*].   Plaintiff, The Navajo Nation, and its wholly owned corporation and instrumentality allege that Defendants have improperly and illegally advertised and sold goods bearing Plaintiffs' trademark implying that these goods are genuine "Navajo," "Native American" or "Indian," when they are not.   Having considered the motion, supplemental brief, response, reply, record of this case, and relevant law, the Court **FINDS** that the motion to compel shall be **GRANTED in part** and **DENIED in part**.

In their motion to compel, Plaintiffs contend that Defendants should be compelled to: (1) locate and produce documents stored on their shared computer drive (*Doc. 133* at 7-11); (2) produce documents related to seven additional document custodians, and produce Margaret Hayne for a deposition (*id.* at 11-16); (3) produce documents related to marketing, advertising, and Defendants' websites in response to Requests for Production ("RFP") Nos. 7, 30, and 35 (*id.* at 16-19); (4) produce financial documents in response to RFP Nos. 22, 23, 24, 41, and 42 (*id.* at 19-23); (5) produce documents related to internet advertising and analytics in response to RFP Nos. 36 and 37 (*id.* at 23-26); and (6) provide complete answers to Interrogatory Nos. 14 and 17 (*id.* at 26-28).   In their supplemental brief, Plaintiffs also ask the Court to compel Defendants to: search and produce relevant documents from Defendants' "Sharepoint" system (*Doc. 159* at 8-9); search and produce relevant e-mails from Defendants' backup media (*id.* at 9); and provide complete answers to Interrogatory Nos. 38, 39, 40, and RFP No. 48 (*id.* at 14-15).   In addition, Plaintiffs ask the Court to award them the attorneys' fees and costs incurred in making this motion, and to allow them to conduct additional depositions of experts and fact witnesses, if necessary

after Plaintiffs review the documents produced pursuant to Plaintiffs' motion to compel. [*Doc. 133* at 29-30].

### 1.   Documents Stored on Defendants' Shared Computer Drive and "Sharepoint" System

Plaintiffs contend that Defendants have failed to locate and produce documents stored on their shared computer drive.   [*Doc. 133* at 7-11].   Plaintiffs state that, on June 23, 2014, Defendants notified Plaintiffs that they recently learned of a company-wide shared drive with approximately 34.5 terabytes of data, and that a keyword search of the drive would be unduly burdensome because the drive is not indexed, so the 15 million files in the drive would have to be searched one at a time.   *Id.* at 7.   Plaintiffs stated that Defendants told them that Plaintiffs would have to pay the costs for a search of the drive for responsive documents if they wished to do so. *Id*. at 8.   Plaintiffs contend that Defendants should not be excused from producing responsive documents from the shared drive just because it is massive and unindexed, and that Defendants should bear the cost of production of documents from this drive.   *Id.* at 8-9.   Plaintiffs suggest that Defendants could use "an early case assessment platform to index the information, which if enough servers are utilized would take only 24 hours for groups of data to index, and allow the shared drive to be easily searched using keywords."   *Id.* at 9.   Finally, Plaintiffs contend that a search of produced documents shows references to other responsive documents stored on the shared drive, so a keyword search of the underlying documents in the folders is necessary.   *Id.* at 10-11.

In response, Defendants state that they should not be required to search and produce documents from the shared drive because that drive is unlikely to contain information that has not already been produced to Plaintiffs.   [*Doc. 166* at 6].   Defendants state that, based on test searches conducted on a representative folder containing over 360,000 files, Defendants estimate

that it would take between six months to two years to search the entire drive using Plaintiffs' proposed protocol.   *Id.* at 9.   Defendants state that they provided Plaintiffs with a listing of over 50,000 pages of the shared drive folders in order to conduct searches of the folder titles, and agreed to interview seven additional custodians to determine whether relevant documents were likely stored there.   *Id.*   Defendants contend that Plaintiffs have failed to show that relevant documents exist in the shared drive that have not already been produced.   *Id.* at 11-12.   Finally, Defendants contend that, if the Court orders production of documents from the shared drive, Plaintiffs should bear the cost of searching the drive.   *Id.* at 12-13.

In reply, Plaintiffs contend that it appears that the parties agree that the shared drive should be narrowed in order to be searched, but the parties dispute who should pay to do this.   [*Doc. 176* at 6].   Plaintiffs maintain that it appears from the titles of the folders in the shared drive that the drive contains relevant documents.   *Id.*   Plaintiffs contend that documents referenced by hyperlinks in produced e-mails are in the shared drive and have not been produced.   *Id.* at 7-8.   In order to narrow the search of the shared drive, Plaintiffs ask the Court to "order Defendants to interview custodians, collect relevant files from the custodians on the shared drive and run a search for the parties' agreed-upon keywords on those files."   *Id.* at 9.   In addition, Plaintiffs ask the Court to order Defendants to produce relevant documents from the 457 folders in the shared drive titled "Navajo."   *Id.*

Fed. R. Civ. P. 26(a)(1)(A)(ii) provides that a party must provide a copy or description by category and location of all documents, electronically stored information (hereinafter "ESI"), and tangible things that the party has in its possession, custody, or control and may use to support its claims or defenses.   Plaintiffs' discovery requests ask for the production of ESI in its original native format with its accompanying metadata, and ask for the production of all responsive

documents in Defendants' possession, custody or control, or in the possession, custody or control of Defendants' employees and other related entities.   *See, e.g.,* [*Doc. 133-1* at 8, ¶¶ 8 and 9].   The Court finds that Defendants' notification to Plaintiffs of the existence of the shared drive on June 23, 2014 (*see Doc. 134-4* at 2, letter from counsel for Defendants stating that "Defendants have recently identified a company-wide shared drive that ***may*** contain additional responsive ESI documents"), which was more than two years after litigation in this case commenced, constitutes a failure to comply with Defendants' initial disclosure obligations under Rule 26(a)(1)(A)(ii). Moreover, Defendants failed to adequately respond to Plaintiffs' discovery requests because they did not identify this database and search it in a reasonable and timely manner.   The Court finds that Defendants' assertion that they do not have to search this database for responsive documents merely because the database is large and unindexed is without merit because Defendants have had sufficient time to discover this database and work out a solution with Plaintiffs regarding how to best organize and search the documents in it.   Defendants' reliance on the parties' protective order for their assertion that they do not have to search the database (*see Doc. 134-4* at 2 and *Doc. 166* at 8, citing *Doc. 101* at 4) is also without merit.   In the parties' protective order, they agreed to search central repositories, including central databases, to the extent the parties reasonably anticipate they contain non-duplicative responsive documents.   *See* [*Doc. 101* at 4].   Defendants agree that the shared drive may have additional responsive documents (*see Doc. 134-4* at 2, stating that the shared drive ***may*** have additional responsive ESI documents), and Plaintiffs have made a showing that Defendants' employees saved responsive documents to the shared drive (*see Doc. 135-1* at 3, *Doc. 135-2* at 2, *Doc. 135-3* at 2, *Doc. 135-4* at 2 - e-mails referencing documents stored on shared drive; and *Doc. 158-1* at 5-6 - deposition testimony regarding the use of the

shared drive).   Therefore, the Court finds that the shared drive should be searched in a reasonable manner for responsive documents.

Having determined that the shared drive should be searched for responsive documents, the Court acknowledges Defendants' assertion that the shared drive is too large to search in its entirety using every search term the parties have agreed upon for other searches of ESI.   *See* [*Doc. 166* at 6 and 9].   However, this is no longer what Plaintiffs are asking for, and Plaintiffs have suggested other ways to search the shared drive.   *See* [*Doc. 159* at 8] (Plaintiffs' supplemental brief clarifying that they are asking Defendants to collect relevant files on the shared drive identified by the custodians and run search terms on those files) and [*Doc. 176* at 9] (Plaintiffs' reply brief stating that they are asking Defendants to interview the custodians, collect relevant files from shared drive based on these interviews, and run a search for the parties' agreed-upon keywords on those files, and to search the 457 folders titled "Navajo" for relevant documents). The Court notes that Plaintiffs proposed a similar approach for searching the shared drive in a letter sent to counsel for Defendants on June 24, 2014.   *See* [*Doc. 134-7* at 3] (suggesting that Defendants interview the custodians and other key personnel to ascertain where files and folders exist on the shared network that may have responsive documents, and to search those files and folders).   The Court finds that Plaintiffs' suggestion of how to narrow the portions of the shared drive that should be searched is reasonable, especially since Defendants state in their response brief that they agree to interview seven additional custodians and to conduct more targeted searches of the shared drive regarding relevant documents.   [*Doc. 166* at 9].   Defendants cite to no cases that preclude a limited search of a large database when a showing has been made that the database likely contains relevant documents.   However, Defendants have made a reasonable showing that a search of multiple folders in the shared drive would be unduly burdensome.   *See*

[*Doc. 166* at 9] and [*Doc. 166-4* at 2] (affidavit of Christopher A. Silver explaining that a search of one folder containing 360,000 files took eight business days).   Therefore, the Court will order a limited search of the shared drive as follows: Defendants shall interview the custodians (all current custodians, and the additional seven custodians as set forth below) to obtain a list of relevant folders and files on the shared drive, and Plaintiffs shall provide a list of five (5) keywords to Defendants to search for in those folders and files only.   While it appears reasonable that Defendants should search the 457 folders titled "Navajo" for relevant documents, since that is the key term at issue in this case, the Court notes that such a search might be unduly burdensome given the number of days it took to search one folder containing 360,000 files.   The Court does not know how many files are in the "Navajo" folders, and it may be significantly fewer than the 360,000 in the folder Defendants chose to run a test search.   The Court, therefore, will order Defendants to search only those files in the 457 "Navajo" folders that the custodians identify may contain responsive documents.   If the parties cannot agree to a reasonable amount of files in the "Navajo" folders, they may ask the Court to hold a hearing to try to work out a compromise.

Finally, the Court finds no reason to order Plaintiffs to pay for this search.   Defendants made this assertion based on their contention that they should not have to search the entire shared drive.   *See* [*Doc. 166* at 12-13].   However, the Court has ordered a much narrower search of the shared drive.   Moreover, the Court notes that Defendants' delay of more than two years to locate such a huge database, despite evidence that many of Defendants' employees were aware of and used the database, further indicates that this cost should be borne by Defendants.   Therefore, the Court will additionally order Defendants to pay for the search of the shared drive as set forth above.

Next, the Court finds that Plaintiffs' request that Defendants search the "Sharepoint" system, which Plaintiffs describe as a system that hosts intranet sites used to communicate with the retail stores (*see Doc. 159* at 8), be denied without prejudice.   This request was raised in Plaintiffs' supplemental brief in support of their motion to compel, instead of in a motion, which is not the proper method by which to ask the Court to provide relief.   *See* Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion.").   In addition, Plaintiffs fail to provide support for this request, including whether they asked Defendants if they searched the Sharepoint system. Defendants did not address this issue in their response to Plaintiffs' motion to compel, which is understandable since it is a new issue raised in a supplemental brief, not in a motion.   The Court, therefore, finds that this claim is not properly before the Court and the Court does not have sufficient information to rule on it, so the claim should be denied without prejudice.

### 2.   *Documents Related To Seven Additional Custodians, Deposition of Margaret Hayne, and Backup Media Search*

Next, Plaintiffs ask the Court to compel Defendants to produce documents related to seven additional custodians, and produce Margaret Hayne for a deposition.   [*Doc. 133* at 11-16]. Plaintiffs contend that, after reviewing Defendants' document production, they have identified numerous additional document custodians that are likely to possess non-duplicative, relevant documents.   *Id.* at 11.   Plaintiffs contend that they were unable to identify these custodians earlier because they were told that none of the Defendants possessed "org charts," but Defendants later produced extensive organizational charts, which led Plaintiffs to identify the additional custodians.   *Id.* at 12.   Plaintiffs present specific information regarding each proposed additional custodian, which they contend indicates the person likely has responsive documents.   *Id.* at 12-14.

In response, Defendants contend that it is unnecessary for Plaintiffs to obtain documents from an additional seven custodians because Plaintiffs have already obtained documents from

fourteen custodians, and have received a vast amount of information.   [*Doc. 166* at 14].
Defendants further contend that Plaintiffs have not demonstrated that the seven additional
custodians possess information that has not already been obtained, and that they are merely
speculating that these custodians may have additional relevant documents.  *Id.* at 14-15.

The Court finds that Plaintiffs have made a sufficient showing that Defendants should
collect and produce documents from the seven additional custodians.   Plaintiffs provided detailed
information regarding each of these proposed custodians showing their involvement in the issues
involved in this case.   *See* [*Doc. 133* at 12-14].   For example Plaintiffs demonstrate that
documents from Ms. Hayne and Mr. Hayne may show when the presidents and/or senior
merchants were alerted, and what steps they may have taken, regarding references to "Navajo" in
Defendants' websites and catalogs, and that documents from Ms. Brunner may show what advice
was given to Defendants' employees regarding how to advertise, name and label their goods with
respect to the use of the word "Navajo" and "Apache."  *Id.* at 12-13.   Defendants make no
showing that documents from these additional custodians have already been produced to Plaintiffs.
Defendants' opposition to Plaintiffs' request to add custodians because Plaintiffs have already
received a large number of documents is unpersuasive because it does not address whether these
additional custodians may provide additional responsive documents.   In addition, the Court finds
that expanding the number of custodians in this case from fourteen to twenty-one is reasonable
given the size of the companies and number of issues involved in this case.   The Court, therefore,
will grant Plaintiffs' motion to compel Defendants to produce documents related to the seven
additional custodians named in Plaintiffs' motion to compel at pages 12-14.

Next, Plaintiffs ask the Court to compel Defendants to produce Ms. Hayne for a deposition,
stating that she has unique knowledge of important facts and is a key witness for numerous issues

9

that are central to the case.   [*Doc. 133* at 16].   Specifically, Plaintiffs allege that Ms. Hayne, as President of Free People and a Director and Chief Creative Officer at Urban Outfitters, Inc., directs Free People's buyers in the selecting, developing and naming of products, and was notified of the lawsuit and tasked with removing "Navajo" from Defendants' websites.   [*Doc. 159* at 10] (citing *Doc. 158-5* at 3-5).

In response, Defendants contend that Plaintiffs should not be allowed to take the deposition of Ms. Hayne because she is a high-level executive and does not possess unique personal knowledge that cannot be obtained from other sources.   [*Doc. 166* at 21].   Defendants contend that Plaintiffs have failed to make a showing that Ms. Hayne has any personal knowledge about the decision and/or implementation to remove the word "Navajo" from Defendants' websites or catalogs.   *Id.* at 22.   Defendants attach an affidavit from Ms. Hayne in which she states under penalty of perjury that she "had *no involvement whatsoever* related to Urban Outfitters' decision and/or implementation of the decision to remove the word 'Navajo' from its website and/or catalogs," and that her only involvement related to removal of the word "Navajo" from the Free People website and/or catalog was her sending an e-mail dated March 2, 2012 advising employees of the pending litigation and directing them to remove the word.   [*Doc. 166-11* at 1-2].

In their reply, Plaintiffs contend that they should be allowed to depose Ms. Hayne regarding what she did to cause the word "Navajo" to be removed from Defendants' websites and catalogues because, in their responses to Interrogatory No. 29, Defendants identified "Ms. Hayne as the person who 'cause[d] to be removed reference to "Navajo" from their websites and catalogues.'"   [*Doc. 176* at 12] (citing *Doc. 136-3* at 3).   The Court finds that this request should be denied.   First, the Court notes that Defendants' responses to this interrogatory show only that "Defendants took immediate action . . . by alerting the presidents and/or senior merchants . . . and

requir[ed] them to cause to be removed reference to 'Navajo' from their websites and catalogues." [*Doc. 136-3* at 3].   Defendants supplemented the response by stating only that Ms. Hayne was one of the "presidents and/or senior merchants" referenced in the first response but never stated that she was the person who caused the removal of the word "Navajo."   *Id.*   Second, Ms. Hayne's deposition testimony, relied on by Plaintiffs regarding Ms. Hayne's involvement in the issues in this case, is not persuasive.   That testimony consists of statements that Ms. Hayne has a creative/fashion/merchandising background, had possible input on what items were going to show up on the Free People website, and that merchandise was "within [her] ambit" (*Doc. 158-5* at 3-5), which does not show that Ms. Hayne possesses a unique involvement in the relevant issues in this case.   Third, while Plaintiffs state that they wish to depose Ms. Hayne as to what she did to cause the word "Navajo" to be removed from Defendants' websites and catalogues, Plaintiffs have their answer to that question in Ms. Hayne's affidavit wherein she states that her only involvement was in sending the March 12, 2012 e-mail, of which Plaintiffs have a copy since they filed it with the Court at Document 136-4 at 2.   The Court, therefore, finds that this request should be denied.

Next, Plaintiffs ask the Court to compel Defendants to search their backup media for relevant e-mails of the custodians because Defendants did not make the custodians aware of the fact that they were custodians until 2014, and the IT manager did not turn off the custodians' auto-purge feature on their e-mail.   [*Doc. 159* at 9].   Plaintiffs contend that this means that the collection of documents, which occurred in 2014, did not include relevant e-mails that were auto purged in 2012.   *Id.*   In response, Defendants state that they have already searched for and produced e-mails from the custodians' archives.   [*Doc. 166* at 14].   Defendants refer to the affidavit of their IT Operations Manager of User Experience, Christopher A. Silver, who states that he oversaw a "search and collection of custodians' documents . . . includ[ing] items contained

within the custodians' archived email . . . includ[ing] items that the custodians previously deleted," and that, pursuant to the litigation hold, documents relevant to the subject matter of this litigation were segregated by the custodians and such e-mails would not have been purged or archived. [*Doc. 166-4* at 1 and 3-4].   In reply, Plaintiffs state that they are not seeking responsive documents from the custodians' archives but, rather, are seeking responsive documents from Defendants' backup media.   [*Doc. 176* at 3].   Plaintiffs explain that backup media includes all items available in the users' mailboxes at the point in time the backup was made, but archiving e-mails was done manually by the custodians and did not include any e-mails from the custodians' sent folders.   *Id.* at 3 n.1 and 3-4.   Plaintiffs state that they only received e-mails from the custodians' inboxes, not their sent e-mails.   *Id.* at 4.   The Court finds that this request should be denied without prejudice. Again, Plaintiffs' request is made in a supplemental brief, not in a motion and, therefore, is not properly before the Court.   *See* Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion.").   Furthermore, Plaintiffs fail to provide any support for their contention that the parties had agreed to produce documents from their backup media, or that Defendants had agreed to stop the auto-purge for the custodians in this case.   *See, e.g.,* [*Doc. 101* at 5] (stating that the parties agreed that automated disaster recovery backup systems or tapes may not be accessible). This request is, therefore, denied without prejudice.

### 3.   *Documents Responsive to RFP Nos. 7, 30, and 35*

Plaintiffs ask the Court to compel Defendants to produce documents related to marketing, advertising, and Defendants' websites in response to RFP Nos. 7, 30, and 35.   [*Doc. 133* at 16-19].   Plaintiffs contend that Defendants' responses to these RFPs are insufficient because it appears that Defendants have not produced documents from third parties from whom they purchased advertisements or marketing, advertising, or search engine optimization services.   *Id.*

at 17.   In Plaintiffs' supplemental brief, Plaintiffs ask the Court to compel Defendants to produce archived webpages or information from the webpages for all relevant websites.   [*Doc. 159* at 10].   Plaintiffs contend that Defendants have failed to produce the website product descriptions from the Free People website, or historical screenshots of webpages.   *Id.* at 10-11.

In response, Defendants state that they have produced all responsive documents to RFP Nos. 7, 30 and 35, to the extent those documents existed within Defendants' possession, custody, or control.   [*Doc. 166* at 18].   Defendants cite to affidavits from Jed Paulson, "Director of Direct & Marketing" for Free People, and Steve Hartman, Managing Director of Urban Outfitters Direct and Executive Director of Urban Outfitters Marketing, which state that both Free People and Urban Outfitters have searched for and produced all of the documents that were in the possession and control of Free People and Urban Outfitters as requested in these RFPs, and that they have produced responsive documents from third parties who maintain their websites.   *Id.* at 18, n.39 (citing *Doc. 166-6* at 1-3 and *Doc. 166-9* at 1-3).   Defendants explain that they do not maintain screenshots of their respective websites in the ordinary course of business, that they have produced any screenshots that may have been in their possession, custody, or control, and that they produced the underlying data that appeared on their websites to the extent that they could obtain that information, whether internally or from third parties.   [*Doc. 166* at 19].

In their reply, Plaintiffs do not address this request at all, nor do they address Defendants' response to these discovery requests.   *See* [*Doc. 176*].   It, therefore, appears that this request has been withdrawn.   If Plaintiffs have not withdrawn this request, the Court finds that Defendants' response that they have produced all relevant documents responsive to RFP Nos. 7, 30 and 35 is sufficient and Plaintiffs' request should be denied.

### 4. *Documents Responsive to RFP Nos. 22, 23, 24, 41, and 42*

Plaintiffs next ask the Court to compel Defendants to produce financial documents in response to RFP Nos. 22, 23, 24, 41, and 42.   [*Doc. 133* at 19-23].   Plaintiffs state that Defendants produced several spreadsheets as responses to Interrogatory Nos. 6 and 16 asking for information related to goods sold with the "Navajo" mark and with the terms "Indian," "Native American," or the name of defined "Indian Tribes."   *Id.* at 19.   Plaintiffs state that they are now seeking the underlying records relating to the information provided in the spreadsheets.   *Id.* at 20. Plaintiffs state that the underlying financial documents are relevant because they will provide Plaintiffs with information to make their own assessment of damages and of Defendants' profits. *Id.*   Plaintiffs state that they have already found that the price per unit and cost data on Defendants' spreadsheets do not agree with that information from some of the purchase orders produced in response to other document requests.   *Id.*   Plaintiffs further state that the underlying data related to Defendants' sales records will include specific sales dates of infringing items, which could show that Defendants continued to sell goods using Plaintiffs' trademark after receipt of Plaintiffs' cease and desist letter and the filing of this lawsuit.   *Id.* at 21.   Therefore, Plaintiffs seek: (1) original documents and source data used in the preparation of the compiled spreadsheets; (2) all paid vendor invoices supporting the cost of sales; (3) detailed general ledger accounts and amounts supporting the categories reported in Urban Outfitters' Form 10K for fiscal years 2008 through 2014.   *Id.* at 22.   In their supplemental brief, Plaintiffs ask the Court to compel Defendants to produce responsive documents from the following systems: Island Pacific; the Merchandise Tracking System; the BlueCherry system; the ProClarity system; EDW system; and Micro-strategy system.   [*Doc. 159* at 12].

In response, Defendants state that this information either has already been produced or does not exist as kept in the ordinary course of business in the requested format.  [*Doc. 166* at 15-16].  Defendants state that their employees created the spreadsheets using voluminous data contained in their software systems and were only customized by counsel to include the specific information that Plaintiffs requested.  *Id.* at 16.  Defendants contend that the source documents Plaintiffs have requested are not maintained in the ordinary course of business, and that Defendants had to generate reports using software databases that pulled and summarized voluminous source data.  *Id.*  Therefore, Defendants contend that there are no source documents that can be printed or provided to Plaintiffs and that no other sources remain to be searched.  *Id.* Defendants further state that they do not maintain individual sales records and that their software does not permit them to generate such detailed reports.  *Id.*  Defendants state that all relevant purchase orders have been produced, but the requested vendor invoices are not maintained in the ordinary course of Defendants' business, and that any information in those invoices has already been produced in purchase orders or other financial information.  *Id.* at 16-17.

In reply, Plaintiffs ask for the underlying data either directly from Defendants' databases or in a reasonably usable form.  [*Doc. 176* at 12].  Plaintiffs state that the information exists and should be produced to them in the reports that were used by Defendants to create the spreadsheets. *Id.* at 13.  Plaintiffs contend that the summaries provided by Defendants are not acceptable replacements for the requested data because they were customized by Defense counsel and left out important information, for example, sales data per month.  *Id.*  Therefore, Plaintiffs ask the Court to compel Defendants to produce all responsive information stored in any medium from which the information can be obtained or translated by Defendants into a usable form, including the reports generated and used to create Defendants' spreadsheet Exhibits.  *Id.* at 14.

Federal Rule of Civil Procedure 34 provides that a party may request data or data compilations that are stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form.  The Court finds that Plaintiffs' request for the underlying reports that were used to create the spreadsheets that were produced to Plaintiffs in response to these document requests is reasonable. Defendants have made an adequate showing that the source data, or original documents, such as receipts, are not kept in their ordinary course of business and cannot be independently accessed except through reports that summarize such data.  *See, e.g.,* [*Doc. 166-5* at 1-3] (affidavit of Julie Rapp, Business Assistant, Assistant to the Director of Merchandising, and Production Assistant at Free People), and [*Doc. 166-7* at 1-3] (affidavit of Andrew W. Rotteveel, Director of E-commerce Operations for Urban Outfitters).   Nevertheless, Defendants admit that they have not produced the underlying reports that were used to create the spreadsheets, and the Court finds that it is reasonable for Plaintiffs to request that information in order to run their own analyses of the reports.   Therefore, the Court will grant this request in part, and will order Defendants to supplement their responses to RFP Nos. 22, 23, 24, 41 and 42 by producing the reports that were generated to create the spreadsheets produced to Plaintiffs in response to Interrogatory Nos. 6 and 16.

### 5.   Documents Responsive to RFP Nos. 36 and 37

Plaintiffs next contend that Defendants have failed to fully respond to RFP Nos. 36 and 37. [*Doc. 133* at 23-26].   Plaintiffs state that RFP No. 36 asks for documents related to Defendants' use of Plaintiffs' trademark in internet advertisements, including its use as a keyword for search engine advertising, and documents related to the resulting visits to Defendants' websites by internet users.   *Id.* at 23.   Plaintiffs contend Defendants produced no copies of internet

advertisements and only incomplete data from Defendants' online advertising accounts.   *Id.*
Plaintiffs state that Defendants also failed to fully respond to RFP No. 37, which asks for
"documents related to visits to Defendants' websites that occurred as a result of Defendants' use of
the trademark 'Navajo' as a keyword for search engine advertising or in an Internet
advertisement."   *Id.* at 23-24.   Plaintiffs contend that Defendants produced only a few limited,
non-responsive reports and documents that had already been created, instead of retrieving data and
documents available from their analytics programs.   *Id.* at 24.   Plaintiffs ask the Court to compel
Defendants to search their advertising and keyword accounts with Google, Yahoo!, and Microsoft
for all responsive documents, and to run reports from the account databases.   *Id.* at 25.   Plaintiffs
also ask for limited access to Defendants' Google accounts so that Plaintiffs' experts can view and
run the requested reports.   *Id.*   Plaintiffs ask for complete website analytics data from all
analytics packages or sources for each website from January 1, 2008 to the present, in response to
RFP No. 37.   *Id.* at 25-26.

In response, Defendants state that Plaintiffs' requests for documents pertaining to internet
advertising and analytics are overly broad and are not narrowly-tailored to relevant
documentation.   [*Doc 166* at 19].   Nevertheless, Defendants state that they have already
produced all of the requested information to the extent it exists in Defendants' possession, custody
or control, including relevant information from third parties when possible.   *Id.* at 20.

In reply, Plaintiffs state that they have narrowed their requests to the search term "Navajo,"
and only seek page views, unique visitors, time spent on pages, paths, entry pages, exit pages,
keywords, heat maps, conversion data, page value, sources or origination of visitors.   [*Doc. 176*
at 15].   Plaintiffs again ask the Court to order Defendants to give Plaintiffs a password for two
hours to all accounts that Defendants can access directly, so that Plaintiffs can log in from

Defendants' counsel's local office and run searches and print reports responsive to RFP Nos. 36 and 37, and that copies of all such reports would be provided to Defendants. *Id.* Plaintiffs also ask the Court to order Defendants to provide indirect reports or information from third parties who refuse to provide Defendants with direct access to the information. *Id.* at 16.

The Court finds that Plaintiffs' requests, as narrowed in their reply to the search term "Navajo," for page views, unique visitors, time spent on page, paths, entry pages, exit pages, keywords, heat maps, conversion data, page value, sources and origination of visitors, are reasonable. However, it appears that Defendants have already performed these requested searches and have provided all responsive documents from Defendants and from any third parties who were willing to provide Defendants with the information. *See, e.g.,* [*Doc. 166-6* at 3] (affidavit of Jed Paulson, stating that Free People performed several internal searches using analytics software, CoreMetrics and Google Analytics, and produced the results of those searches, conducted several online searches in their Google and Bing/Yahoo! accounts, and contacted all third parties with whom they had an agency or affiliate relationship and requested responsive information), and [*Doc. 166-9* at 3] (affidavit of Steve Hartman, same for Urban Outfitters). The Court finds that Defendants' response is sufficient, and that Plaintiffs have failed to make a showing for Defendants to provide them with passwords to allow them to do their own searches, such as a showing of bad faith or failure to undertake an adequate search. Therefore, the Court will deny Plaintiffs' motion to compel with regard to this request.

### 6.   *Interrogatory Nos. 14 and 17, 38, 39, 40, and RFP No. 48*

In Plaintiffs' motion to compel, Plaintiffs contend that Defendants did not provide complete answers to Interrogatory Nos. 14 and 17. [*Doc. 133* at 26-28]. Plaintiffs state that Defendants did not provide complete information regarding RFP No. 17, which asks for the names

and addresses of suppliers who provided Defendants with Indian-made goods, and the dates the goods were supplied, by failing to provide the names of the member of the Indian Tribe who supplied the items, or the addresses or dates. *Id.* at 26. Plaintiffs contend that Defendants have failed to respond at all to RFP No. 14, which asks for the years, amounts of goods, and names and addresses of each supplier who suggested goods were Indian-made. *Id.* at 27. Plaintiffs contend that Defendants' objection that they do not possess information enabling them to identify each supplier who suggested the supplied goods were Indian-made is non-responsive and evasive. *Id.* at 27-28; *see also* [*Doc. 133-5* at 5]. In their supplemental brief, Plaintiffs contend that Defendants have also failed to answer Interrogatory Nos. 38, 39 and 40, and RFP No. 48, and that Defendants have waived their objection that these interrogatories are compound because they responded to other interrogatories and RFPs without such an objection. [*Doc. 159* at 14-15].

Defendants failed to respond to this portion of Plaintiffs' motion to compel or supplemental brief, which constitutes grounds to grant the requests. *See* [*Doc. 166*]. The Court will grant Plaintiffs' motion to compel with regard to Interrogatory Nos. 14 and 17 and Defendants shall provide supplemental answers to these interrogatories. If Defendants do not have any responsive information, they should state so, and refrain from implying that the information exists and they are just unable to provide it, as they did in their original responses to these interrogatories. *See* [*Doc. 133-6* at 5]. With regard to Interrogatory Nos. 38, 39, 40, and RFP No. 48, however, Plaintiff again raised the issues relating to these requests in their supplemental brief, not in a motion, so these requests are not properly before the Court. The Court, therefore, will deny these requests without prejudice.

### 7.   *Attorneys' Fees and Additional Depositions*

Finally, Plaintiffs ask the Court to award them the attorneys' fees and costs incurred in making this motion, and to allow them to conduct additional depositions of experts and fact witnesses, if necessary, after Plaintiffs review the documents produced pursuant to Plaintiffs' motion to compel.   [*Doc. 133* at 29-30].   In their supplemental brief, Plaintiffs ask the Court for two additional depositions "in order to gather the evidence to prove their case."   [*Doc. 159* at 15]. The Court will deny Plaintiffs' request for attorneys' fees since Plaintiffs' requests were not all granted, and Plaintiffs have not shown that Defendants have acted in bad faith or abused the discovery process.   However, the Court cautions Defendants that, if they fail to provide ***complete*** supplemental discovery responses as ordered herein, the Court may be inclined to award attorneys' fees in any further motions to compel relating to these same issues.   The Court finds that Plaintiffs' request for additional depositions to address possible issues related to Defendants' supplemental production is premature since Plaintiffs do not yet know if any additional depositions will be required.   In addition, Plaintiffs fail to name the two people that they state in their supplemental brief they seek to depose.   *Id.*   If Plaintiffs find that they require additional depositions based on any information provided in Defendants' supplemental discovery relating to the Court's order, the Court encourages the parties to work together to arrange such depositions as necessary.   The Court cautions Defendants that, if Plaintiffs prevail on a motion to compel seeking additional depositions by clearly showing that the additional depositions are needed as a result of Defendants' failure to properly respond to Plaintiffs' discovery requests in the first place, the Court would be inclined to grant such a motion and would consider granting any request for attorneys' fees expended in submitting a motion to compel.

**IT IS THEREFORE ORDERED** that, for the reasons stated above, ***Plaintiffs' Motion and Memorandum to Compel and Request to Take Two Additional Depositions*** (Doc. 133), is **GRANTED in part**:

1.      Defendants shall interview the custodians (all current custodians, and the additional seven custodians as ordered herein) to obtain a list of relevant folders and files on Defendants' shared drive, and Plaintiffs shall provide Defendants with a list of five (5) keywords to search for only in those folders and files, **no later than ten (10) days after the entry of this Order**.

2.      Defendants shall produce supplemental documents from Defendants' shared drive, if any, from the narrowed list of folders and files, and using the five (5) keywords provided by Plaintiffs **no later than thirty (30) days after the entry of this Order**.   The search of the shared drive shall be done at Defendants' expense.

3.      Defendants shall produce responsive documents from the seven additional custodians named in Plaintiffs' motion to compel **no later than thirty (30) days after the entry of this Order**.

4.      Defendants shall supplement their responses to RFP Nos. 22, 23, 24, 41 and 42 by producing the reports that were generated to create the spreadsheets produced to Plaintiffs in response to Interrogatory Nos. 6 and 16, **no later than fifteen (15) days after the entry of this Order**.

5.      Defendants shall provide supplemental answers to Interrogatory Nos. 14 and 17 **no later than fifteen (15) days after the entry of this Order**.

All other relief requested by Plaintiffs in their motion to compel or supplemental brief is **DENIED** as set forth herein.

**IT IS SO ORDERED.**

_Lourdes A. Martínez_
**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**