**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

THE NAVAJO NATION, a sovereign Indian
Nation, et. al,

                                         Plaintiffs,

        v.

URBAN OUTFITTERS, INC., a Delaware
Corporation, et al.

                                         Defendants.

CIVIL ACTION NO:

 No. 1:12-cv-00195-KG-LAM

### DECLARATION OF PHILIP JOHNSON

        I, Philip Johnson, state as follows:

### BACKGROUND

        1.      Currently, I am the President of JJG Group, LLC, a company specializing in

litigation-related market research services. Until January 2014, I was the Chief Executive Officer

of Leo J. Shapiro and Associates, Inc., a market research and consulting firm that conducts

surveys.

        2.      Over more than 40 years, I have designed and supervised hundreds of surveys

measuring consumer behavior, opinion, and beliefs concerning brands and products, employing a

wide range of research techniques. I have given lectures before the American Bar Association

(ABA), the Practising Law Institute (PLI), the American Intellectual Property Law Association

(AIPLA), and the International Trademark Association (INTA) on the use of survey research in

litigation. I am a member of the American Marketing Association (AMA), the American

Association for Public Opinion Research (AAPOR), and the International Trademark

Association (INTA). I have a B.S. degree in Psychology from Loyola University and an M.B.A.

degree from the University of Chicago. A description of my background and a list of cases in

which I have offered survey evidence during the past four years are attached to the Appendix of this Report.

## INTRODUCTION

3.      During April 2014, I was contacted by counsel from the law firm, Keller Rohrback L.L.P., on behalf of its clients, the Navajo Nation, Diné Development Corporation, and Navajo Arts and Crafts Enterprise ("the Nation").

4.      Counsel informed me of a dispute regarding the unauthorized use of the Navajo trademark by Urban Outfitters, Inc., and its subsidiaries, entities, and brands (collectively "Urban Outfitters"). It is my understanding that since as early as November 2006[1] three brands of Urban Outfitters, Inc. (i.e., Urban Outfitters, Anthropologie, and Free People) promoted and sold goods bearing the unauthorized use of the Navajo trademark through their respective stores, websites, and catalogs.[2]

5.      I am the same Philip Johnson who designed and conducted a likelihood of confusion study that was submitted by the Nation in support of its case ("Johnson Survey").[3]

6.      Counsel for the Nation provided me with several documents that have recently been produced by Urban Outfitters in support of its motion to exclude my report and testimony in this matter, including:

- Defendants' Motion In Limine to Exclude Expert Testimony of Philip Johnson and Memorandum in Support (Filed: February 11, 2015)

---

[1] Defendants' Fifth Supplemental Objections and Responses to Plaintiffs' First Interrogatories to Each Defendant. Dated: May 30, 2014.

[2] Amended Complaint for Injunctive Relief and Damages. Dated: May 21, 2012.

[3] "The Navajo Nation, Diné Development Corporation, and Navajo Arts and Crafts Enterprise v. Urban Outfitters, Inc., Urban Outfitters Wholesale, Inc., Anthropologie, Inc., and Free People of PA, L.L.C.: A Likelihood of Confusion Study." October 13, 2014.

- Declaration of Edward Perdue in Support of Defendants' Motion In Limine to Report of Hal Poret (November 13, 2014) attached in Exhibit A-1 (Filed: February 11, 2015)

7.      Other documents that I have reviewed and relied upon in formulating my stated opinions include:

- Whirlpool Properties, Inc. et al. v. LG Electronics U.S.A., Inc. et al. Case No. 1:03-cv-414. Western District of Michigan. Decided: January 10, 2006. 2006 WL 62846.

- Diamond, Shari Seidman. "Reference Guide on Survey Research," Reference Manual on Scientific Evidence, Third Edition, Federal Judicial Center. 2011.

- Diamond, Shari Seidman and Swann, Jerre B., "Trademark and Deceptive Advertising Surveys: Law, Science, and Design," American Bar Association, Section of Intellectual Property Law. 2012.

8.      This Report summarizes some of my conclusions and observations regarding the issues and arguments raised by Urban Outfitters in its motion to exclude my report and testimony in this matter. I reserve the right to offer additional opinions in this matter in the event that other information or data becomes available to me.

9.      The work required to create this Report is covered by a billing of $5,000. Additional time required for trial testimony or deposition will be billed at a rate of $7,000 per day, plus expenses.

## DISCUSSION AND ANALYSIS

10.      The memorandum to exclude my report and testimony is rife with misstatements and incorrect assumptions that erroneously describe the methodology and results of the Johnson Survey.

**Memorandum Point:** *Johnson's testimony is inadmissible because: (1) the Johnson survey had a highly leading design.*

11.      The memorandum falsely states that the survey design was "highly leading." This is simply untrue. The survey design is absolutely appropriate for a matter in which the issue is

3

whether Defendants' unauthorized use of the Navajo trademark is a fair use, i.e., the primary significance of the term must be descriptive rather than source identifying to be a fair use. In addition, the design also provides a precise measure of likelihood of confusion, that is, if the use does in fact identify a source, then what source is that. This design, and similar ones used when the survey inquiry focused on the primary significance of a term (e.g., secondary meaning, genericness surveys), are well accepted by the courts.

**Memorandum Point:** *Johnson's testimony is inadmissible because: (2) the Johnson survey used an improper control term.*

12.     Again, this memorandum point is another false statement. Contrary to what the memorandum asserts, the Johnson Survey control term was not improper. It was designed to function as a correct control by substituting "Navajo" with the term "Geometric," a descriptive term denoting the appearance and design of a product. In point of fact, the survey results also bear out that it was a proper and correct control that fulfilled its function of measuring "noise, guessing, or error" with 4% in the control cell reporting the false belief that the product they were shown comes from an Indian or Native American source based on the geometric designs used on the Defendants' products.

**Memorandum Point:** *Johnson's testimony is inadmissible because: (3) the Johnson survey substantially alters the survey design he used in Whirlpool significantly reducing its reliability.*

13.     The memorandum falsely states that the Johnson Survey "substantially alters" the survey design used in the Whirlpool Properties, Inc. v. LG Electronics USA ("Whirlpool") case.[4] This is simply untrue. The Johnson Survey design does follow the methodology used in the Whirlpool case despite the Defendants' protestations. The primary difference is the deletion of a

---

[4] Whirlpool Properties, Inc. et al. v. LG Electronics U.S.A., Inc. et al. Case No. 1:03-cv-414. Western District of Michigan. Decided: January 10, 2006. 2006 WL 62846.

"warm-up" opportunity for respondents to volunteer a spontaneous comment when they first viewed an exhibit.

*Whirlpool Survey – Introductory Question*:

> *"Here is a picture of a washer that you might see if you were out in a store which sells home appliances. Please take a look at this as you would if you were actually out shopping for a new washer and saw this one. Feel free to comment on anything that strikes you about this, either positively or negatively. RECORD SPONTANEOUS COMMENTS."*

14. Although characterized by the defendants as a "question," this actually only presents a respondents with an opportunity to make any random comments they may have before being asked the key survey questions.

15. As is often the case, most respondents do not provide spontaneous comments such that results to this "warm-up" do not contribute to the measure of fair use or confusion. The rest of the survey design tracks with the Whirlpool design and is varied only to tailor it to the current situation, as is always the case when designing surveys.

**Memorandum Point:** *Johnson's testimony is inadmissible because: (4) the sample sizes of respondents used to survey Anthropologie and Free People is too small to provide reliable results.*

16. Unlike their own survey expert who completely ignored Anthropologie and Free People shoppers, the Johnson Survey included them to increase the representativeness of the sample to all shoppers who would have been exposed to Urban Outfitters' company-wide unauthorized use of the Navajo trademark. These respondents were properly included in the total for the Johnson Survey and provide a solid basis for, at the minimum, a qualitative observation that results do not differ among shoppers at the three separate channels of Urban Outfitters' trade (i.e., Urban Outfitters, Anthropologie, and Free People). On a quantitative basis this is also true but is subject to a higher statistical error rate (±12.4%) compared to the ±3.9% error rate for a statistic such as 20% based on a sample size of roughly 400 cases in the test or control cell.

**Memorandum Point:** *Johnson's survey and testimony should be excluded because the survey's highly leading and artificial design was far removed from real world market conditions. Expressly asking respondents what Navajo tells them about who makes the product is leading.*

17.     It is notable that Defendants' memorandum does not repeat the actual question that was posed in the Johnson Survey:

> *Navajo Initial Question:*
>
> *"What if anything, does the word < 'NAVAJO'/'GEOMETRIC'> on this page tell you about this product? PROBE: Anything else?"*

18.     The initial question is a properly constructed question that includes both a quasi-filter (i.e., "if anything") as well as a contextual reference (i.e. "on this page") in order to measure the primary significance of the term at issue. In her Reference Guide on Survey Research, Dr. Shari Diamond promotes the use of filter questions in order to reduce demand effects and discourage respondent guessing.

> *...the survey can use a quasi-filter question to reduce guessing by providing "don't know" or "no opinion" options as part of the question... By signaling to the respondent that it is appropriate not to have an opinion, the question reduces the demand for an answer and, as a result, the inclination to hazard a guess just to comply.*[5]

19.     Moreover, this question was asked within the context of Defendants' unauthorized use of the Navajo trademark. It may be considered leading or suggestive if in the course of the survey, the survey researcher takes it upon himself to introduce a brand name to the survey respondents (as was criticized in the PRL matter). However, in this case, the researcher, Mr. Johnson, did not introduce the term "Navajo" to the web pages that were shown in the survey, the Defendants did.

---

[5] Diamond, Shari Seidman. "Reference Guide on Survey Research," Reference Manual on Scientific Evidence, Third Edition, Federal Judicial Center, pages 390-391. 2011.

20.     Further, the construction of the initial question tracks with the question used in the

Whirlpool case:

*Whirlpool Survey – Initial Question:*

*"Now, looking at this picture of just the side of the control panel, if you were in a store shopping for an appliance and you saw this washer with the words, 'Whisper Quiet' on it, would this tell you anything at all about the washer?" "IF 'YES,' ASK: What would it tell you about this washer? PROBE: Anything else?"*

*Navajo Survey – Initial Question:*

*"What if anything, does the word <'NAVAJO'/'GEOMETRIC'> on this page tell you about this product? PROBE: Anything else?"*

21.     Defendants also misstate the follow-up question in their memorandum. The actual

question asked in the Johnson Survey is:

*Navajo Survey – Follow-Up Question:*

*"And, what, if anything, does the word <'NAVAJO'/' GEOMETRIC'> tell you about who made or created this product? PROBE: Anything else?"*

22.     This is a properly constructed, quasi-filter question allowing for "don't know" or

"nothing" responses. It is necessary to ask such a clarifying question to determine the primary

significance of the term at issue and to identify whether there is a designation of source or origin

being conveyed in the context of Defendants' usage.

23.     Again, this inquiry tracks with the parallel source inquiry found in Whirlpool that

inquired about whether a product using the words "Whisper Quiet" comes from "one company

only" or "more than one company:"

*Whirlpool Survey – Follow-Up Question:*

*"Do you believe that a washer that uses these words, 'Whisper Quiet,' comes from, is associated with, or is put out by...(ROTATE ORDER READ BETWEEN RESPONDENTS)?*

*( ) ONE COMPANY ONLY?*
*       OR*
*( ) MORE THAN ONE COMPANY?*
*IF SPONTANEOUS: ( ) DON'T KNOW"*

*"IF 'ONE COMPANY ONLY/MORE THAN ONE COMPANY,' ASK: Which company/companies are you thinking of?"*

24.     While appropriate in the Whirlpool case, this inquiry about single, even if anonymous, source needed to be modified in the current matter. This was accomplished by substituting an "open-ended" question to permit respondents to state their own belief as to whether any source identification occurred as well as with whom or specifically what source. A measure of anonymous source or "one company" would not have been adequate in this case.

25.     The Johnson Survey does, in fact, follow the Whirlpool survey design but was necessarily modified to be appropriate to this particular situation. Such modification is routine and customary when designing any survey, whether used for litigation or commercial purposes. Survey designs are not "cook book" recipes. They have to be modified to reflect a particular fact situation so that you don't end up with "a square peg into a round hole" scenario akin to Defendants' blind assertion that you must use a traditional Eveready survey design in this matter.

**Memorandum Point:** *Expressly pointing to the term Navajo does not simulate realistic marketplace conditions.*

26.     While pointing to the term at issue is not generally done in typical "Eveready" likelihood of confusion cases, it is commonly done in other trademark surveys that measure fair use, secondary meaning, genericncess, and false advertising. In their book, Trademark and

Deceptive Advertising Surveys, Dr. Shari Diamond and Jerre Swann provide the following guidance with regard to assessing primary significance:

> *This requires (a) a technique to isolate the mark at issue and (b) an appropriate question or series of questions.*
>
> *Because the issue is whether or not a claimed trademark is associated with the plaintiff's product, a survey should focus respondents' attention on the trademark.*[6]

27.     Moreover, even Eveready type surveys that have been submitted to the Trademark Trial and Appeal Board to demonstrate either a likelihood of confusion or an absence of confusion, isolate and ask only about the term at issue in the broad context of use, generally the word mark by itself on a single page or card, without any contextual information related to the Defendants' website, trade dress, secondary brands, or other information.

**Memorandum Point:** *Showing to survey respondents a mock-up of a webpage that omits key context does not mimic what prospective customers actually experience when shopping online.*

28.     These characterizations from the memorandum are completely unfounded. The Johnson Survey exhibits were complete and accurate copies of web pages that were captured at the time they were running. Nothing was redacted from these web pages. In fact, an effort was made to add information wherever it was available.

29.     Moreover, the exhibits used by the Defendants' expert were either identical to the Johnson Survey exhibits or, in at least one instance, contained less information than the Johnson Survey exhibits. The Johnson Survey exhibits and the corresponding Poret Survey web pages are shown below:

---

[6] Diamond, Shari Seidman and Swann, Jerre B., *"Trademark and Deceptive Advertising Surveys: Law, Science, and Design,"* American Bar Association, Section of Intellectual Property Law, page 83. 2012.

Johnson Jewelry Exhibit

 

Poret Jewelry & Website Exhibit



Johnson Clothing Exhibit

Poret Women's Clothing & Website Exhibit

 

Johnson Accessories Exhibit

Poret Gloves & Website Exhibit

 

**Memorandum Point:** *The Johnson Survey's use of the control term Geometric is another fatal flaw because it is ineffective to control for the artificial and leading impact of focusing respondents on the term Navajo.*

30.     Again, this criticism is simply erroneous. The term "geometric" functions exactly as a good control term should by capturing the broad meaning of a descriptive term that could be used to describe a pattern or style of goods like those being sold by the Defendants.

31.     A control group is typically exposed to a stimulus which shares essential elements of the test stimulus, but does not share the characteristic that is at issue:

> *In designing a survey-experiment, the expert should select a stimulus for the control group that shares as many characteristics with the experimental stimulus as possible, with the key exception of the characteristic whose influence is being assessed....the choice of an appropriate control group requires some care and should influence the weight that the survey receives.*[7]

32.     The Webster dictionary defines "geometric" as:

> *(Art) characterized by simple geometric forms in design and decoration; as, a buffalo hide painted with red and black geometrical designs*[8]

In short, "geometric" captures the meaning of a descriptive term used for such goods without using the term at issue (Navajo).

33.     In point of fact, the survey results also bear out that it was a proper and correct control that fulfilled its function of measuring "noise, guessing, or error" with 4% in the control cell reporting the false belief that the product they were shown comes from an Indian or Native American source based on the geometric designs used on the Defendants' products.

34.     This measure of "noise" or error takes into account the form of question being asked, the structure of the questions, guessing, the design and appearance of the goods being sold as well as any other form of error in the survey or its design and methodology. By using this

---

[7] Diamond, Shari Seidman. "Reference Guide on Survey Research," *Reference Manual on Scientific Evidence, Third Edition,* Federal Judicial Center, page 399. 2011.

[8] http://www.webster-dictionary.org

result to adjust the proportion of total confusion, one is able to isolate the effect of the use of the term Navajo by the Defendants, in the exact context they used it, so that a highly accurate adjusted rate of confusion is obtained.

35.     It is also noteworthy that while the Johnson Survey used a proper control group and control term, the Defendants' survey included no such control group or control term.

## CONCLUSIONS

36.     Overall, the Johnson Survey was appropriately designed and conducted, used a correct methodology employing proper survey questions.

37.     The Johnson Survey also used well accepted survey protocols, included a proper control group utilizing a correct control term, and exposed respondents to accurate copies of actual web pages depicting Defendants' actual unauthorized use of the Navajo trademark.

38.     The results of the Johnson Survey are highly reliable and probative as a measure of the likelihood of confusion that results from Defendants' unauthorized use of the Navajo trademark on their goods.

39.     For all the above set forth reasons, this survey and Mr. Johnson's testimony should be put before the trier of fact in this dispute.

Pursuant to 28 U.S.C., Section 1746, I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on April 3, 2015 in Friday Harbor, Washington.


_Philip Johnson_____

Philip Johnson

## **<u>APPENDIX</u>**

- Philip Johnson Curriculum Vitae

- Recent Cases In Which Philip Johnson Has Testified



# JJG Group LLC

## Litigation Research Services

**PHILIP JOHNSON**

**CURRICULUM VITAE**

Philip Johnson is the President of JJG Group, LLC, a company specializing in litigation-related market research services.  Until January 2014, Mr. Johnson was the Chief Executive Officer of Leo J. Shapiro and Associates, Inc., a market research and consulting firm that conducts surveys.

Mr. Johnson has designed and supervised hundreds of surveys measuring consumer behavior and opinion, employing a wide range of research techniques.  His area of expertise is in the use of survey research as a tool in litigation, including jury selection and trademark disputes.

Mr. Johnson has offered testimony regarding survey evidence on over eighty occasions in both Federal and State courts.  In addition, he has offered survey research in matters before the Federal Trade Commission, The Food and Drug Administration, the Patent and Trademark Office, and the Trademark Trial and Appeal Board.  Mr. Johnson has designed, conducted, and reported survey evidence on behalf of both plaintiffs and defendants in various cases.  The topics covered in these litigation related surveys include matters related to likelihood of confusion, secondary meaning, genericness, dilution, false advertising, change of venue, and unfair competition.

Part of Mr. Johnson's training has been through working with Dr. Leo J. Shapiro, the Founder of Leo J. Shapiro & Associates, L.L.C.; the late Dr. Philip M. Hauser, a former Director of the U. S. Census

Bureau; and the late Dr. Hans Zeisel, who made significant contributions in the application of social science to the solution of legal questions.

Mr. Johnson has given lectures before the American Bar Association (ABA) and the Practising Law Institute (PLI) on the use of survey research in litigation.  He is a member of the American Marketing Association (AMA), the American Association for Public Opinion Research (AAPOR), and the International Trademark Association (INTA).

Mr. Johnson has a B.S. degree in Psychology from Loyola University and an M.B.A. degree from the University of Chicago.



# JJG Group LLC

## Litigation Research Services

**RECENT CASES IN WHICH PHILIP JOHNSON HAS
TESTIFIED OR OFFERED SURVEY EVIDENCE AT TRIAL...**


SEPTEMBER 2014 PODS ENTERPRISES, INC. v. U-HAUL INTERNATIONAL, INC.
United States District Court for the
Middle District of Florida (Tampa Division)
  Likelihood of Confusion

JULY 2014 BALANCE BAR COMPANY v. GFA BRANDS, INC.
United States Patent and Trademark Office Before the
Trademark Trial and Appeal Board
  Likelihood of Confusion

NOVEMBER 2013 GLOBEFILL INCORPORATED v. ELEMENTS SPIRITS
INCORPORATED AND KIM BRANDI
United States District Court for the
Central District of California
  Likelihood of Confusion

NOVEMBER 2013 MCDONALD'S CORPORATION v. MCSWEET, LLC
United States Patent and Trademark Office Before the
Trademark Trial and Appeal Board

SEPTEMBER 2013 SHEETZ OF DELAWARE, INC. v. DOCTOR'S ASSOCIATES, INC.
United States Patent and Trademark Office Before the
Trademark Trial and Appeal Board
  Genericness

JUNE 2013 KRAFT FOODS GROUP BRANDS LLC v. CRACKER BARREL OLD
COUNTRY STORE, INC., CBOCS PROPERTIES, INC., AND JOHN
DOES 1-10
United States District Court for the
Northern District of Illinois (Eastern Division)
  Likelihood of Confusion

APRIL 2013 PROMARK BRANDS INC. v. GFA BRANDS, INC.
United States Patent and Trademark Office Before the
Trademark Trial and Appeal Board
  Likelihood of Confusion

DECEMBER 2012 MOBILEMEDIA IDEAS LLC v. APPLE INC.
United States District Court for the
District of Delaware
  Patent Infringement

OCTOBER 2012          MIXED CHICKS LLC v. SALLY BEAUTY SUPPLY LLC
                      United States District Court for the
                      Central District of California
                               Likelihood of Confusion


**DEPOSITION TESTIMONY OF PHILIP JOHNSON
THAT HAS NOT BEEN OFFERED AT TRIAL...**


FEBRUARY 2015         LUXCO, INC. v. CONSEJO REGULADOR DEL TEQUILA, A.C.
                      United States Patent and Trademark Office Before the
                      Trademark Trial and Appeal Board

SEPTEMBER 2014        ORALABS, INC. v. THE KIND GROUP LLC
                      United States District Court for the
                      District of Colorado

AUGUST 2014           INDACON, INC. v. FACEBOOK, INC.
                      United States District Court for the
                      Western District of Texas (San Antonio Division)

MAY 2014              DISH NETWORK L.L.C. v. FUN DISH, INC., FUN DISH OF FLORIDA,
                      INC., AND DISH 1 UP SATELLITE, INC.
                      United States District Court for the
                      Northern District of Ohio (Eastern Division)

OCTOBER 2013          JEFFREY SORENSEN v. WD-40 COMPANY
                      United States District Court for the
                      Northern District of Illinois (Western Division)

SEPTEMBER 2013        JACKSON FAMILY WINES, INC. AND LC TM HOLDINGS, LLC v.
                      DIAGEO NORTH AMERICA, INC. AND DIAGEO CHATEAU &
                      ESTATE WINES CO.
                      United States District Court for the
                      Northern District of California

SEPTEMBER 2013        REMBRANDT SOCIAL MEDIA, LP v. FACEBOOK, INC. AND
                      ADDTHIS, INC.
                      United States District Court for the
                      Eastern District of Virginia (Alexandria Division)

AUGUST 2013           MOBILEMEDIA IDEAS LLC v. RESEARCH IN MOTION LIMITED AND
                      RESEARCH IN MOTION CORPORATION
                      United States District Court for the
                      Eastern District of Texas (Marshall Division)

MARCH 2013            FAGE USA DAIRY INDUSTRY, INC., ET AL. v. GENERAL MILLS,
                      INC., ET AL.
                      United States District Court for the
                      Northern District of New York

| | |
|---|---|
| MARCH 2013 | GENERAL MILLS, INC. ET AL. v. FAGE USA DAIRY INDUSTRY, INC. ET AL.<br>United States District Court for the<br>District of Minnesota |
| FEBRUARY 2013 | SEXY HAIR CONCEPTS, LLC v. CONAIR CORPORATION<br>United States District Court for the<br>Central District of California |
| NOVEMBER 2012 | LUV N' CARE, LTD. AND ADMAR INTERNATIONAL, INC. v. MAYBORN USA, INC.<br>United States District Court for the<br>Southern District of New York |
| NOVEMBER 2012 | LUV N' CARE, LTD. v. JACKEL INTERNATIONAL LIMITED<br>Fourth Judicial District Court for the<br>State of Louisiana |
| OCTOBER 2012 | EMERSON ELECTRIC CO. v. ANAHEIM MANUFACTURING CO.<br>United States International Trade Commission<br>Washington, D.C. |
| OCTOBER 2012 | FARM FLEET SUPPLIES, INC. v. BLAIN SUPPLY, INC.<br>United States Patent and Trademark Office Before the<br>Trademark Trial and Appeal Board |
| SEPTEMBER 2012 | THE REINALT-THOMAS CORPORATION d/b/a DISCOUNT TIRE v. AKH COMPANY, INC.<br>United States District Court for the<br>District of Arizona |
| APRIL 2012 | SEXY HAIR CONCEPTS, LLC v. CONAIR CORPORATION<br>United States District Court for the<br>Central District of California |
| JANUARY 2011 | TECHNOLOGY PATENTS LLC v. DEUTSCHE TELEKOM AG, ET AL.<br>United States District Court for the<br>District of Maryland |
| DECEMBER 2010 | BLAIN SUPPLY, INC. v. RUNNING SUPPLY, INC.<br>United States District Court for the<br>Western District of Wisconsin |
| DECEMBER 2010 | LUCENT TECHNOLOGIES, INC. v. MICROSOFT CORPORATION<br>United States District Court for the<br>Southern District of California |
| JULY 2010 | ROSETTA STONE LTD. v. TOPICS ENTERTAINMENT, INC.<br>United States District Court for the<br>Eastern District of Virginia |

4

| APRIL 2010 | LA QUINTA WORLDWIDE, LLC v. QUINTA REAL PROMOCION, S.A. de C.V.<br>United States District Court for the<br>District of Arizona (Tucson Division) |
|---|---|
| MARCH 2010 | THE NORTH FACE APPAREL CORPORATION v. THE SOUTH BUTT, LLC<br>United States District Court for the<br>Eastern District of Missouri (St. Louis) |
| MARCH 2010 | THINK VILLAGE-KIWI, LLC v. ADOBE SYSTEMS, INC. AND ADOBE MACROMEDIA SOFTWARE LLC<br>United States District Court for the<br>Northern District of California |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 7th day of April, 2015, I filed the foregoing

electronically through the CM/ECF system, which caused the following counsel to be served by

electronic means:

Scott R. Knapp
sknapp@dickinsonwright.com

Melissa A. Alcantara
malcantara@dickinsonwright.com

Alfred Green, Jr.
algreen@btblaw.com

Lindsay DeMoss
ldemoss@dickinsonwright.com

Samuel Littlepage
slittlepage@dickinsonwright.com

*/s/Mark A. Griffin*
Mark A. Griffin
Keller Rohrback L.L.P.

*Attorneys for the Navajo Nation*

21