IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

THE NAVAJO NATION, *et al.*,

    Plaintiffs,

vs.     Civ. No. 12-0195 BB/LAM

URBAN OUTFITTERS, INC., *et al.*,

    Defendants.

**MEMORANDUM OPINION AND ORDER DENYING
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [DOC. 145]**

    This matter came before the Court on the Motion of Plaintiffs, the Navajo Tribe, *et al.*, for a Partial Summary Judgment [Doc. 145]. Prior to considering Plaintiffs' Motion, the Court denied the Motion by Defendant Urban Outfitters, Inc. (UO) to file a sur-reply brief, together with exhibits. [Doc. 591]. The Court then fully considered all other submissions presented by the parties. For the reasons stated herein, the Court determines that Plaintiffs' Motion is contrary to established law and that an issue of fact exists. The Court, therefore, denies Plaintiffs' Motion.

    Plaintiffs' Motion alleges that UO's website offered two products described as "Navajo Feather Earrings" and "Navajo Bracelets" in violation of the Indian Arts and Crafts Act, 25 U.S.C. §305, *et seq*. ("IACA"). The purposes of the IACA are to (1) protect Indian artists from unfair competition from non-Indian goods sold as Indian made, and (2) protect consumers from unknowingly purchasing imitation Indian products. *Native American Arts, Inc. v. Bundy-Howard, Inc.*, 168 F. Supp.2d 905, 914 (N.D. Ill. 2001). The IACA creates a cause of action "against a person who, directly or indirectly, offers or displays for sale or sells a good, with or

without a Government trademark, in a manner that falsely suggests it is … the product of a particular … Indian tribe….” 25 U.S.C. § 305e(b).

Sections 305 through 305b of the IACA vest power in the Indian Arts and Crafts Board ("Board") to enforce much of the IACA.  Over the years, the Board has promulgated implementing regulations.  For example, in 1996, the Board promulgated 25 C.F.R. § 309.3(a), re-designated as § 309.24(a),[1] which provides *inter alia*:

> a. In general.  The unqualified use . . . of the name of an Indian tribe, in connection with an art or craft product, is interpreted to mean for purposes of this part that--
> (1) The maker is a member of an Indian tribe . . . or is a member of the particular Indian tribe named; and
> (2) The art or craft product is an Indian product.

Plaintiffs argue that in light of the prohibition against the "unqualified use" of an Indian tribe's name when describing an art or craft that is not of Indian origin, any such use, absent an express disclaimer, would result in a violation of the IACA.

Liability under the IACA, according to Plaintiffs, is reduced to whether a defendant has employed an express disclaimer such as "Navajo-like" or "Navajo inspired" when describing a non-Indian art or craft in the first instance.  Plaintiffs further posit that because the Court must defer to the Board's interpretation of the standard of proof as set forth in Section 309.24(a), the Court cannot consider non-express disclaimers or the context of the product's description which would demonstrate the marketing of the product did not falsely suggest Indian origin.

UO presents a multipronged response.

**A.  What Weight Should The Court Give Section 309.24(a)?**

UO maintains "25 C.F.R. § 309.24 Is Not Entitled to Any Deference."  Resp. Br. at 6 [Doc 165].  The Court cannot agree.

---

[1] *See* 61 Fed. Reg. 54,551-02 at 54,555 (Oct. 21, 1996); 68 Fed. Reg. 35164-0 at 35,170 (June 12, 2003).

2

UO states that the only Congressional basis for Plaintiffs' position that the Board has authority to regulate Indian goods is the 1935 version of the IACA. UO argues that Plaintiffs err when they extrapolate from the 1935 version of the IACA that the Board has the authority to promulgate regulations implementing the civil enforcement provisions passed by Congress in 1990. UO concludes, "Consequently, Congress's grant of express authority to the Board in the 1935 Act cannot be viewed as a delegation of authority to promulgate rules relating to a civil remedy that wasn't enacted until 1990 (55 years later)." Resp. Br. at 5 [Doc. 165]. UO, therefore, asserts that Section 309.24(a) is not entitled to deference.

*City of Arlington, Tex. v. F.C.C.,* 133 S. Ct. 1863 (2013) specifically forecloses the arguments UO raises against deference. The United States Supreme Court there recognized that a Congressional grant of general rulemaking authority in an early version of a statute extends to subsequent amendments of that statute. *Id.* at 1866. And, the United States Supreme Court interpreted *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), upon which UO relies, to require a court to defer to an agency's interpretation of a statutory ambiguity that concerns the scope of the agency's statutory authority, that is, its own jurisdiction. *Id.* at 1868. *See also In re FCC 11–161*, 753 F.3d 1015, 1041 (10th Cir. 2014) ("This court gives deference to the agency's interpretation so long as that interpretation is not arbitrary, capricious, or manifestly contrary to the statute."). The Court, thus, defers to Section 309.24(a).

### B. Section 309.24(a) Does Not Warrant Summary Judgment

Giving deference to Section 309.24(a), however, does not mandate a summary judgment in this case. Although Section 309.24(a) refers to "the <u>unqualified</u> use of the name of an Indian tribe," the regulations fail to define "unqualified." Emphasis added. UO maintains that its use of "Navajo" is indeed qualified because of the manner UO described and sold the earrings and

bracelets. UO also raises the defense that even though the labels of the earrings and bracelets contained the sole descriptor "Navajo," the labels did not confuse consumers nor were consumers under the mistaken belief that the products were Native American Indian products. In support of its position, UO relies on the following:

> the sheer volume of Defendant's sales, and that Defendant is a lifestyle retailer targeting customers of a certain age group (18-30) and urban lifestyle. These facts contextually "disclaim" Indian origin and make it clear that Defendant is a mass merchandising company that could not be confused by consumers as a dealer of goods made by Indian artisans. … Retailers often use tribal names such as "Navajo" as indicators of a fashion style or trend rather than as indicators of Indian origin.

Resp. Br. at 10 [Doc. 165]. Accordingly, UO argues that it did not violate the IACA.

Plaintiffs respond that "the plain meaning of Section 309.24(a) provides that a seller must include a qualifier—a disclaimer—when using the terms 'Indian,' 'Native American,' or the name of an Indian tribe to market a product that is not Indian made." Reply Br. at 11 [Doc 180]. Unfortunately, the Court cannot find this meaning to be so "plain."

Plaintiffs also incorrectly assert that the IACA does not permit a defense as UO contends. The IACA's requirement that advertising "falsely suggests" Indian origin is parallel to the Lanham Act requirement in 15 U.S.C § 1125. *Native American Arts, Inc. v. Village Originals, Inc.,* 25 F. Supp.2d 876, 881 (N.D. Ill. 1998). The central issue under the Lanham Act is whether a defendant's statement is likely to cause consumer confusion, and summary judgment is not appropriate when issues of fact exist as to the likelihood of consumer confusion. *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1238, 1242 (10th Cir. 2013); *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center*, 109 F.3d 275, 284-85 (6th Cir. 1997); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). Hence, similar to a Lanham Act case, if an issue of fact exists in an IACA case as to the likelihood of consumer confusion, summary judgment is, also, inappropriate.

Although Plaintiffs maintain that the IACA and Section 309.24(a) prescribe strict liability for any use of a tribal name relating to goods not produced by an Indian, they also submit exhibits demonstrating likely consumer confusion.  Motion for Partial Summary Judgment [Doc. 145], exs.11, 12; Declaration of Mark Griffin [Doc. 181], ex. 2.  Additionally, Plaintiffs challenge UO's statistical study alleging that minimal to no consumer confusion exists.  Reply Br. at 18 [Doc. 180].  This evidence raises an issue of fact as to consumer confusion and, thus, forecloses summary judgment.  Furthermore, the Court believes that prudence dictates such factual disputes be reserved for the completion of discovery and trial.  *See Turkmany v. Township of Wayne, N.J.,* 2008 WL 852188, at *2 (D. N.J.) (denying motions for summary judgment on basis of incomplete record notwithstanding absence of a motion under then-Fed. R. Civ. P. 56(f)); *Payne v. Equicredit Corp. of Am.,* 2002 WL 1018969, at *1 (E.D. Pa.), *aff'd on other grounds,* 71 Fed. Appx. 131 (3d Cir. 2003) (observing that district court retains discretion to deny summary judgment when there is "reason to believe that the better course would be to proceed to a full trial." (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986)).

For the above stated reasons the Plaintiffs' Motion for Partial Summary Judgment [Doc. 145] is **DENIED**.

IT IS SO ORDERED.

_____
SENIOR UNITED STATES DISTRICT JUDGE