IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

THE NAVAJO NATION, et al.,

       Plaintiffs,

vs.                                                                    Civ. No. 12-195 BB/LAM

URBAN OUTFITTERS, INC., et al.,

       Defendants.

MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT ON STANDING [DOC. 222] AND DENYING
PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT ON STANDING [DOC. 265]

This matter comes before the Court upon Defendants' Motion for Partial Summary

Judgment on Standing, filed on November 24, 2014, and Plaintiffs' Cross-Motion for Summary

Judgment on Standing, filed on December 24, 2014. [Docs. 222 and 265]. Urban Outfitters,

Inc.; Urban Outfitters Wholesale, Inc.; Anthropologie, Inc.; and Free People of PA LLC

(hereinafter, Defendants) seek summary judgment on the basis that Plaintiffs lack legal standing.

[Doc. 222]. Somewhat inexplicably, Plaintiffs also filed a Cross-Motion for Summary Judgment

on Standing [Doc. 265]. Having considered all submissions of all counsel, the Court (1) denies

Plaintiffs' Cross-Motion for Summary Judgment on Standing as superfluous and redundant; (2)

denies Defendants' Motion for Partial Summary Judgment on Standing; (3) concludes that at this

stage of the litigation, Plaintiffs have Article III standing to pursue their Indian Arts and Crafts

Act (the "IACA") claims; and (4) concludes that Plaintiffs have statutory standing for their

IACA claims, including those claims based on items Plaintiffs sell which include the names or

brands of other Indian tribes as well as generic references to "Indian" and "Native American."

**Background**

Plaintiffs in this case are three legal entities owned by, or comprised solely of, members of the Navajo Nation.  Plaintiffs assert that Defendants' use of the term "Navajo" to describe certain items of clothing and accessory items offered to the public for sale by Defendants violates the IACA, 25 U.S.C. § 305, *et seq*.  In addition, Plaintiffs seek damages under the IACA based on the Defendants' use of other tribal names like "Zuni," "Pueblo," and "Zia" as well as the more generic terms "Indian" and "Native American."

Congress enacted the IACA in 1935 to protect the cultural property of Native Americans. The original statute created the Indian Arts and Crafts Board (the "Board") within the Department of the Interior, and charged the Board with promoting and protecting Indian arts and crafts.  IACA, 74 Cong. Ch. 748, 49 Stat. 891 (1935).  The Board's principal task was to create trademarks to protect genuine Indian arts and crafts.  49 Stat. at 892.

In 1990, Congress amended the IACA to give Indian tribes a private cause of action against any person or entity who sells a product "in a manner that falsely suggests it is Indian produced, an Indian product, or the product of a particular Indian or Indian tribe or Indian arts and crafts organization, resident within the United States…."  25 U.S.C. § 305e(b), (d).  A 2000 amendment to the IACA authorized Indian arts and crafts organizations and individual Indians to bring that same cause of action.  *Id.* at § 305e(d).  Thus, in its current form, the IACA states that a civil action may be initiated by—

> (d)(1)(A) the Attorney General, at the request of the Secretary acting on behalf of---
> (i) an Indian tribe;
> (ii) an Indian; or
> (iii) an Indian arts and crafts organization;
> (B) an Indian tribe, acting on behalf of—
> (i) the Indian tribe;
> (ii) a member of that Indian tribe; or
> (iii) an Indian arts and crafts organization;

       (C) an Indian; or
       (D) an Indian arts and crafts organization.

*Id.*

The IACA further provides that the entities specified above may recover damages in the amount equal to the greater of:

       (A) treble damages; or
       (B) in the case of each aggrieved individual Indian, Indian tribe, or Indian arts and crafts organization, not less than $1,000 for each day on which the offer or display for sale or sale continues.

*Id.* at § 305e(b)(2).

## Issues

First, Defendants argue that Plaintiffs lack Article III standing as to all their claims under the IACA, because Plaintiffs cannot show any injury in fact (i.e., lost customers, reputational harm, or lower profit margins) traceable to Defendants.  Second, Defendants contend that even if Plaintiffs could satisfy Article III standing, they still lack statutory standing, because "Plaintiffs lack any commercial interest in the goods that Defendants sold using [non-Navajo] descriptions (because they do not sell competing goods), and lack a sufficient identity interest in the descriptions themselves."  Defendants' Reply Br. [Doc. 287] at 6.

While Plaintiffs maintain that "the IACA's focus on deterrence, prevention of future harm, and punishment … [proves] that [a]lready-suffered economic injury is simply not required, the injury-in fact requirement is met if a tribe alleges and supports 'a particularized imminent economic injury.'"  Plaintiffs' Response Br. [Doc. 258] at 1-2.  Here, Plaintiffs provide evidence of both lost sales and harm to their business reputation.  Plaintiffs also provide evidence that they sell (1) goods produced and marketed by Hopi, Zuni, Zia, and other Indian tribes, and (2) goods produced by "Indian" and "Native American" artisans.

**Discussion**

**A.  Plaintiffs' Cross-Motion for Summary Judgment on Standing**

Because Plaintiffs had ample opportunity to respond to Defendants' Motion for Summary Judgment on Standing, the Court fails to see why Plaintiffs felt compelled to file a Cross-Motion for Summary Judgment on Standing.  The Cross-Motion for Summary Judgment on Standing is, therefore, irrelevant, superfluous, and redundant.  Moreover, filing the Cross-Motion for Summary Judgment on Standing unnecessarily adds cost to this already expensive lawsuit and further burdens judicial resources.  For these reasons, the Court denies Plaintiffs' Cross-Motion for Summary Judgment on Standing.  *See United States v. Elliott*, 1996 WL 380482, *2 n.2 (9th Cir. 1996) (denying motion as irrelevant); *Scharp v. Legacy Health Sys.*, 2007 WL 756716, at *6 (D. Or. 2007) (denying motion as superfluous); *In re Nat'l Century Fin. Enterprises, Inc.*, 292 B.R. 850, 857 (Bankr. S.D. Ohio 2003) (denying motion as redundant).

**B.  Defendants' Motion for Partial Summary Judgment on Standing**

   **1.  Article III Standing**

      **a.  Standard of Review**

While Defendants move for summary judgment on the issue of Article III standing, the litigants had not completed discovery at the time Defendants filed their motion for summary judgment.  Consequently, it is difficult to evaluate fully the admissibility or quality of the evidence that Defendants and Plaintiffs have presented to support their respective positions on Defendants' motion for summary judgment on Article III standing.  The Court determines that without full discovery it is premature to analyze the Article III standing issue under a summary judgment standard of review.  *See Fair Hous. in Huntington Comm. Inc. v. Town of Huntington, N.Y.*, 316 F.3d 357, 361-62 (2nd Cir. 2003) (when not clear "how far discovery had proceeded, if

4

at all," appropriate standard in deciding standing issue is "motion to dismiss for lack of standing."); *State of Fla., Office of Atty. Gen., Dep't of Legal Affairs v. Tenet Healthcare Corp.*, 420 F.Supp.2d 1288, 1302 (S.D. Fla. 2005) (applied motion to dismiss standard to standing issue when discovery not complete).  Instead, the Court will use a Fed. R. Civ. P. 12(b)(1) motion to dismiss standard of review to address the Article III standing issue.  *See Harold H. Huggins Realty, Inc. v. FNC, Inc*., 634 F.3d 787, 795 n. 2 (5th Cir. 2011) (dismissal for lack Article III of standing should be granted under Rule 12(b)(1)).

When a defendant raises the issue of Article III standing in the context of a motion to dismiss, "general allegations of injury resulting from the defendant's conduct may suffice" to establish standing. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992).  Courts "presum[e] that general allegations embrace those specific facts that are necessary to support the claim."  *Id.* (citation omitted).  In other words, "when standing is challenged at the pleading stage of the litigation, the Court need not consider evidence but, rather, may evaluate only the allegations in" the complaint.  *Kal Kan Foods, Inc. v. Iams Co.*, 197 F.Supp.2d 1061, 1066 (S.D. Ohio 2002). "In addressing standing at the motion-to-dismiss stage of these proceedings, [the Court] must accept as true all material allegations of the complaint, and must construe the complaint in favor of the [plaintiffs, as] complaining part[ies]."  *Coll v. First Am. Title Ins. Co.,* 642 F.3d 876, 892 (10th Cir. 2011) (internal quotation marks and citation omitted).

### b.  Analysis

Article III of the United States Constitution grants federal courts jurisdiction to decide only actual cases and controversies brought by litigants with an interest in that controversy. *Warth v. Seldin,* 422 U.S. 490, 498 (1975); *Western Shoshone Business Council v. Babbitt* 1 F.3d

1052, 1055 (10th Cir.1993).  Any challenges to Article III standing should be judicially addressed as a threshold matter. *Warth*, 422 U.S. at 498.

To establish Article III standing, a plaintiff must demonstrate that (1) he has suffered an injury in fact; (2) his injuries are fairly traceable to the allegedly unlawful conduct; and (3) it is likely a favorable ruling would redress his injuries.  *See Lujan,* 504 U.S. at 560–61.  Injury to commercial reputation is sufficient to establish an injury in fact under Article III.  *Meese v. Keene*, 481 U.S. 465, 473-77 (1987).  A grant of competitive advantage also establishes an injury in fact under Article III.  *International Broth. of Teamsters v. United States Dept. of Transportation,* 724 F.3d 206, 211-12 (D.D.C. 2013).

Here, accepting the allegations of Plaintiffs' complaint as true and construing them in Plaintiffs' favor, it is clear Plaintiffs' pleadings support Article III standing and survive a Rule 12(b)(1) motion to dismiss.  *See Native American Arts, Inc. v. Bud K Worldwide, Inc.* 2011 WL 2692962, *2 (M.D. Ga. 2011) (Article III standing where allegation of "offering fake Indian goods for sale" resulted in lost sales and sales opportunities); *Native American Arts, Inc. v Contract Specialties, Inc.*, 754 F.Supp.2d 386, 390 (D.R.I. 2010) (Article III standing where allegation that sales and reputation were harmed by false advertising and sale of fake Indian goods); *Native American Arts, Inc. Mangalick Enterprises, Inc.*, 633 F.Supp.2d 591, 596 (N.D. Ill. 2009) (Article III standing where allegations of lost sales, depressed prices, and lost goodwill); *Native American Arts, Inc. v. Peter Stone Co. U.S.A., Inc.*, 2009 WL 1181483, *2 (N.D. Ill. 2009) (Article III standing where allegations of competitive and advertising harms).  Consequently, Plaintiffs have established Article III standing at this stage of the litigation.

### 2. Statutory Standing

Although incomplete discovery made application of the summary judgment standard of review premature with respect to the Article III standing issue, the Court does believe that the parties have engaged in sufficient discovery for the Court to apply the summary judgment standard of review to the statutory standing issue.

The United States Supreme Court recently upheld statutory standing on a Lanham Act, 15 U.S.C. § 1125 false advertising claim, a claim analogous to Plaintiffs' IACA claims. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, ___ U.S.___, 134 S.Ct. 1377 (2014). *See also Native American Arts, Inc. v. Village Originals, Inc.,* 25 F. Supp.2d 876, 881 (N.D. Ill. 1998) (IACA's requirement that advertising "falsely suggests" Indian origin parallel's Lanham Act's requirement in 15 U.S.C § 1125). A violation of the Lanham Act occurs when one falsely describes a product thereby causing consumer confusion and deception. *Lexmark Int'l, Inc.*,134 S.Ct. at 1384 (quoting 15 U.S.C. § 1125(a)(1)(A)).

In discussing statutory standing, the *Lexmark* Court held "that a direct application of the zone-of-interests test and the proximate-cause requirement supplies the relevant limits on who may sue." *Id.* at 1391. With respect to the zone of interest test, the Court "presume[s] that a statutory cause of action extends only to plaintiffs whose interests 'fall within the zone of interests protected by the law invoked.'" *Id.* at 1388 (citation omitted). The zone of interest test provides that "the benefit of any doubt goes to the plaintiff." *Id.* at 1389 (quoting *Match–E–Be– Nash–She–Wish Band of Pottawatomi Indians v. Patchak,* 567 U.S. ___, 132 S.Ct. 2199 (2012)). Moreover, the zone of interest test "forecloses suit only when a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress authorized that plaintiff to sue." *Id.* (internal quotation

marks and citations omitted).  The Court determined that "to come within the zone of interests in

a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial

interest in reputation or sales."  *Id.* at 1390.  With respect to the proximate cause component of

statutory standing, the Court observed that "a defendant who 'seeks to promote his own interests

by telling a known falsehood to *or about* the plaintiff or his product' may be said to have

proximately caused the plaintiff's harm."  *Id.* at 1393-94 (citations omitted).

A unanimous Court found that Static Control's claims established statutory standing

because 1) its allegations of "lost sales and damage to its business reputation" fall within the

zone of interests protected by the Lanham Act, and (2) "Static Control sufficiently alleged that its

injuries were proximately caused by Lexmark's misrepresentations."  *Id.* at 1393.  That is the

case here.  A reasonable jury could find that the IACA's zone of interest encompasses Plaintiffs'

lost sales and harm to business reputation.  Moreover, a reasonable jury could find that

Defendants proximately caused Plaintiffs' harm by seeking to promote their own interests by

"telling a known falsehood to *or about*" Plaintiffs' products including those products with the

"Navajo" name, the names or brands of other Indian tribes, and the generic  terms "Indian" and

"Native American."

Furthermore, the Court notes that the likelihood of consumer confusion and deception,

issues relevant to whether an injury to a commercial interest falls within the zone of interests

protected by the IACA, are ordinarily questions of fact for the jury to decide.  *See 1-800*

*Contacts, Inc. v Lens.com, Inc.*, 722 F.3d 1229, 1242 (10th Cir. 2013) (likelihood of consumer

"confusion is ordinarily a question of fact for the jury…."); *Daddy's Junky Music Stores, Inc. v.*

*Big Daddy's Family Music Center,* 109 F.3d 275, 288 (6th Cir. 1997) (Sixth Circuit found

material issues of fact "regarding the likelihood of confusion...."); *Southland Sod Farms v.*

*Stover Seed Co.*, 108 F.3d 1134, 1144-46 (9th Cir. 1997) (summary judgment not appropriate on

falsity and likelihood of consumer confusion issues).  In this case, Plaintiffs have introduced

sufficient evidence to raise jury questions on the issues of consumer confusion and deception.

*See*, *e.g.*, [Doc. 259], ex. 5 (deception), exs. 7, 8, and 11(deception and consumer confusion).

Such evidence is sufficient to withstand Defendants' Motion for Partial Summary Judgment on

Standing.  *See, e.g., Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 976 (10th Cir. 2002)

(district court erred in granting summary judgment in Lanham Act case when genuine issue of

material fact existed with respect to likelihood of consumer confusion); *Port-a-Pour, Inc. v. Peak*

*Innovations, Inc.*, 2015 WL 558702, *5 (D. Colo.) (genuine issue of material fact existed with

respect to likelihood of consumer confusion); *Guidance Endodontics, LLC v. Dentsply Intern.,*

*Inc.*, 708 F.Supp.2d 1209, 1247-48 (D.N.M. 2010) (same); *Five Star Mfg. Inc. v. Ramp Lite Mfg.*

*Inc.*, 196 F.Supp.2d 1170, 1172 (D. Kan. 2002) (same).

       For all of the above reasons, summary judgment is not appropriate with respect to

statutory standing.  Moreover, the Court concludes that Plaintiffs have statutory standing to bring

this lawsuit.

       IT IS ORDERED that

       1.  Plaintiffs' Cross-Motion for Summary Judgment on Standing [Doc. 265] is denied;

       2. Defendants' Motion for Partial Summary Judgment on Standing [Doc. 222) is denied;

       3.  at this stage of the litigation, Plaintiffs have Article III standing to pursue their IACA

claims; and

       4.  Plaintiffs have statutory standing for their IACA claims, including those claims based

on items Plaintiffs sell which include the names or brands of other Indian tribes as well as

generic references to "Indian" and "Native American."


SENIOR UNITED STATES DISTRICT JUDGE