IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**THE NAVAJO NATION, et al.,**

    **Plaintiffs,**

v.                                                                  No. 12cv0195 BB/LAM

**URBAN OUTFITTERS, INC., et al.,**

    **Defendants.**

## ORDER DENYING PLAINTIFFS' MOTION TO COMPEL [*Doc. 592*]

    **THIS MATTER** is before the Court on *Plaintiffs' Motion to Compel Documents From Privilege Log and From [Backup] Tape Production (Doc. 592)*, filed November 10, 2015. On December 7, 2015, Defendants filed a response to the motion to compel [*Doc. 603*], and, on January 11, 2016, Plaintiffs filed a reply [*Doc. 627*]. Having considered the motion, response, reply, record of this case, and relevant law, the Court **FINDS** that the motion to compel shall be **DENIED**.

    This case involves allegations of trademark infringement, trademark dilution, unfair competition, and false advertising under the Lanham Act, and violations of the Indian Arts and Crafts Act, as well as state claims under the New Mexico Trademark Act. *See* Third Amended Complaint [*Doc. 82*]. Plaintiff The Navajo Nation and its wholly owned corporation and instrumentality allege that Defendants have improperly and illegally advertised and sold goods bearing Plaintiffs' trademark implying that these goods are genuine "Navajo," "Native American"

or "Indian," when they are not.  On June 10, 2015, the Court entered an order granting in part and denying in part a motion to compel by Plaintiffs, and ordered Defendants to produce responsive, relevant e-mails from their backup tapes from dates provided by Plaintiffs using agreed-upon keyword search terms, and to produce responsive, relevant documents from the SharePoint system[1] using the agreed-upon keyword search terms.  *See* [*Doc. 518* at 9].

In their current motion to compel, Plaintiffs contend that Defendants have not sufficiently complied with the June 2015 Court-ordered production.  *See* [*Doc. 518*] (the June 2015 order). Plaintiffs state that their motion "has two components."  [*Doc. 592* at 10].  First, Plaintiffs contend that Defendants have wrongly asserted a privilege as to four e-mails because: (1) they have no attorney listed on them; (2) three of the documents include communications with lower-level employees; (3) they contain discoverable underlying facts that might have been communicated by an attorney to a client; and (4) Defendants have waived the privilege by asserting a good faith defense of relying on instructions from counsel.  *Id.* and 11-26.  Therefore, Plaintiffs ask the Court to order Defendants to produce these four documents or, in the alternative, Plaintiffs ask the Court to conduct an *in camera* review to ascertain whether they contain any non-privileged information.  *Id.* at 11 and 16-18.  Second, Plaintiffs contend that Defendants have improperly produced 521 documents with cut-off texts and Plaintiffs ask the Court to order Defendants to produce complete versions of these documents and properly log any that are privileged.  *Id.* at 11 and 26.  In addition, Plaintiffs ask the Court to impose sanctions and fees for Defendants' failure to produce documents and provide a privilege log.  *Id.* at 26-27.

In response, Defendants state that they have produced in excess of 3,235,000 pages of documents in this case, approximately 1,635,000 of which were produced from Defendants'

---

[1] As explained in *Document 518* at 5, the SharePoint system hosts intranet websites used to communicate with retail stores.

2

e-mail backup tapes. [*Doc. 603* at 6]. Defendants state that Plaintiffs have issued "often unreasonable and ever-changing demands" to Defendants based on the Court's June 2015 order. *Id.* Defendants state that they complied with the Court's June 2015 order by contracting with a document vendor to restore and examine more than 123 terabytes of data. *Id.* at 8. Defendants then reviewed approximately 3,250,000 documents and produced to Plaintiffs 1,635,000 pages of responsive documents. *Id.* Defendants state that they properly withheld privileged documents and produced a privilege log in compliance with the Court's June 2015 order and the parties' stipulation as to that order. *Id.* at 9-10 (citing *Doc. 555*, the parties' July 7, 2015, stipulation regarding the Court's June 2015 order). Defendants state that they produced a privilege log for six documents that were withheld on the basis of privilege, and that they did not log six documents that were, instead, produced in redacted form. [*Doc. 603* at 9-10]. Defendants do not consent to an *in camera* review of the documents, and state that it is an unnecessary use of judicial time because Defendants have properly withheld and logged privileged documents. *Id.* at 10. In addition, Defendants state that, in working with vendors and Plaintiffs regarding searching Defendants' SharePoint system, Plaintiffs submitted a revised list of over 2000 new search terms. *Id.* at 14. Defendants state that "[t]he burden and expense imposed upon Defendants in complying with the email backup tape production already far outweighs any potential benefit to Plaintiffs associated with additional productions." *Id.* at 15.

In reply, Plaintiffs state that there are 108 deleted e-mails still missing from Defendants' production. [*Doc. 627* at 4-5]. Plaintiffs state that the issue regarding Plaintiffs' submission of 2000 additional search terms is moot because Plaintiffs agreed to remove these additional terms one week before Defendants response brief was filed, and that "[t]here is currently no discovery dispute on SharePoint search terms." *Id.* at 5. Plaintiffs contend that Defendants have produced

2,139,094 pages of documents, not 3,235,000 pages, and that many of those documents were irrelevant to the claims or defenses in this case. *Id.* at 5-6. Plaintiffs also explain the 38 discovery requests they have made to Defendants regarding this latest document production, stating that some of their requests were for updates on the production, technical correction requests, or repeats of earlier requests. *Id.* at 6-7.

## Discussion

### 1. Four E-Mails

Plaintiffs contend that Defendants have wrongly asserted a privilege as to four e-mails because: (1) they have no attorney listed on them; (2) three of the documents include communication with lower-level employees; (3) they contain discoverable underlying facts that might have been communicated by an attorney to a client; and (4) Defendants have waived the privilege by asserting a good faith defense of relying on instructions from counsel. [*Doc. 592* at 11-26]. In addition, Plaintiffs contend that Defendants' assertion of work-product privilege as to these e-mails fails. *Id.* at 21. Therefore, Plaintiffs ask the Court to order Defendants to produce these documents or, in the alternative, Plaintiffs ask the Court to conduct an *in camera* review to ascertain whether they contain any non-privileged information. *Id.* at 10-11 and 16-18.

In response, Defendants state that they have properly withheld or redacted these documents. Defendants explain that a document need not be authored by or addressed to an attorney in order for it to be properly withheld on attorney-client privilege grounds. [*Doc. 603* at 16-17]. The communication also does not need to include an officer or a member of an executive team, and communications which reflect advice given by counsel to a corporation do not lose their privileged status when they are shared among "need-to-know" corporate employees who share responsibility for the subject matter communicated as part of their job duties. *Id.* at 18-19.

Defendants state that the documents they have withheld and the content they have redacted contain discussions regarding legal advice received from Defendants' attorneys that occurred among employees whose job duties involved implementation of the legal advice. *Id.* at 19-20. Defendants contend that they properly complied with the parties' stipulated document production order [*Doc. 101*], and that they produced a privilege log as required by that order and the parties' July 7, 2015 stipulation [*Doc. 555*]. [*Doc. 603* at 20-21]. Finally, Defendants contend that they have not waived privilege because they have not asserted an advice-of-counsel defense. Defendants state that they have not pled this as an affirmative defense and that they do not intend to introduce evidence relating to advice of counsel at trial. *Id.* at 21-23. Defendants explain that their responses to deposition questions did not affirmatively inject this defense into the case, and that Plaintiffs cannot place the advice of counsel at issue by asking questions at depositions relating to Defendants' reliance on counsel's advice. *Id.* at 23-24.

In reply, Plaintiffs restate their contention that Defendants have asserted the defense that they relied on advice from counsel. Plaintiffs contend that Defendants raised this defense by asserting that the removal of items branded with the "Navajo" mark was at the instruction of counsel, and Plaintiffs contend that "[t]he content and timing of this [legal] instruction is an important issue in the case because it bears directly on the issue of willfulness, and underlies Defendants' good faith defense." [*Doc. 627* at 10]. Plaintiffs contend that Defendants have put forth "a good faith defense predicated almost entirely on what advice and communication Defendants' employees received from their in-house attorneys, and when they received it." *Id.* at 12. Plaintiffs again note that the e-mails do not include an attorney as a sender or recipient and were sent to a large group of employees. *Id.* at 13-14.

Defendants state on their privilege log that the four e-mails at issue are confidential because they reflect attorney-client communications and concern the mental impressions and legal analysis and conclusions provided by Defendants' counsel to Defendants' employees regarding pending litigation. [*Doc. 593-12* at 3-4]. While Plaintiffs contend that these e-mails are not privileged because they were not to or from an attorney, "[c]ommunications which reflect advice given by counsel to a corporation do not lose their privileged status when they are shared among corporate employees who share responsibility for the subject matter of the communication." *Anaya v. CBS Broadcasting, Inc.*, 251 F.R.D. 645, 652 (D.N.M. 2007) (quoting *Urban Box Office Network, Inc. v. Interfase Managers, L.P.*, No. 01 Civ. 8854(LTS)(THK), 2006 WL 1004472, at *3 (S.D.N.Y. April 17, 2006) (unpublished)). Moreover, contrary to Plaintiffs' assertion, the employees with whom the information is shared need not include a corporate officer or member of the "Executive Team." *See Upjohn Co. v. United States*, 449 U.S. 383, 394-95 (1981) (finding that communications between employees and counsel were protected from disclosure when the communications concerned matters within the scope of the employees' corporate duties). As Defendants have explained, the withheld documents "reflect discussions between Defendants' employees regarding either (1) legal advice received from attorneys within Urban Outfitters' Office of General Counsel; and/or, (2) discussions regarding requests for information made by attorneys within Urban Outfitters' Office of General Counsel in order to assist with and facilitate legal advice." [*Doc. 603* at 19-20] (citing *Doc. 604-3* at 2, ¶ 3, affidavit of Michael Silbert, Deputy General Counsel for Urban Outfitters). As explained by Mr. Silbert, "[t]he authors and recipients of the documents described in ¶¶ 2(a) - (b) are employees who needed to know the legal advice in order to implement it as part of their job duties, and/or employees whose job duties involved responding to requests for information made by attorneys within Urban Outfitters' Office

of General Counsel in order to assist with and facilitate legal advice." [*Doc. 604-3* at 2, ¶4]. The Court, therefore, finds that Defendants have made a sufficient showing that these documents are privileged even though they have no attorney listed on them and include communication with lower-level employees.

The Court further finds that Defendants have not affirmatively asserted the advice-of-counsel defense. The Tenth Circuit has noted there are three approaches to determining whether a litigant has waived the attorney-client privilege: (1) the "automatic waiver" rule, whereby "a litigant automatically waives the privilege upon assertion of a claim, counterclaim, or affirmative defense that raises as an issue a matter to which otherwise privileged material is relevant;" (2) an approach finding that "the privilege is waived only when the material to be discovered is both relevant to the issues raised in the case and either vital or necessary to the opposing party's defense of the case;" and (3) finding waiver "if, and only if, the litigant directly puts the attorney's advice at issue in the litigation." *Frontier Refining Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 700-01 (10th Cir. 1998) (citations omitted).[2] While the Tenth Circuit has not yet adopted any one of these approaches, the Court elects to follow the Magistrate Judge's ruling in the case of *Anchondo v. Anderson, Crenshaw & Assocs., LLC*, 256 F.R.D. 661, 671 (D.N.M. 2009), which concluded that the Tenth Circuit would most likely apply the majority approach articulated in *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975). This approach has three elements:

---

[2] Since this case involves both federal claims and pendent state law claims, the Court should consider both New Mexico and federal law. *See Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1369 (10th Cir. 1997). Since both parties rely on federal law in their briefs on this issue, the Court will apply federal common law in its analysis. The Court notes, however, that New Mexico has elected to "side with the minority of jurisdictions" by applying an even more restrictive approach that requires offensive or direct use of privileged materials before the party is deemed to have waived its attorney-client privilege. *See Pub. Serv. Co. v. Lyons*, 2000-NMCA-077, 129 N.M. 487, 10 P.3d 166, 173 (N.M. Ct. App. 2000).

> (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

*Hearn*, 68 F.R.D. at 581.

The Court finds that Defendants have not affirmatively acted to assert the advice-of-counsel defense for several reasons. First, Defendants did not raise this as an affirmative defense in their answer. *See* [*Doc. 87* at 19-23] (Defendants' Answer to Plaintiffs' Third Amended Complaint and Affirmative Defenses). Second, Defendants did not affirmatively assert this defense in deposition testimony. In their motion, Plaintiffs contend that Defendants asserted this defense in a deposition by testifying that their attorneys told them to remove the Navajo trademark upon receipt of the October 11, 2011 cease and desist letter (for Urban Outfitters) and the filing of the Complaint in March 2012 (for Free People and Anthropologie). *See* [*Doc. 592* at 13] (citing the deposition testimony of Urban Outfitters' 30(b)(6) deponent, Steven Hartman, at *Doc. 593-17* at 8-11). This deposition testimony, however, was in response to *Plaintiffs'* counsel's questioning of the deposition witness, which does not constitute a voluntary assertion of the defense. *See Williams v. Sprint/United Management Co.*, 464 F.Supp.2d 1100, 1116 (D.Kan. 2006) (finding that the defendant did not voluntarily raise the advice-of-counsel defense because their witnesses "raised it only in response to direct questions from plaintiffs' counsel concerning privileged communications").

In their reply, however, Plaintiffs mischaracterize the record by asserting "that the testimony at issue [*i.e.*, advice of counsel] was placed at issue not by Plaintiffs' examination of witness Hartman, but by defense counsel's *direct* examination." [*Doc. 627* at 9] (emphasis

added).³  Plaintiffs provide a citation to deposition testimony wherein Defendants' counsel, in an effort to clarify the record, asked Mr. Hartman the following question: "Q. Did legal counsel for Urban Outfitters, Inc. advise any of these three brands Anthro, Free People or Urban Outfitters Wholesale, Inc. of the existence of this cease and desist letter contemporaneous with Urban Outfitters, Inc.'s receipt of this cease and desist letter?  A. No."  *See* [*Doc. 627* at 9] (citing deposition testimony of Steven Hartman, Dep. pgs. 320-323, at *Doc. 628-2*).⁴  This citation was improperly provided for the first time in Plaintiffs' reply brief, which precluded Defendants from addressing it.  Nevertheless, the Court finds that this testimony does not constitute an affirmative assertion of the advice-of-counsel defense.  As explained in *Williams*, a witness' deposition testimony does not constitute an affirmative assertion of the advice-of-counsel defense unless the witness indicates that the party "intends to use [the] advice of counsel to justify any conduct on its part."  *Williams*, 464 F.Supp.2d at 1116 (citation omitted).  The Court finds that Defendants' question to Mr. Hartman about legal counsel's advice did not make this testimony vital, or even relevant, to this case, because Defendants have clearly explained that they are not relying on this advice to justify their conduct.  *See* [*Doc. 603* at 24] (Defendants' response to the motion to compel stating that they "have not asserted (and will not assert) an advice of counsel defense, regarding willful conduct, timing or otherwise, in support of Defendants' conduct in response to

---

³ While Plaintiffs claim that the deposition passages cited are defense counsel's "direct" examination of their own 30(b)(6) witness, Plaintiffs' counsel himself describes these passages as defense counsel's "cross-examination," belying the claim that defense counsel first raised advice of counsel.  *See* [*Doc. 593-17* at 8] (referencing "his [defense counsel Scott Knapp's] cross-examination of you," Dep. pg. 327; and *id.* at 10-11 (several references to the witness' "cross-examination.").  As far as the Court can tell from what has been referenced by Plaintiff, the first mention of Defendants' counsel in Mr. Hartman's deposition was in response to Plaintiffs' counsel's question on direct examination: "Q. Do you know what was done with the [cease-and-desist] letter after it was received by Mr. Senk [CEO of Defendant Urban Outfitters]?  A. I believe it was given to our internal counsel . . . our in-house attorneys."  Such mischaracterizations that mislead the Court not only diminish Plaintiffs' counsel's credibility with the Court but could lead to Rule 11 or other sanctions.

⁴ Instead of citing to the CM/ECF record, Plaintiffs refer to this as "Swope Decl. Ex. 2 . . . (Decl. of Karin Swope in Supp. of Pls.' Mot. to Compel)," which forced the Court to search the extensive docket of this case to determine that the reference is to *Doc. 628-2*.  The Court instructs Plaintiffs' counsel to use the Court's CM/ECF docket numbers when referring to documents in briefs which have been filed of record in this case.

9

Plaintiffs' letter"). For these reasons, the Court finds that this one deposition question does not constitute Defendants' affirmative assertion of an advice-of-counsel defense.

Next, Plaintiffs contend that Defendants have raised the advice-of-counsel defense by claiming that Defendants described the advice of their counsel in their motion to dismiss, their reply in support of their motion to dismiss, in a letter to Plaintiffs' counsel, and in one of Defendants' motions for summary judgment. *See* [*Doc. 627* at 9-10] (citing *Doc. 16* at 5 and *Doc. 16-2*, *Doc. 36* at 6, *Doc. 41-1* at 5, and *Doc. 482*, with no page number cited, respectively). Again, this contention was not raised in Plaintiffs' motion to compel, and was improperly raised for the first time in their reply brief. Nevertheless, the Court finds that it, too, is without merit. In the documents cited by Plaintiff, instead of "describing" their counsel's advice, Defendants merely state that they removed the term even though they were under no legal obligation to do so, in an effort to avoid this dispute. *See* [*Doc. 16* at 5], [*Doc. 36* at 6] and [*Doc. 41-1* at 1].[5] As stated above, Defendants have not asserted that reliance on their counsel's advice is the reason their conduct was not willful, and Defendants maintain that they have not asserted and will not assert an advice-of-counsel defense in support of Defendants' conduct in response to Plaintiffs' cease and desist letter. *See* [*Doc. 603* at 24]. For these reasons, the Court is not persuaded that Defendants are either relying upon an advice-of-counsel defense or placing the advice of their counsel at issue. *See Anchondo*, 256 F.R.D. at 671 (finding that the party asserting waiver of the privilege has the burden of showing that the privilege was waived); *see also Hay & Forage Industries v. Ford New Holland, Inc.*, 132 F.R.D. 687, 692 (D.Kan. 1990) (finding that Plaintiff's

---

[5] While Plaintiffs cite to *Document 16-2* in support of this contention, this document, which is a "Declaration" by Ed Looram, Director of Content and Public Relations at Urban Outfitters, does not mention legal advice. In addition, Plaintiffs cite to *Document 482*, which is Defendants' motion for summary judgment, but fail to cite to any specific page number. The Court declines to search through a 28-page document to try to find support for Plaintiffs' contention; however, the Court notes that it is not apparent that Defendants have relied on their advice of counsel in this motion.

speculation that Defendant may raise an advice of counsel defense did not merit a finding of waiver of the attorney-client privilege). Therefore, the Court finds that Defendants properly withheld these four e-mails on the basis of attorney-client privilege and have properly logged the e-mails.[6] The Court declines to conduct an *in camera* review of these documents to determine whether they contain any non-privileged information. Defendants have already produced the documents at issue in redacted format when they contained discoverable information (*see, e.g., Doc. 603* at 19), and Plaintiffs provide no support for their contention that these four e-mails contain any discoverable information that should be produced. That said, and based upon Defendants representations to the Court that it is not relying on advice of counsel as a defense to "willful conduct, timing or otherwise," Defendants may be precluded from entering into evidence at trial matters regarding its counsel's advice regarding their removal of the Navajo trademark. *See Hay & Forage Industries*, 132 F.R.D. at 692 ("If the district court is convinced defendant is disingenuous in claiming it will not rely on the opinions of counsel, it can preclude such evidence [at trial].").

### 2. E-Mails With Cut-Off Text

Plaintiffs' second request is that Defendants be ordered to produce complete versions of 521 documents from Defendants' backup tapes. [*Doc. 592* at 26]. Plaintiffs state that these 521 documents are e-mails with cut-off text. *Id.* at 6. Plaintiffs further state that Defendants produced 485 of these documents, so Plaintiffs are now seeking the 36 remaining e-mails. *Id.* at 7. Plaintiffs explain that the parties entered into a Stipulated Order Regarding Production of Discovery Material [*Doc. 101*], which requires the parties to log privileged documents only up to

---

[6] Because the Court finds that Defendants have properly withheld these documents on the basis of attorney-client privilege, the Court need not consider Plaintiffs' contentions that Defendants have improperly asserted the work-product privilege (*id.* at 21). In addition, because the Court has found that Defendants have not asserted the advice-of-counsel defense, the Court need not consider Plaintiffs' contention that Defendants improperly logged privileged documents on the basis of this defense. *See* [*Doc. 592* at 11-12].

11

the date of Plaintiffs' cease and desist letter, dated June 30, 2011. [*Doc. 592* at 7] (citing *Doc. 101* [at 3], which was filed February 6, 2014). Plaintiffs contend that this order "does not apply to the documents recently ordered produced from Defendants' back-up tapes" because Defendants had argued that their backup tapes were inaccessible and, therefore, not subject to the parties' Stipulated Order [*Doc. 101* at 5, ¶2]. [*Doc. 592* at 7-8]. Therefore, Plaintiffs ask the Court to order Defendants to produce entire documents for the documents produced with cut-off text and to not withhold documents on the basis of privilege from Defendants' backup tape production, or, in the alternative, Plaintiffs ask the Court to order Defendants to produce a privilege log for the documents withheld based on privilege from the entire backup tape production. *Id.* at 27-28.

In response, Defendants state that they produced cut-off e-mails in this format because this is how the e-mails were maintained on the backup tapes, and that, if the backup tapes contained a complete copy of the cut-off e-mail, Defendants also produced the complete copy of the e-mail. [*Doc. 603* at 11]. Defendants state that, if a complete version of a given e-mail was not located on the backup tapes, the document does not exist on the backup tapes. Defendants contend that a search for all such cut-off documents from other sources is outside of what was required by the Court's June 2015 order; however, "in the spirit of cooperation and in hopes of avoiding unnecessary judicial intervention, Defendants agreed to search for and produce, if located, complete versions of the cut off emails, to the extent such documents were not privileged." *Id.* Defendants state that they produced nearly 1300 documents, including the complete e-mails and any attachments, and were able to locate all but four of the e-mails sought by Plaintiffs. *Id.* at 12. In addition, Defendants explain that, after the Court in June 2015 ordered production of documents from Defendants' backup tapes and the SharePoint system, the parties "further stipulated to

include on a privilege log any privileged email backup tape and/or SharePoint documents that are responsive to Plaintiffs' Interrogatory Nos. 3, 5, and 15 and which fell within thirty days of (1) receipt of Plaintiffs' cease and desist letter; (2) receipt of the initial complaint; and (3) receipt of Plaintiffs' counsel's September 21, 2013 letter putting Defendants on notice of continuing trademark infringement.  *Id.* at 20 (citing the parties' second stipulation [*Doc. 555* at 3, ¶4] and the Court's February 27, 2014 order granting in part Plaintiffs' motion to compel [*Doc. 104* at 13-14].  Defendants state that they have fully complied with both the parties' Stipulated Order Regarding Production of Discovery Material [*Doc. 101*] and the parties' additional stipulation dated July 7, 2015 [*Doc. 555*], as well as the Court's June 2015 order [*Doc. 518*] and February 27, 2014 order [*Doc. 104*].  [*Doc. 603* at 20-21].

In reply, Plaintiffs contend that, at the time they filed their reply, there were 108 e-mails still missing and that Defendants represented to Plaintiffs that they were looking for them. [*Doc. 627* at 7].  Plaintiffs state that "[t]he Stipulated Order [presumably *Doc. 101*], by its terms, does not cover documents ordered produced by the Court," and contend that the parties' Stipulated Order only applied to "accessible" sources, and Defendants took the position that the backup tapes were not accessible.  *Id.* at 14.  Plaintiffs fail to explain which Stipulated Order they are referring to with regard to this contention and again fail to cite to a CM/ECF document number.  Plaintiffs contend that "Defendants' failure to produce a privilege log thus constitutes waiver of the privilege from the backup tape production," and Plaintiffs explain that they "are not requesting that Defendants produce a privilege log for all previously produced documents, only for the backup tape production."  *Id.* at 14-15.

The Court finds that Plaintiffs' contentions on this matter fail.  On February 6, 2014, the parties entered into their first stipulation with regard to the production of privileged documents,

13

whereby the parties agreed that redacted documents need not be logged, and that the parties need not log protected documents that are dated after the date of Plaintiffs' initial cease and desist letter. [*Doc. 101* at 3, ¶6].   On February 27, 2014, the Court granted in part one of Plaintiffs' motions to compel, and ordered Defendants to provide a privilege log as to any protected documents that are otherwise responsive to Interrogatories 3, 5, and 13 and that occurred within 30 days following: (1) receipt of Plaintiffs' cease and desist letter; (2) receipt of the initial complaint; and (3) receipt of Plaintiffs' counsel's September 21, 2013 letter putting Defendants on notice of continuing trademark infringement.   [*Doc. 104* at 13-14].   On July 7, 2015, the parties entered into a second stipulation specifically regarding the June 2015 Court-ordered document production [*Doc. 555*], whereby the parties agreed that Defendants would log protected documents consistent with the Court's February 27, 2014 order [*Doc. 104*].   [*Doc. 555* at 3].

Plaintiffs' contention that the parties' first stipulated order does not apply to the e-mails currently at issue because Defendants had argued that those e-mails were from inaccessible sources (*Doc. 592* at 7-8) is without merit.   While Defendants originally argued that their backup tapes were inaccessible, in the Court's June 2015 order [*Doc. 518*] the Court specifically overruled this objection and ordered production of documents from Defendants' backup tapes.  *Id.* at 5 and 9.   Certainly the Court's order to produce documents from these supposedly inaccessible systems overrides Defendants' initial contention that they are inaccessible.

Moreover, even if the parties' first stipulation does not apply to the current document production, Plaintiffs completely fail to acknowledge that they entered into a second stipulation with Defendants on July 7, 2015, which specifically applies to the June 2015 Court-ordered production.   [*Doc. 555*, titled "Plaintiffs' and Defendants' Notice of Proposed Stipulation Regarding the Court's Order Granting in Part and Denying in Part Plaintiffs' Motion to Compel

14

[Doc. 236]."]. This stipulation provides that, consistent with *Document 104*, Defendants will provide a privilege log for any communications they are withholding on the basis of privilege that are otherwise responsive to Plaintiffs' Interrogatory Nos. 3, 5 and 13, and that occurred within 30 days following receipt of Plaintiffs' cease and desist letter, receipt of the initial complaint, and receipt of Plaintiffs' counsel's September 13, 2013 letter putting Defendants on notice of continuing trademark infringement. *See* [*Doc. 555* at 3]. Plaintiffs fail to explain why they entered into a second stipulation governing the logging of privileged documents if their argument is that the parties' first stipulation does not apply to this latest document production and, therefore, Defendants must provide a privilege log for all documents from the backup tape production for which Defendants assert a privilege. Since Defendants state that they have complied with the parties' stipulation in *Document 555* as to logging privileged documents (*see Doc. 603* at 20-21), the Court finds no error on Defendants' part with regard to the logging of documents produced in response to the Court's June 2015 order. As for the 108 e-mails Plaintiffs contend are still missing, it is not clear whether some or all of these are documents that Defendants are withholding on the basis of privilege that are not required to be logged. Since Plaintiffs make no showing otherwise, and in light of the massive number of documents that the Court has already ordered Defendants to produce, especially given Plaintiffs' own admission that many of these documents are irrelevant to the claims or defenses in this case (*see Doc. 627* at 6), the Court will deny Plaintiffs' request for any further production relating to the Court's June 2015 order [*Doc. 518*].

### 3. Sanctions

Finally, Plaintiffs ask the Court to impose sanctions and fees for Defendants' failure to produce documents and provide a privilege log. [*Doc. 592* at 26-27]. Plaintiffs also ask for an order allowing Plaintiffs to re-depose witnesses based on the newly produced documents. In the

15

alternative, Plaintiffs ask for an order precluding Defendants from entering any evidence on their good-faith defense to Plaintiffs' trademark infringement claims.  *Id.*  Because the Court has denied Plaintiffs' motion in its entirety, the Court will deny these requests.

Since the Court denies Plaintiffs' motion in its entirety, pursuant to Rule 37(a)(5)(B) it "must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees.  But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust."  The Court finds that Plaintiffs have exaggerated and presented misrepresentations to the Court regarding whether Defendants have asserted the advice-of-counsel defense.  The Court also finds that Plaintiffs raised certain arguments and provided relevant citations only in their reply brief, precluding Defendants from addressing them.  Finally, the Court notes that Plaintiffs raised confusing and overlapping contentions in their motion, without proper citations to the record using CM/ECF document numbers, which required extensive work to decipher.  Despite all of this, the Court notes that Defendants have not asked for sanctions, and that Plaintiffs raised some minor points in their motion to compel that merited the Court's consideration.  Therefore, the Court finds that an award of sanctions to Defendants for having to respond to this motion would not be appropriate at this time.  The Court hopes that the parties have now exhausted all of their discovery disputes in this case; however, the Court cautions Plaintiffs that any future motions containing similar inadequacies will likely result in an award of sanctions to Defendants.

**IT IS THEREFORE ORDERED** that, for the reasons stated above, *Plaintiffs' Motion to Compel Documents From Privilege Log and From [Backup] Tape Production* *(Doc. 592)* is **DENIED.**

**IT IS SO ORDERED.**

_____
**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**