IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

THE NAVAJO NATION, et al.,

    Plaintiffs,

vs.                                                               Civ. No. 12-195 BB/LAM

URBAN OUTFITTERS, INC., et al.,

    Defendants.

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTIONS FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' TRADEMARK
DILUTION CLAIMS [DOCS. 239 AND 254] AND DENYING PLAINTIFFS' CROSS-
MOTION FOR PARTIAL SUMMARY JUDGMENT [DOC. 318] ON THOSE CLAIMS

        Defendants Urban Outfitters, Inc.; Urban Outfitters Wholesale, Inc.; Anthropologie, Inc.; and Free People of PA LLC (collectively, "Defendants") move the Court for partial summary judgment against Plaintiffs the Navajo Nation, Navajo Arts and Crafts Enterprise ("NACE"), and Diné Development Corporation (collectively, "Plaintiffs") to dismiss Plaintiffs' claims of federal and state trademark dilution by blurring and tarnishment as alleged in Counts Two and Six of the Third Amended Complaint [Doc. 82]. [Docs. 239 and 254]. Alternatively, Plaintiffs move for partial summary judgment against Defendants on Counts Two and Six. [Doc. 318].

## I. Summary Judgment Requirements

        Summary judgment is appropriate only if the moving party demonstrates that there is "no genuine dispute as to any material fact…." Fed. R. Civ. P. 56(a). "A dispute is genuine 'if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way'…." *Varnell v. Dora Consol. School Dist.,* 756 F.3d 1208, 1212 (10th Cir. 2014) (quoting *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013)). "[A] fact is material 'if under the

substantive law it is essential to the proper disposition of the claim.'" *Id.* (quoting *Becker*, 709 F.3d at 1022).

"[P]ursuant to Rule 56, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Sanchez v. BNSF Ry. Co.*, 976 F. Supp. 2d 1265, 1268 (D.N.M. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). While facts and reasonable inferences are construed in the light most favorable to the nonmoving party, "[a] party moving for summary judgment is entitled to the benefit of any relevant presumptions that support the motion." *Coca-Cola Co. v. Overland, Inc.*, 692 F.2d 1250, 1254 (9th Cir. 1982). The summary judgment standards apply equally where, as here, opposing parties each move for summary judgment in their favor. S*kogen v. City of Overland Park, Kan.*, 404 Fed. Appx. 327, 328 (10th Cir. 2010).

**II. Discussion**

    **A. Count Two: the Federal Trademark Dilution Claims**

In Count Two of the Third Amended Complaint, Plaintiffs seek to enjoin the dilution of their trademarks under federal law by alleging:

> 105. The Navajo Nation's trademark is a famous mark.
>
> 106. Defendant's use of the "Navajo" and "Navaho" names and marks to promote, market, and sell its retail items constitutes willful Trademark Dilution by blurring, and willful Trademark Dilution by tarnishment pursuant to 15 U.S.C. 1125(c).
>
> 107. Urban Outfitters' intentional and willful dilution and tarnishment of the Navajo Nation's registered NAVAJO trademark has caused, and will continue to cause, damage and irreparable harm to the Navajo Nation, for which there is no adequate remedy otherwise available at law.

[Doc. 82].

The federal Trademark Dilution Revision Act of 2006 ("TDRA") provides that

> the owner of a **famous** mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become **famous**, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the **famous** mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

15 U.S.C. § 1125(c)(1) (emphasis added). The requirements for dilution by blurring and tarnishment are:

> (B) For purposes of paragraph (1), "dilution by blurring" is association arising from the similarity between a mark or trade name and a **famous mark** that impairs the distinctiveness of the **famous** mark. In determining whether a mark or trade name is likely to cause dilution by blurring, the court may consider all relevant factors, including the following:
>
> > (i) The degree of similarity between the mark or trade name and the **famous** mark.
> >
> > (ii) The degree of inherent or acquired distinctiveness of the **famous** mark.
> >
> > (iii) The extent to which the owner of the **famous** mark is engaging in substantially exclusive use of the mark.
> >
> > (iv) The degree of recognition of the **famous** mark.
> >
> > (v) Whether the user of the mark or trade name intended to create an association with the **famous mark**.
> >
> > (vi) Any actual association between the mark or trade name and **the famous mark.**
>
> (C) For purposes of paragraph (1), "dilution by tarnishment" is association arising from the similarity between a mark or trade name and **a famous mark** that harms the reputation of the **famous mark.**

15 U.S.C. § 1125(c)(2)(B) and (C) (emphasis added). As one can see from the TDRA language, although the dilution doctrines of blurring and tarnishment are distinct types of trademark dilution, they share a common requirement that the senior mark be "famous." *Miss Universe,*

*L.P., LLLP v. Villegas*, 672 F.Supp.2d 575, 592, (S.D.N.Y. 2009); *Kellogg Co. v. Exxon Mobil Corp.*, 192 F.Supp.2d 790, 797 (W.D. Tenn. 2001).

The TDRA defines "famous" as follows: "a mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A).

### 1. Positions of the Parties

Defendants argue that Plaintiffs' Navajo mark is neither famous nor distinctive as required by the TDRA. Defendants explain that "under the current federal statute and its predecessor, a plaintiff asserting a dilution claim must meet a stringent evidentiary burden to show that its mark is 'famous' (*i.e.*, that the mark is widely recognized by the general consuming public as a designation indicating a unique or single source of goods or services)." [Doc. 239] at 4.

Plaintiffs, on the other hand, respond that "the 'Navajo' mark is well-known across the country as a brand of authentic Indian-made goods." [Doc. 292] at 14. Plaintiffs argue that evidence of the fame of the "Navajo" mark "was already available (1) publicly, (2) in Plaintiffs' expert reports, or (3) if Defendants had inquired about it at deposition…." *Id.* at 6. Plaintiffs note the "Navajo Nation, through its tribal members, instrumentalities and enterprises, has been selling goods and services under the Navajo mark for over 150 years." *Id.* at 9.

In support of their argument, Plaintiffs maintain that they sell or offer numerous goods and services under the "Navajo" trademark umbrella, and spend more than $3.8 million annually

to promote those goods and services.[1] For instance, Plaintiffs indicate that, under license from the Navajo Nation, Pendleton Woolen Mills has advertised in its widely distributed catalog, *inter alia*, a "Navajo Water blanket."

The other area where Plaintiffs maintain their mark is famous is "arts and crafts."[2] Plaintiffs offer evidence that Navajo blankets were sold before the turn of the twentieth century and that as early as 1915 the value of sold Navajo blankets was $17,000,000 (in 2014 dollars). Also, Plaintiff NACE is authorized to license the "Navajo" mark for arts, crafts, jewelry, clothing, accessories, silverware, and rugs. NACE first opened a retail store at Fort Wingate, New Mexico in 1941 and it currently operates five retail stores in Arizona and one retail store in New Mexico. NACE maintains a current registry of about 800 members whose goods it purchases and offers for sale bearing the "Navajo" mark. Additionally, under the auspices of the Indian Arts and Crafts Act and the Indian Arts and Crafts Board, the Nation has been publicizing its "Navajo" marks since at least 1944, when the Indian Arts and Crafts Board registered eight Navajo trademarks. Finally, any enrolled member of the Navajo Nation is authorized to use the Navajo mark.

---

[1] "The Nation through its instrumentalities sells a large volume of goods and services throughout the United States using the 'Navajo' marks. Currently, Navajo Nation instrumentalities, including NACE, the Navajo Nation Department of Economic Development ('DED'), the Navajo Times, the Navajo Nation Oil & Gas Company ('NNOGC'), the Navajo Agricultural Products Industry ('NAPI'), and the Navajo Nation Gaming Enterprise ('NNGE'), own 108 federally registered 'Navajo' trademarks." [Doc. 292] at 10.

[2] For example, 75 retail members of the Indian Arts and Crafts Association market and sell Navajo goods under the "Navajo" mark in 22 different states and five countries. [Doc. 250] at ¶¶ 11-12. At least three of those retail members also sell "Navajo" products online through eBay. *Id*. at ¶13. Fifty-four retail members also sell "Navajo" products in the wholesale channel, and another eight members sell "Navajo" products exclusively in the wholesale channel. *Id.* at ¶¶ 15-14.

## 2. To Prevail on a Federal Dilution Claim, Plaintiffs' Mark Must be Famous

### a. "Navajo" is not nationally recognized as a household name

The TDRA provides that famous marks are eligible for federal protection where a third party's commercial use might blur a more senior famous mark's distinctiveness.  Charles E. McKenney and George F. Long III, 1 *Federal Unfair Competition: Lanham Act 43(a)* § 3:36 (2015).  "Dilution by blurring ... occurs when consumers see the plaintiff's mark used on a plethora of different goods and services … raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product."  *Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 466 (7th Cir. 2000) (internal quotation marks omitted).

"Tarnishment occurs where a trademark is linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context, with the result that the public will associate the lack of quality or lack of prestige in the defendant's goods with the plaintiff's unrelated goods."  *New York Stock Exchange, Inc. v. New York, New York Hotel, LLC,* 293 F.3d 550, 558 (2d Cir. 2002) (internal quotation marks omitted).  Tarnishment often arises when a famous mark is placed in the context of satirical or questionable activity.  *Hormel Foods Corp. v. Jim Henson Productions, Inc.*, 73 F.3d 497, 507 (2d Cir. 1996) (collecting cases); *Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*, 221 F. Supp. 2d 410, 423 (S.D. N.Y. 2002).

The TDRA language and caselaw, make a "famous mark" the threshold requirement to maintain either a successful blurring or tarnishment claim.  Charles E. McKenney and George F. Long III, 1 *Federal Unfair Competition: Lanham Act 43(a)* § 3:36 (2015).  "By definition, all 'trademarks' are 'distinctive'—very few are 'famous.'"  4 *McCarthy on Trademarks and Unfair Competition* § 24:104 (4th ed.).  *See also Coach Services, Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1373 (Fed. Cir. 2012); *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002,

6

1011 (9th Cir. 2004). "Fame for dilution requires widespread recognition by the general public; in other words, it is a mark that has become a 'household name.'"[3] *Navajo Nation v. Urban Outfitters, Inc.*, 933 F.Supp.2d 1147, 1167 (D.N.M. 2013). Accordingly, fame in this context presents an obviously high bar and is very difficult to prove. *Coach Services, Inc.*, 668 F.3d at 1373*; Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C.*, 393 F.3d 755, 763 (8th Cir. 2005); *United Tactical Systems, LLC v. Real Action Paintball, Inc.*, 2014 WL 6788310, at *20 (N.D. Cal.).

Plaintiffs premise their fame argument by asserting that their registered "incontestable" marks are not "merely descriptive," but, instead, demonstrate the inherent distinctiveness of the marks. [Doc. 292] at 23. However, a mere showing of inherent or acquired distinctiveness falls short of the threshold of fame necessary to successfully invoke the TDRA. *Midwestern Pet Foods, Inc. v. Societe des Produits Nestle S.A.*, 685 F.3d 1046,1053 (Fed. Cir. 2012); *Hodgdon Powder Co., Inc. v. Alliant Techsystems, Inc.*, 497 F. Supp.2d 1221, 1232 (D. Kan. 2007); *Fuel Clothing Co., Inc. v. Safari Shirt Co.*, 2006 WL 3751237, at *5 (D. Or.).

While Plaintiffs maintain they spend over $3.8 million annually to promote the "Navajo" name in the areas of oil gas, gaming, publishing, and other economic developments, none of this spending is sufficient to suggest the "Navajo" marks are recognized as a "household name." "Famous" requires more than just widespread distribution and significant advertising expenditures. *TCPIP Holding Co., Inc. v. Haar Communications, Inc .,* 244 F.3d 88, 99-100 (2d Cir. 2001); *International Information Systems Sec. Certification Consortium, Inc. v. Security*

---

[3] *In accord, Pinterest, Inc. v. Pintrips, Inc.*, ___ F.Supp.3d ___, 2015 WL 6167967, at *20 (N.D. Cal.); *Luv N' Care, Ltd. v. Regent Baby Products Corp.*, 841 F.Supp.2d 753, 759 (S.D. N.Y. 2012); *Bd. of Regents, Univ. of Texas System ex rel. Univ. of Texas at Austin v. KST Elec., Ltd.,* 550 F.Supp.2d 657, 678–79 (W.D. Tex. 2008); *Componentone, L.L.C. v. Componentart, Inc.,* 2007 WL 4302108, at *1-2 (W.D. Pa.); *Nissan Motor Co.*, 378 F.3d at 1011.

7

*University, LLC,* 2014 WL 3891287, at * 10 (D. Conn.); *Wine & Canvas Development LLC v. Weisser*, 2014 WL 4053928, at * 12 (S.D. Ind.). Moreover, conclusory allegations of nationwide recognition without surveys or other supporting evidence are insufficient to show that a mark is a household name. *The Christopher D. Smithers Foundation, Inc. v. St. Luke's-Roosevelt Hosp. Center*, 2003 WL 115234, at * 6 (S.D.N.Y.). For the above reasons, very few courts have found a mark legally "famous." Courts, therefore, frequently grant summary judgment in favor of defendants and dismiss dilution claims on that basis.[4] While Plaintiffs' evidence may be relevant to their infringement claims, it is not legally sufficient to establish a "famous" mark and, hence, to defeat Defendants' motions for partial summary judgment on the claims for dilution by blurring and tarnishment.

### b. Even if "Navajo" is a widely recognized mark, it is a "niche" mark

The fact that Plaintiffs have long engaged in marketing "arts and crafts" and acquired several trademarks relating to jewelry is also insufficient to sustain a dilution claim under current law. Since the passage of the TDRA in 2005, the "general consuming public" must recognize the mark as famous and distinctive. 15 U.S.C. § 1125(c)(1) and (2)(A); *Coach Servs., Inc.,* 668 F.3d at 1372. The TDRA, thus, "eliminated the possibility of 'niche fame,' which some courts

---

[4] *Clearly Food & Beverage Co., Inc. v. Top Shelf Beverages, Inc.,* 102 F.Supp.3d 1154, 1176-77 (W.D. Wash. 2015); *International Information Systems Sec. Certification Consortium, Inc.*, 2014 WL 3891287, at * 11; *Wine & Canvas Development LLC*, 2014 WL 4053928, at * 12; *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.,* 69 F.Supp.3d 175, 211 (D.D.C. 2014); *Harp v. Rahme*, 984 F. Supp. 2d 398, 422 (E.D. Pa. 2013); *It's a 10, Inc. v. Beauty Elite Group, Inc*., 2013 WL 6834804, at * 7 (S.D. Fla.); *Dry Clean Super Center, Inc. v. Kwik Industries, Inc.,* 2011 WL 1344226, at * 10 (D. Colo.); *Teter v. Glass Onion, Inc*., 723 F. Supp. 2d 1138, 1157 (W.D. Mo. 2010); *Bd. of Regents, Univ. of Texas Sys. ex rel. Univ. of Texas at Austin,* 550 F.Supp.2d at 679; *Best Cellars, Inc. v. Wine Made Simple,Inc.*, 320 F. Supp.2d 60, 83 (S.D. N.Y. 2003); *WE Media, Inc. v. General Elec. Co.,* 218 F. Supp. 2d 463,473 (S.D. N.Y. 2002); *Something Old, Something New, Inc. v. QVC, Inc.,* 1999 WL 1125063, at *11, 53 U.S.P.Q.2d 1715 (S.D.N.Y.).

had recognized under the previous version of the statute." *Coach Servs., Inc.*, 668 F.3d at 1372. *See also Dan–Foam A/S v. Brand Named Beds, LLC*, 500 F.Supp.2d 296, 307 n. 90 (S.D.N.Y. 2007) (TDRA's inclusion of phrase "widely recognized by the general consuming public" was "intended to reject dilution claims based on 'niche fame,' *i.e.* 'fame limited to a particular channel of trade, segment of industry or service, or geographic region.'" citation omitted)).

Even if Navajo rugs or jewelry are "widely recognized," since 2005, this wide recognition is no longer sufficient to sustain a dilution claim under the TDRA. To sustain a dilution claim, the mark must be "famous" and, hence, recognized by more than a niche of the broader public.[5] Plaintiffs have not demonstrated that the "Navajo" mark is anything other than a niche mark.

### B. Count Six: the New Mexico Trademark Dilution Claims

In Count Six of the Third Amended Complaint, Plaintiffs allege violations of the dilution prohibitions of the New Mexico Trademark Act, NMSA 1978, § 57-3B-15, by blurring and tarnishment. Plaintiffs specifically allege:

> 136. The Navajo Nation owns the NAVAJO trademarks, which are widely recognized and famous in New Mexico.
>
> 137. Defendant's acts and omissions alleged herein caused and continue to cause dilution and/or tarnishment of the distinctive quality of the Navajo Nation's NAVAJO marks.
>
> 138. Defendant willfully intended to trade on the Navajo Nation's reputation and/or to cause dilution to the NAVAJO marks.

---

[5] *See, e.g .*, *Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc.*, 885 F.Supp.2d 519, 541(S.D.N.Y. 2012); *Luv N' Care, Ltd. v. Regent Baby Products Corp.,* 841 F.Supp.2d 753, 759 (S.D.N.Y. 2012); *Xen, Inc. v. Citrix Systems, Inc.,* 2012 WL 5289609, at *6 (C.D. Cal.); *Roederer v. J. Garcia Carrion, S.A.*, 732 F Supp.2d 836, 879 (D. Minn. 2010); *Heller Inc. v. Design Within Reach, Inc.*, 2009 WL 2486054, at *4 (S.D.N.Y. ); *Bd. of Regents, Univ. of Texas Sys. ex rel. Univ. of Texas at Austin*, 550 F.Supp.2d at 677; *Hodgdon Power Co., Inc.*, 497 F.Supp.2d at 1232; *Verilux, Inc. v. Hahn,* 2007 WL 2318819, at *12 (D. Conn).

139. The Navajo Nation is entitled to an injunction and, given the willful intent on the part of the Defendant, all remedies set forth in the New Mexico Trademark Act.

[Doc. 82].

The New Mexico statute on trademark dilution, NMSA 1978, § 57-3B-15, is virtually identical to the TDRA, 15 U.S.C. § 1125(c)(2)(A). The New Mexico statute, like the TDRA, requires that a mark be "famous" before it is protected against dilution and sets forth factors to determine such fame. NMSA 1978, § 57-3B-15. Courts have, therefore, interpreted the New Mexico statute as tracking the federal law in requiring a high level of fame to invoke protection against dilution. *Guidance Endodontics, LLC v. Dentsply Intern., Inc.,* 708 F.Supp.2d 1209, 1253-54 (D.N.M. 2010); *cf. Jordache Enterprises, Inc. v. Hogg Wyld, Ltd.,* 625 F.Supp. 48, 56-57 (D.N.M. 1985), *affirmed by* 828 F.2d 1482 (10th Cir. 1987) (New Mexico trademark statute interpreted in line with Lanham Act precedent on dilution by parody). Accordingly, as with the Court's findings on the TDRA claims, the Court finds Plaintiffs have not provided evidence that their marks are sufficiently famous to sustain dilution by blurring or tarnishment under NMSA 1978, § 57-3B-15.

## III.  CONCLUSION

For the above stated reasons, Defendants' motions for partial summary judgment [Docs. 239 and 254] are GRANTED, and Plaintiff's cross-motion for partial summary judgment [Doc. 318] is DENIED. Consequently, Counts Two and Six of the Third Amended Complaint are dismissed with prejudice.

**IT IS SO ORDERED.**

_____
UNITED STATES SENIOR DISTRICT JUDGE