IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

THE NAVAJO NATION, et al.,

    Plaintiffs,

vs.                                                    Civ. No. 12-195 BB/LAM

URBAN OUTFITTERS, INC., et al.,

    Defendants.

MEMORANDUM OPINION AND ORDER
DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON IACA DAMAGES (DOC. 231)

    This matter comes before the Court upon Defendants' Motion for Partial Summary Judgment on Damages Available under the Indian Arts and Crafts Act ("Motion for Partial Summary Judgment"), and supporting sealed memorandum brief, both filed on December 3, 2014 by Defendants Urban Outfitters, Inc.; Urban Outfitters Wholesale, Inc.; Anthropologie, Inc.; and Free People of PA, LLC.  (Docs. 231 and 232).  On January 5, 2015, Plaintiffs filed a response along with a sealed expert report, and on February 3, 2015, the moving Defendants filed a reply.  (Docs. 273, 275, and 312).  Having reviewed the Motion for Partial Summary Judgment, the briefing, and the relevant admissible evidence, the Court denies the Motion for Partial Summary Judgment.

    Plaintiff the Navajo Nation is a sovereign Indian Nation and federally acknowledged Indian Tribe.  It is undisputed that the Navajo Nation has marketed and retailed clothing, housewares, and jewelry using its "Navajo" name and trademarks since at least 1943.  Plaintiff Diné Development Corporation ("DDC") is a corporation formed under the laws of the Navajo Nation and wholly owned by the Navajo Nation.  DDC owns, and is authorized to issue, licenses

of the "Navajo" trademark.  Plaintiff Navajo Arts and Crafts Enterprise ("NACE") is a wholly owned instrumentality of the Navajo Nation.  NACE also owns, and is authorized to issue, licenses for the "Navajo" trademark as well as those of many other Indian tribes.  The Court refers to these Navajo entities, collectively, as "Plaintiffs."

Defendant Urban Outfitters ("UO") sells products including women's and men's fashion apparel, footwear and accessories, as well as apartment wares and gifts.  Defendant Anthropologie, Inc. ("Anthropologie") sells women's apparel and accessories, as well as shoes, home furnishings, gifts, and decorative items.  Defendant Free People of PA, LLC ("Free People") sells women's apparel, intimates, shoes, accessories, and gifts.  The Court refers to UO, Anthropologie, and Free People, collectively, as "Defendants."

Plaintiffs filed the instant lawsuit, seeking damages, *inter alia,* under the Indian Arts and Crafts Act  ("IACA").  Plaintiffs allege that Defendants violated the IACA by deceptively marketing their products to suggest they were Indian made when, in fact, they were not. Plaintiffs primarily allege that Defendants misused the terms "Navajo," "Zia," "Zuni,"  "Pueblo," "Apache," "Cheyenne," "Hopi," and "Crow" in connection with certain clothing and apparel items which were not of Indian origin.

### IACA Damages Language

In its current form, the IACA authorizes the following:

> A person specified in subsection (d) may, in a civil action in a court of competent jurisdiction, bring an action against a person who, directly or indirectly, offers or displays for sale or sells a good, with or without a Government trademark, in a manner that falsely suggests it is Indian produced, an Indian product, or the product of a particular Indian or Indian tribe or Indian arts and crafts organization.

25 U.S.C. § 305e(b).  Defendants do not contest that Plaintiffs are persons authorized to bring suit under subsection (d) of the IACA.

The IACA further provides that the authorized entities may recover the greater of:

> (A) treble damages; or
> (B) in the case of each aggrieved individual Indian, Indian tribe, or Indian arts and crafts organization, not less than $1,000 for each day on which the offer or display for sale or sale continues.

*Id.* at § 305e(b)(2).

### Positions of the Parties

Defendants move for summary judgment on the proper computation of damages under the IACA. Normally, motions for summary judgment are not appropriate for determining the proper standard to measure damages. *See In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*, 517 F. Supp. 2d 662, 665-66 (S.D. N.Y. 2007) (summary judgment addresses claims not remedies). However, with multiple *Daubert* motions and the admission of substantial trial evidence turning on the issue of IACA damages, a resolution of that issue now may save considerable juror and judicial resources. The Court, however, declines Plaintiffs' invitation to determine punitive damages in the absence of any uncontested evidence in the record. *See Morin v. Aetna Cas. and Sur. Co.*, 478 A.2d 964, 967 (R.I. 1984) (summary judgment not proper vehicle for awarding punitive damages).

Plaintiffs maintain that, for purposes of computing IACA damages, § 305e(b) clearly references "good" or "product" in the singular. Plaintiffs, therefore, argue that damages should be calculated at the rate of $1,000 per product type, per day that the product type is sold or displayed, per Defendant.

Defendants, on the other hand, concentrate on the second part of the § 305e(a)(2)(B) damages calculation. They argue that the statute simply states that damages are to be calculated for each plaintiff according to the number of days that the "offer or display for sale or sale

continues." Consequently, Defendants contend that damages should be calculated at $1,000 per day, per Defendant.

Both Plaintiffs and Defendants contend that if Congress had intended to allow damages based on the theory advanced by the other party it would have said so explicitly in the IACA. Plaintiffs and Defendants also rely on different cases from the Northern District of Illinois interpreting the standard for assessing damages under the IACA.

**Statutory Interpretation**

Plaintiffs argue in favor of the interpretation of the IACA set forth in *Native American Arts, Inc. v. Bundy-Howard, Inc.,* 168 F.Supp.2d 905 (N.D. Ill. 2001). In deciding whether the IACA statutory damages provision was unconstitutionally vague, Judge Shadur reasoned:

> It is sufficiently plain from the use of the words "good" and "product" that the $1,000-per-day damages floor applies to each different type of product rather than to each item of inventory . . . . Had Congress instead intended to impose the potentially astronomical liability of $1,000 per day for each individual piece of a falsely suggestive product offered for sale or sold, it would surely have specified such extraordinary exposure explicitly – and it did not.

*Id*. at 912-13.

Judge Shadur then specifically rejected the argument advanced by Defendants herein and by the Movants in *Bundy-Howard:*

> On the flip side of that coin, Movants' speculation that perhaps $1,000 per day may be assessed only once no matter how many types of products violate the Act cannot withstand scrutiny either. Section 305e[(b)] uses the words "good" and "product" in singular form. It could scarcely be more evident that Movants can expect damages to be assessed for each separate "good" or "product," rather than suffering a single assessment for all goods or products collectively. This common sense view comports with the manner in which other statutes have been read.

*Id.* at 913 (citations omitted).

Judge Shadur's analysis of the question of whether compensatory damages at a rate of $1,000 per day, per good violates substantive due process is also relevant to this Court's

4

consideration of the proper damages computation.  After considering the history and purpose of the IACA, Judge Shadur reasoned that Congress designed the IACA to advance the goal of preventing consumer fraud.  He noted, therefore, that, "Where a statutory damage provision is so designed to address such 'public wrongs,' it need not be 'confined or proportioned to [actual] loss or damages; for, as it is imposed as a punishment for the violation of a public law, the Legislature may adjust its amount to the public wrong rather than the private injury.'"  *Id.* at 914 (quoting *St. Louis, I.M. & S. Ry. Co. v. Williams,* 251 U.S. 63, 66 (1919)).

Judge Shadhur also noted that a generous damage calculation further serves to encourage private parties to act as private attorney generals in enforcing the public purpose.  He concluded that the $1,000 per product type per day minimum "is an effective way to provide an incentive to injured individuals to bring suits as well as to generate effective deterrence on the part of the offenders."  *Id.* at 915.

The Defendants, however, put their faith in another case from the Northern District of Illinois, *Native American Arts, Inc. v. Waldron Corp.*, 2003 WL 22595268 (N.D. Ill.).  The court in that case addressed the defendant's objections to the plaintiffs' jury instruction which provided for $1,000 in IACA damages "per day per product."  *Id*. at *1.  The defendant's competing jury instruction stated that the correct measure of damages was "$1,000 per day that products were displayed in violation of the acts."  *Id*.

The district court, Judge Der-Yeghiayan, first observed that the Seventh Circuit had not yet ruled on the IACA damages issue and that there was, therefore, no controlling authority.  *Id.*  He then rejected the IACA interpretation by Judge Shadur in *Bundy-Howard*, reasoning simply that the *Bundy-Howard* damages were too high:

> In [*Bundy-Howard*] the court held that it was clear from the use of the words "good" and "product" in singular form in the act that Congress intended damages to be

measured according to each product type rather than solely according to the number of days that products were displayed collectively. We disagree . . . . The court [in *Bundy-Howard*] noted that if Congress intended the act to expose defendants to the "potentially astronomical liability of $ 1,000 per day for each individual product offered for sale or sold, it would surely have specified such extraordinary exposure explicitly--and it did not." That same logic applies to the interpretation that concludes that Congress intended to determine damages according to each type of product sold or displayed.

*Id.* (citations omitted).

When construing a statute, the court's "primary task is to determine congressional intent, using traditional tools of statutory interpretation." *New Mexico Cattle Growers Ass'n v. U.S. Fish and Wildlife Service*, 248 F.3d 1277, 1281(10th Cir. 2001) (internal quotation marks omitted) (quoting *NLRB v. United Food & Commercial Workers Union*, 484 U.S. 112, 123 (1987)). A court should "begin with the plain language of the law" but may look to legislative history to construe a statute when the plain language is ambiguous. *United States v. Albert Inv. Co. Inc.*, 585 F.3d 1386, 1394 (10th Cir. 2009). Given the diametrically opposed interpretations of two judges of the Northern District of Illinois, this Court must conclude the damages language of the IACA, as a whole, is ambiguous.

In the context of federal statutes, like the IACA, courts must construe such statutes "liberally in favor of Native Americans, with ambiguous provisions interpreted to their benefit." *Ramah Navajo Chapter v. Lujan,* 112 F.3d 1455, 1461 (10th Cir.1997). "[T]he legislative judgment [of Congress] should not be disturbed as long '[a]s the special treatment can be tied rationally to the fulfillment of Congress' unique obligation toward the Indians….'" *Delaware Tribal Business Commission v. Weeks,* 430 U.S. 73, 75, (1977) (quoting *Morton v. Mancari*, 417 U.S. 535, 555 (1974)). *See also Native American Arts, Inc. v. Contract Specialties, Inc.,* 754 F. Supp. 2d 386, 393 (R.I. 2010) (determining that IACA subsection illustrating "Indian" products not vague and overbroad in violation of First Amendment).

6

One purpose of the IACA is to protect makers of Indian goods from false representations of a product's "origin or authenticity." *Native American Arts, Inc. v. Hartford Cas. Ins. Co.,* 435 F.3d 729, 733 (7th Cir. 2006) (citing 68 Fed. Reg. 35164).  The legislative history of the IACA indicates that this purpose encompasses the goal of protecting Native Americans from economic exploitation caused by counterfeit arts and crafts.  136 Cong. Rec. H8291-01, 1990 WL 149013 (statement of Rep. John Rhodes) (daily ed. Sept. 27, 1990).  Such a goal supports the long recognized governmental objective of Indian self-sufficiency.  *Id.  See also* H.R. Rep. No. 101-400(I), 101st Cong., 2d Sess. (1990), *reprinted in* 1990 U.S.C. C.A.N. 6384, 6383 (IACA purpose to improve economic status of Native Americans).  Moreover, that legislative history indicates that mass produced counterfeit Indian products threaten the "historical and cultural traditions that are entailed in" the manufacture of authentic Indian products.  135 Cong. Rec. E1255-03, 1989 WL 191626 (statement of Rep. Jon Kyl) (daily ed. Apr. 17, 1989).  For instance, "[i]f artisans have to increase productivity at the expense of time-honored manufacturing techniques in order to compete with cheap imports, an important part of their heritage will have been compromised and lost."  *Id.*  Also, "if the income derived from their craftwork becomes too low, younger generations are discouraged from learning the crafts and they can die out altogether."  *Id.*

As Judge Shadur indicated in *Bundy-Howard*, a second goal of the IACA is to protect consumers from purchasing misrepresented products.  168 F.Supp. 2d at 914.  *See also* 136 Cong. Rec. H8291-01 (statement of Del. Eni Faleomavaega); William J. Hapiuk, Jr., *Of Kitsch and Kachinas:  A Critical Analysis of the Indian Arts and Crafts Act of 1990*, 53 Stan. L.R. 1009, 1020-21 (2001).  Consumer protection statutes should be liberally construed in favor of the

buyer. *Elliott Industries Ltd. Partnership v. BP America Production Co.*, 407 F.3d 1091, 1118 (10th 2005); *First Nat. Bancorp Inc. v. Alley,* 76 F.Supp.3d 1261, 1264 (D.N.M. 2014).

The goals of promoting Indian self-sufficiency, protecting Indian culture and heritage, and stopping counterfeit products from deceiving consumers are best advanced by reading the IACA to permit statutory damages of not less than $1,000 for each day on which the offer or display for sale or sale of a given type of good continues. The interpretation of the history and purpose of the IACA recognized by the *Bundy-Howard* court, therefore, appears to be the correct one and the Court adopts that position.

ACCORDINGLY, IT IS ORDERED that Defendants' Motion for Partial Summary Judgment on Damages Available under the Indian Arts and Crafts Act (Doc. 231) is denied.

_____
SENIOR UNITED STATES DISTRICT JUDGE